**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------X
TRADEWINDS AIRLINES, INC.,          :
                                    :
                 Plaintiff,         :
                                    :
    -against-                       :
                                    :
GEORGE SOROS and PURNENDU           :
CHATTERJEE,                         :
                                    :
                 Defendants.        :
-----------------------------------X
COREOLIS HOLDINGS, INC. and         :
TRADEWINDS HOLDINGS, INC.,          :
                                    :
                 Plaintiffs,        :
                                    :
    -against-                       :
                                    :
GEORGE SOROS and PURNENDU           :
CHATTERJEE,                         :
                                    :
                 Defendants.        :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:____03/22/2012____


08 Civ. 5901 (JFK)
10 Civ. 8175 (JFK)

**OPINION AND ORDER**


APPEARANCES

    For Plaintiff TradeWinds Airlines, Inc.:

        Violet Elizabeth Grayson, Esq.
        548 West 148th Street
        New York, NY 10031

    For Plaintiffs Coreolis Holdings, Inc. and TradeWinds
    Holdings, Inc.:

        RESSLER & RESSLER
        48 Wall Street
        New York, NY 10005

        By:  Ellen R. Werther, Esq.
             Bruce J. Ressler, Esq.

    For Defendant George Soros:

        BUTLER, FITZGERALD, FIVESON & McCARTHY
        36 West 44th Street, Suite 816
        New York, NY 10036

        By:  Raymond Fitzgerald, Esq.

        WILKIE FARR & GALLAGHER LLP
        787 Seventh Avenue
        New York, NY 10019
        By:  Martin B. Klotz, Esq.
             Steven H. Reisberg, Esq.

    For Defendant Purnendu Chatterjee:

        POSTERNAK BLANKSTEIN & LUND, LLP
        800 BOYLSTON STREET
        BOSTON, MA 02199
        By:  Dustin F. Hecker, Esq.

        MORRISON COHEN LLP
        909 Third Avenue
        New York, NY 10022
        By:  Kristin T. Roy, Esq.

**JOHN F. KEENAN, United States District Judge:**

        In these consolidated actions, plaintiffs TradeWinds

Airlines, Inc. ("TradeWinds"), Coreolis Holdings, Inc.

("Coreolis"), and TradeWinds Holdings, Inc. ("TW Holdings")

(collectively, "Plaintiffs") seek to pierce the corporate veil

of C-S Aviation, Inc. ("C-S Aviation") and hold defendants

George Soros ("Soros") and Dr. Purnendu Chatterjee

("Chatterjee") (collectively, "Defendants") liable on a default

judgment entered against C-S Aviation by the Superior Court

Division of the North Carolina General Court of Justice,

Guilford County, on July 26, 2010.

        Before the Court are two motions:  (1) Defendants' motion

pursuant to Rule 12 of the Federal Rules of Civil Procedure to

dismiss both TradeWinds' Second Amended Complaint (the

"TradeWinds Complaint") and Coreolis and TW Holdings' Complaint

(the "Coreolis Complaint"); and (2) Plaintiffs' motion to strike portions of Defendants' reply memorandum submitted in support of their motion to dismiss.  For the reasons stated below, Defendants' motion to dismiss is denied, and Plaintiffs' motion to strike is denied as moot.

In addition to these two motions, this Opinion and Order also administratively closes a motion rendered moot by the filing of the operative complaints.

## I.  Background

The facts set forth below are taken from the Plaintiffs' pleadings, exhibits to those pleadings, and documents incorporated into those pleadings by reference.  In considering Defendants' motion to dismiss, the Court accepts as true all factual allegations in the TradeWinds Complaint and the Coreolis Complaint, and construes all reasonable inferences in favor of Plaintiffs. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 424 (2d Cir. 2008).  The Court considers the judgment entered by the North Carolina Superior Court on July 26, 2010 (the "2010 NC Judgment"), which is attached as an exhibit to the operative complaints.  The documents incorporated into the operative complaints by reference include the answer and third-party complaint Plaintiffs filed in the North Carolina Superior Court (the "NC Third-Party Complaint"), the Opinion and Order entered by the Southern District of New York (Baer, U.S.D.J.) in

*Jet Star Enterprises Ltd. v. Soros*, No. 05 Civ. 6585 (HB), 2006
WL 2270375 (S.D.N.Y. Aug. 9, 2006), and the aircraft leases
TradeWinds negotiated with C-S Aviation. See *DiFolco v. MSNBC*
*Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## A.   TradeWinds' Lease of Planes from C-S Aviation

In the late 1990s, TradeWinds was operating an air-freight
business out of Guilford County, North Carolina.  A Delaware
corporation with its principal place of business in North
Carolina, TradeWinds was a wholly owned subsidiary of TW
Holdings, a Delaware corporation with its principal place of
business in California. (TradeWinds Compl. ¶ 2, Coreolis Compl.
¶¶ 2-3, NC Third-Party Compl. ¶¶ 5-7).  In 1999, TradeWinds
sought to expand its air-freight business and began efforts to
purchase a fleet of Airbus A300 aircraft. (NC Third-Party Compl.
¶¶ 15-17.)

Acting on behalf of Wells Fargo, which held a number of
A300s in trust for various limited liability companies
controlled by Defendants (the "Trust Beneficiaries"), C-S
Aviation negotiated leases of seven A300s between November 1999
and November 2000. (NC Third-Party Compl. ¶ 20.)  TradeWinds
alleges that in negotiating the leases, C-S Aviation made
certain representations about maintenance performed on the
leased aircraft and the number of flights these aircraft would
be able to complete. (Coreolis Compl. Ex. 1, Final Judgment of

the North Carolina Business Court ("2010 NC Judgment") ¶ 7.)
The Trust Beneficiaries raised the capital to purchase the
aircraft through a loan from a syndicate of lenders organized by
Deutsche Bank (the "Deutsche Bank Loan"). (NC Third-Party Compl.
¶ 12.)

Coreolis later purchased TW Holdings, and in connection
with this purchase, TradeWinds renegotiated the aircraft leases
with C-S Aviation in December 2001.  These renegotiated leases
(the "Modified A300 Leases") lowered the prior rental price for
the planes and guaranteed TradeWinds further price reductions,
to be based on rates offered to C-S Aviation's other customers.
Coreolis and TW Holdings guaranteed TradeWinds' obligations
under the Modified A300 Leases. (NC Third-Party Compl. ¶¶ 27-
32.)

After the December 2001 loan modification, TradeWinds
entered into additional leases with C-S Aviation.  Specifically,
TradeWinds leased three A300s that had previously been leased to
a failing Canadian airline. (NC Third-Party Compl. ¶ 46.)  In
total, as of March 2002, TradeWinds was leasing ten aircraft
from C-S Aviation.  Legal title to these aircraft was vested
neither in C-S Aviation, nor in any of the Trust Beneficiaries.
Rather, legal title was vested in Wells Fargo, which acted as
the United States trustee and acted for the benefit of the Trust

Beneficiaries.  The Trust Beneficiaries were all organized in foreign countries and were controlled by Defendants.

As time passed, the aircraft began to break down and a number of disputes arose between TradeWinds and C-S Aviation. TradeWinds contended that, of fourteen A300 engines it had originally leased from C-S Aviation, twelve failed prior to the 1700-cycle life promised by C-S Aviation. (NC Third-Party Compl. ¶ 34.)  TradeWinds alleged that C-S Aviation was in breach of the Modified A300 Leases because C-S Aviation had failed properly to manage maintenance reserve funds as required in the Modified A300 Leases, and because it had misrepresented the quality of repair work performed on the leased aircraft. (NC Third-Party Compl. ¶¶ 33-45.)

In August 2003, after the Trust Beneficiaries defaulted on the Deutsche Bank Loan, Deutsche Bank assumed the Trust Beneficiaries' rights under the Modified A300 Leases.  Over the next few months, Deutsche Bank claimed that TradeWinds had failed to make adequate rental payments, and warned that it may seek to foreclose on its interest in the aircraft and take possession of them. (NC Third-Party Compl. ¶ 103.)

**B.    Litigation Before the North Carolina Superior Court and the United States Bankruptcy Court for the Southern District of Florida**

In the fall of 2003, Deutsche Bank commenced an action for breach of contract against TradeWinds, TW Holdings, and Coreolis

in the North Carolina Superior Court.  On February 4, 2004,
TradeWinds and its parent companies, Coreolis and TW Holdings,
filed its Amended Answer, Counterclaim and Third-Party complaint
("NC Third-Party Complaint") against C-S Aviation, P-G Newco
LLC, S-C Newco LLC, and Wells Fargo Bank Northwest, N.A. (the
"NC Third-Party Defendants"). (Df.'s Decl. Supp. Mot. to Dismiss
Ex. 3.)  The NC Third-Party Complaint alleged that C-S Aviation
fraudulently induced TradeWinds to enter into the A300 Leases,
and also included claims for breach of contract and deceptive
trade practices in violation of North Carolina General Statutes
§ 75-1.1(a).  Despite being served with the NC Third-Party
Complaint, C-S Aviation failed to appear, and the North Carolina
Superior Court entered a default against C-S Aviation on behalf
of TradeWinds, TW Airlines, and Coreolis on August 19, 2004.

In April 2005, Deutsche Bank, TradeWinds, TW Holdings,
Coreolis, and the NC Third-Party Defendants reached a settlement
of nearly all claims before the North Carolina Superior Court.
However, the claims brought by TradeWinds, TW Holdings, and
Coreolis against C-S Aviation, which had never appeared in the
action, remained unsettled.  The North Carolina Superior Court
re-entered the default of C-S Aviation on February 22, 2007, and
closed its file on the case a few months later.

In April 2008, TradeWinds moved for the entry of a default
judgment against C-S Aviation, and the North Carolina Superior

Court granted TradeWinds' request on June 27, 2008 (the "2008 NC Judgment"). Coreolis and TW Holdings, though third-party plaintiffs in the case, were not listed as beneficiaries in the 2008 NC Judgment. As discussed below, TradeWinds commenced the first of the consolidated veil-piercing actions in this Court two days later, on June 30, 2008. TradeWinds then filed a petition for bankruptcy protection in the United States Bankruptcy Court for the Southern District of Florida on July 25, 2008.

In August 2008, Chatterjee revived C-S Aviation's Delaware certificate of incorporation, which had been void for nonpayment of fees to the State of Delaware since March 2005. C-S Aviation then filed a motion to set aside the entry of default and the 2008 NC Judgment. In November 2008, Coreolis and TW Holdings moved for the amendment of the 2008 NC Judgment to be included as beneficiaries, but withdrew that motion in February 2009, after the Bankruptcy Court stayed the litigation before the North Carolina Superior Court. Later, with leave of the Bankruptcy Court, Coreolis and TW Holding filed a motion for entry of a default judgment against C-S Aviation on March 6, 2009.

On September 17, 2009, the North Carolina Superior Court vacated the 2008 NC Judgment, but refused to set aside the entry of default and scheduled a hearing to determine damages. The

North Carolina Superior Court later issued the 2010 NC Judgment in favor of TradeWinds in the amount of $16,111,403.00, and in favor of Coreolis and TW Holdings in the amount of $11,544,000.00.  Under Delaware law, both amounts are subject to trebling. (2010 NC Judgment ¶ 14.)

C.    The **JetStar I** and **JetStar II** Cases

Jet Star Enterprises Ltd. ("Jet Star"), another company that had leased aircraft from C-S Aviation, commenced two actions in the Southern District of New York relating to their dealings with C-S Aviation.  The cases were Jet Star Enterprises Ltd. v. CS Aviation Services, No. 01 Civ. 6590 (DAB) ("Jet Star I"), and Jet Star Enterprises Ltd. v. Soros, No. 05 Civ. 6585 (HB) ("Jet Star II").  In Jet Star I, Jet Star obtained a default judgment against C-S Aviation.  In Jet Star II, Jet Star asserted a veil-piercing claim against Defendants, attempting to pierce the corporate veil of C-S Aviation and enforce the judgment against Defendants.

Defendants moved for summary judgment in May 2006, and in August 2006 the Southern District denied their motion with respect to the veil-piercing claim against Soros and Chatterjee. See Jet Star II, No. 05 Civ. 6585, 2006 WL 2270375, at *6 (S.D.N.Y. Aug. 9, 2006).  In denying the motion for summary judgment, the Southern District noted the existence of a "Restructuring Agreement" between Soros and Chatterjee

- 9 -

allocating control of C-S Aviation, the relationship between C-S Aviation and Soros Fund Management LLC, the alleged failure of those managing C-S Aviation's affairs to maintain corporate formalities, and the commingling of C-S Aviation's funds with the funds of the Trust Beneficiaries. Id.

In August 2006, Jet Star settled with Defendants prior to trial.

**D.  Procedural History of the Instant Case**

After the North Carolina Superior Court issued the 2008 NC Judgment, TradeWinds commenced its veil-piercing action on June 30, 2008.  Defendants moved to dismiss TradeWinds' first complaint, and moved in the alternative for a stay of the proceedings due to ongoing litigation before the North Carolina Superior Court.  TradeWinds amended its complaint in October 2008, and Defendants renewed their motions for dismissal or a stay.  In November 2008, while Defendants' motions remained pending, Coreolis and TW Holdings moved to intervene in TradeWinds' veil-piercing action.  In February 2009, Coreolis and TW Holdings withdrew their motion to intervene at the direction of the Bankruptcy Court, and this Court granted Defendants' motion for a stay. TradeWinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (JFK), 2009 WL 435298, at *4 (S.D.N.Y. Feb. 23, 2009).

After the 2010 NC Judgment was issued, TW Holdings and Coreolis filed the Coreolis Complaint, asserting a veil-piercing claim against Defendants.  The instant actions were later consolidated, and the Court continued the stay of these cases (with limited exceptions for preservation discovery), pending resolution of C-S Aviation's appeal from the 2010 NC Judgment. TradeWinds Airlines, Inc. v. Soros, Nos. 08 Civ. 5901 (JFK), 10 Civ. 8175 (JFK), 2011 WL 309636, at *4 (S.D.N.Y. Feb. 1, 2011). The Court permitted TradeWinds to file the TradeWinds Complaint, its second amended pleading, and Defendants then brought the instant motions to dismiss the TradeWinds Complaint and the Coreolis Complaint.

Plaintiffs allege that the "complex, multi-tiered" structure of C-S Aviation's aircraft leasing operation was established "to conceal Soros's participation in the business, and ensure that [C-S Aviation] . . . owned no aircraft and was otherwise judgment proof." (TradeWinds Compl. ¶ 7, Coreolis Compl. ¶ 8.)  Plaintiffs also allege that any profits C-S Aviation made were transferred to Defendants through the Trust Beneficiaries, that C-S Aviation was at all relevant times "grossly undercapitalized," and that those operating C-S Aviation regularly disregarded its status as an entity separate from those controlled by Soros and Chatterjee. (See TradeWinds Compl. ¶ 8, Coreolis Compl. ¶ 9.)  Finally, Plaintiffs allege

that C-S Aviation was not wound up in compliance with Delaware law, and continued to exist in a void condition until it was later revived by Chatterjee. (TradeWinds Compl. ¶¶ 13, 17, Coreolis Compl. ¶¶ 14, 18.)

## II.   Discussion

**A.   Defendants' Motion to Dismiss TradeWinds' Second Amended Complaint and Coreolis and TW Holdings' Complaint Pursuant to Civil Rule 12(b)(6)**

### 1.   Legal Standard for a Motion to Dismiss

Prior to filing an answer, a defendant may assert as a defense to the complaint that the complaint fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). A complaint states a claim for relief when it contains "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3).  In making a determination as to whether the factual allegations support the pleader's claim to relief, the court accepts all well-pleaded facts alleged in the complaint as true and draws "all inferences in favor of the plaintiff." In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 692 (2d Cir. 2009) (quotations omitted).

The Federal Rules of Civil Procedure impose heightened pleading requirements when a plaintiff alleges fraud or mistake.

Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Even when these heightened or particularized pleading standards do not apply, a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (emphasis added).

When a veil-piercing claim is based on fraud, it is subject to the requirements of Civil Rule 9(b), which requires the pleading of "particularized facts that give rise to a strong inference that defendant acted with fraudulent intent." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (brackets and internal quotation marks omitted).

    2.  **Application**

To prevail on an alter ego veil-piercing claim under Delaware law, a plaintiff must establish (i) that the company and its controlling shareholder operated as a "single economic entity," and (ii) that an overall element of injustice or unfairness is present. Fletcher v. Atex, Inc., 68 F.3d 1451,

1457 (2d Cir. 1995); see also NetJets Aviation, Inc. v. LHC
Commc'ns, LLC, 537 F.3d 168, 177 (2d Cir. 2008).  Whether a
shareholder has dominated the corporation to such a degree that
the two in fact operated as a "single economic entity" is an
issue of fact.  Factual questions relevant to this issue
include:

> whether the corporation was adequately capitalized for
> the corporate undertaking; whether the corporation was
> solvent; whether dividends were paid, corporate
> records kept, officers and directors functioned
> properly, and other corporate formalities were
> observed; whether the dominant shareholder siphoned
> corporate funds; and whether, in general, the
> corporation simply functioned as a façade for the
> dominant shareholder.

Fletcher, 68 F.3d at 1458; see also NetJets, 537 F.3d at 177.
"No single factor can justify a decision to disregard the
corporate entity, but . . . some combination of them is
required, and . . . an overall element of injustice or
unfairness must always be present, as well." NetJets, 537 F.3d
at 177 (quoting Harco Nat'l Ins. Co. v. Green Farms, Inc., No.
Civ. A. 1331, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989))
(brackets and emphasis omitted).

In addition to showing that the corporation and the person
whom the plaintiff seeks to hold liable operated as a "single
entity," a plaintiff seeking to pierce the corporate veil on an
"alter ego" theory must show an element of fraud or injustice.
This "injustice must consist of more than merely the tort or

- 14 -

breach of contract that is the basis of the plaintiff's lawsuit: 'The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless . . . .'" NetJets, 537 F.3d at 183 (quoting Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 268 (D. Del. 1989)).  "But nothing prevents a court, in determining whether there is sufficient evidence of fraud or unfairness, from taking into account relevant evidence that is also pertinent to the question of whether the two entities in question functioned as one." NetJets, 537 F.3d at 183.

Here, Defendants seek dismissal of the TradeWinds Complaint and the Coreolis Complaint pursuant to Civil Rule 12(b)(6). Defendants argue that dismissal is warranted because certain claims in the TradeWinds Complaint and the Coreolis Complaint are implausible and speculative, or are legally insufficient to show an element of fraud or injustice.

Plaintiffs' allegations that Defendants disregarded corporate formalities, failed to keep proper records, and comingled C-S Aviation's funds with those of other companies are not implausible or speculative allegations, nor are they mere conclusions of law.  Defendants' argument that these allegations do not rise to the level of abuse of the corporate structure for personal purposes present in Net Jets is immaterial to the disposition of their motion to dismiss because whether a

corporation and its owners operated as a single economic entity
does not depend on the ultimate purposes for which the corporate
form was abused.  Accepting Plaintiffs' allegations as true as
the Court must when considering a motion to dismiss, Defendants
used C-S Aviation as a mere instrument for carrying out certain
portions of a larger aircraft rental business, and operated C-S
Aviation in such a way that it had no independent economic
existence.  In view of these allegations and the allegations
concerning C-S Aviation's lack of adequate capitalization,
Plaintiffs have adequately pleaded that C-S Aviation and
Defendants operated as a single economic entity.

Defendants' argue that even if Plaintiffs have pleaded that
C-S Aviation and Defendants operated as a single economic
entity, they have failed adequately to plead the second element
of a claim to pierce the corporate veil on an alter-ego theory,
the existence of fraud or injustice.  On the one hand,
Defendants are correct; to the extent that Plaintiffs allege the
corporate structure of the aircraft leasing business in which
Defendants engaged was intended to defraud, Plaintiffs'
allegations are insufficient to support a veil-piercing claim
under Delaware law.  The facts that C-S Aviation was operating
on behalf of the Trust Beneficiaries, and that the aircraft at
issue were held by Wells Fargo in trust on behalf of the Trust
Beneficiaries make any claim for fraud based on the mere

structure of Defendants' aircraft leasing business legally insufficient.  Furthermore, even if Plaintiffs could prove that they were unaware of the structure, nowhere in either the TradeWinds Complaint or the Coreolis Complaint do Plaintiffs make allegations that satisfy the heightened pleading standard of Civil Rule 9(b).

On the other hand, however, Plaintiffs are not required to show that they were defrauded in order to state a veil-piercing claim under Delaware law.  Plaintiffs need only show an element of injustice distinct from the underlying wrong which gave rise to the cause of action against C-S Aviation.  According to the 2010 NC Judgment, C-S Aviation is liable for the fraudulent inducement of the aircraft leases. (2010 NC Judgment ¶¶ 8, 12.) Plaintiffs allege as an independent wrong that Defendants siphoned funds from C-S Aviation and thus improperly left it undercapitalized.  In doing so, Defendants deprived Plaintiffs of the ability to recover damages on its fraudulent inducement claim.  Defendants argue that this is not an adequate injustice because Plaintiffs could have recovered against Wells Fargo, but whether any recovery against Wells Fargo would have satisfied the judgment against C-S Aviation is not properly before the Court.  That is an issue of fact to be resolved through trial or possibly on a summary judgment motion.  The allegations in the TradeWinds Complaint and Coreolis Complaint, if proven, would

support a claim of unfairness sufficient to make out a veil-piercing claim under Delaware law.

Drawing all necessary inferences in favor of Plaintiffs, the TradeWinds Complaint and Coreolis Complaint clearly set forth facts that state a claim for the requested relief.

**B.   Plaintiffs' Motion to Strike Portions of Defendants Reply Memorandum in Support of Their Motion to Dismiss**

Given the Court's disposition of Defendants' motion to dismiss, Plaintiffs' motion to strike portions of Defendants' reply memorandum is denied as moot.

### III.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss TradeWinds' Second Amended Complaint and Coreolis and TW Holdings' Complaint is denied.  The Clerk of Court is directed to close the open motions in 10 Civ. 8175 (JFK) at ECF No. 21, and in 08 Civ. 5901 (JFK) at ECF No. 74.  Plaintiffs' letter application to strike portions of Defendants' Reply Memorandum in Support of the instant motion is denied as moot.

Furthermore, in view of the filing of TradeWinds' Second Amended Complaint, Defendants' motion to dismiss the First Amended Complaint is denied as moot.  The Clerk of Court is directed to close the open motion in 08 Civ. 5901 (JFK) at ECF No. 20.

The stay of this action is continued, subject to the Court's prior orders.

**SO ORDERED.**

Dated:    New York, New York
          March 22, 2012

_____
          JOHN F. KEENAN
     United States District Judge