Violet Elizabeth Grayson (VEG-2792)
Attorney at Law
548 West 148th street
New York, New York 10031
(646) 406-1512
vegrayson@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
TRADEWINDS AIRLINES INC.,                :
                                         :    Case No. 08 CV 5901
             Plaintiff,                  :
                                         :    THIRD AMENDED
                                         :    COMPLAINT
       -against-                         :
                                         :    JURY TRIAL DEMANDED
GEORGE SOROS AND PURNENDU                :
CHATTERJEE,                              :
                                         :
             Defendants.                 :
----------------------------------------------------------------X

Introduction

    1.    This is an action by TradeWinds Airlines, holder of a judgment against C-S Aviation Services Inc., to pierce the corporate veil of said shell corporation, and recover the judgment from its principals, George Soros and Purnendu Chatterjee. TradeWinds brings this action through Barry E. Mukamal, its Chapter 7 bankruptcy trustee.

Parties, Jurisdiction and Venue

2.Plaintiff, TradeWinds Airlines, Inc. ("TradeWinds") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Greensboro, North Carolina.

3.Defendant George Soros ("Soros") is a natural person and a resident and citizen of the state of New York.

4.Defendant Purnendu Chatterjee ("Chatterjee") is a natural person and a resident and citizen of the state of New York.

5.Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, as there exists complete diversity between plaintiff and defendants, and the amount in controversy exceeds $75,000.

6.Venue is properly laid in the Southern District of New York, as events giving rise to this action occurred in the State, City and County of New York, and the defendants reside and/or have their principal place of business in New York County.

Facts

7.In 1994, Defendants Soros and Chatterjee, long-time business partners, decided to enter the aviation business together. For this purpose, they put in place a complex, multi-tiered corporate structure designed to, *inter alia*, conceal Soros's participation in the business, and ensure that the aircraft management company which actually conducted the business, and might therefore be sued in connection with its conduct of the business, owned no aircraft and was otherwise judgment proof. The entire business structure was designed as an elaborate shell game intended to defraud and perpetrate injustice.

8. C-S Aviation Services, Inc. ("C-S") was incorporated in Delaware to serve as aircraft management company pursuant to the fraudulent plan described above. Chatterjee has, at all pertinent times, been the sole shareholder of C-S. Soros, however, has at all times personally owned one half of C-S, notwithstanding the irregularity of Defendants' failure to record Soros' interest through ownership of stock. For several years, Chatterjee actually controlled and dominated C-S. In 1998, however, Defendant Soros personally and directly assumed complete domination and control of C-S. This state of affairs persists to the present day. Thus, Chatterjee and Soros are undoubtedly responsible for the misconduct of C-S which gave rise to the judgment against that corporation and in favor of Plaintiff, TradeWinds.

9. Defendants Soros and Chatterjee organized their aviation business in the manner described above and grossly undercapitalized C-S, for the purpose of defrauding potential judgment creditors such as Plaintiff. In a further effort to defraud creditors, while simultaneously evading Federal Aviation Administration regulations designed to safeguard national security, Defendants vested bare-bones legal title to the aircraft, which they controlled through C-S, in Wells Fargo Bank Northwest NA (hereafter "Wells Fargo") as "owner-trustee." Notwithstanding the bare-bones legal title vested in Wells Fargo, Defendants retained beneficial ownership of the aircraft through a series of foreign corporations designed to avoid payment of taxes. All profits from rental of the aircraft were up-streamed to Defendants; Wells Fargo never held any monies with which to satisfy a judgment. In all litigation arising out of the C-S aircraft leasing business, Wells Fargo appeared as a "straw-man" party. If Defendants/C-S succeeded in the litigation, proceeds were paid to Defendants and not to Wells Fargo. If Defendants/C-S were

unsuccessful in the litigation, Wells Fargo refused to pay the resulting judgment, protesting that it had appeared in the litigation merely as "owner-trustee," and held no assets in trust from which to make payment. Thus, Wells Fargo's appearance in litigation was just one more aspect of the elaborate shell game Defendants designed to defraud creditors such as Plaintiff, TradeWinds.

10. Defendants Soros and Chatterjee also operated C-S as their alter-ego, not only by grossly undercapitalizing the company, but also by entirely ignoring corporate formalities, keeping no minutes of Directors' meetings or other normal corporate records, operating the company through persons who were neither its officers nor its directors, freely co-mingling the funds of C-S with the funds of other companies they controlled and with their own funds, up-streaming all income from C-S and the aviation business to themselves on an opportunistic basis, and ensuring that C-S always hovered on the verge of insolvency in order to defraud creditors. Defendants ignored and abused the corporate form with such abandon that persons actually conducting the business of C-S did not even know that C-S was a corporation. In short, "C-S Aviation Services, Inc." was a sham, designed and operated to perpetrate fraud.

11. In early 2003, following a post-911 downturn in the aviation industry, Defendants decided to abandon C-S, and allow creditors to obtain default judgments against that entity. On July 15, 2003, Jet Star Enterprises, Ltd. obtained a judgment against C-S in the amount $3,432,867, in the Federal District Court for the Southern District of New York. Ten days later, when said judgment became collectible under the Federal Rules of Civil Procedure, Defendants hastily stripped C-S of its officers, directors, employees, cash, chattel, business goodwill, business contracts, and business

4

functions. A new corporation, utilizing the same employees to perform the same business functions, immediately commenced conducting business on defendant Soros's premises after C-S was dismembered.

12. Subsequently, C-S judgment creditor Jet Star Enterprises brought suit in the Southern District seeking to, *inter alia,* pierce the corporate veil of C-S to reach defendants Soros and Chatterjee. The proceedings in said action, 05 CV 6585 (HB), are a matter of public record, and shed light upon the manner in which Soros and Chatterjee abused the corporate form in their operation of C-S.

13. In the wake of the foregoing events, Defendants did not wind up the affairs of C-S in compliance with Delaware law, but instead simply stopped paying fees due to the State of Delaware. For a period of years, C-S existed in a void condition, violative of its own by-laws.

14. In January of 2004, TradeWinds Airlines, which was engaged in complex litigation involving certain aircraft originally leased to TradeWinds by C-S, filed a Third Party Complaint against C-S in the Superior Court of Guilford County, North Carolina (the "North Carolina Court"). A copy of said complaint, with summons, was sent via certified mail to the offices of defendant Soros, but was ignored. In due course, service of the Third Party Complaint upon C-S was perfected in compliance with North Carolina law. In August of 2004, TradeWind's moved the North Carolina Court to enter the default of Third-Party defendant C-S.

15. Due to apparent clerical error, the North Carolina Court entered the default of C-S Aviation twice, once in 2004, and again in 2007 following settlement of the

balance of the litigation. For a period of years, defendants Soros and Chatterjee were aware of the default of C-S Aviation in the North Carolina litigation, but took no action.

16. In early 2008, TradeWinds moved for entry of a default judgment against C-S, in compliance with North Carolina law. On June 27, 2008, following submission of evidence and a hearing, the North Carolina Court entered judgment in favor of TradeWinds and against C-S in the amount of $54,867,872.49. On the following business day, TradeWinds instituted this veil piercing action against Soros and Chatterjee.

17. After the veil piercing action was filed, Soros and Chatterjee belatedly paid the fees due the State of Delaware in order to bring C-S Aviation back into good corporate standing so that it could move the North Carolina Court for vacation of the default and default judgment. Plaintiff is informed and believes that Soros and Chatterjee engaged in myriad improprieties in connection with reviving C-S Aviation. Plaintiff is further informed and believes that Soros and Chatterjee's manner of operating C-S Aviation since they revived that corporation has constituted an on-going abuse of the corporate form; in particular, Soros and Chatterjee liberally fund the North Carolina litigation while leaving C-S Aviation a judgment-proof empty husk.

18. The North Carolina Court ultimately denied C-S Aviation's motion for relief from default and granted its motion for relief from default judgment. That Court then held a six day trial at which the allegations of TradeWinds' complaint against C-S Aviation were deemed admitted, and TradeWinds was required to prove its damages.

19. On July 26, 2010, the North Carolina Court rendered a Final Judgment in favor of TradeWinds and against C-S Aviation. The value of the Final Judgment as of the date of this Third Amended Complaint is $68,836,720, which sum includes trebling and

6

interest per the North Carolina Court's order. At the North Carolina statutory interest rate of eight percent per annum, as calculated by the Guilford Court Clerk, the value the Final Judgment increases at the rate of $10,593.80 per day.

20. The final judgment rendered in favor of TradeWinds Airlines and against C-S Aviation was affirmed by a unanimous opinion of the North Carolina Court of Appeals dated September 18, 2012. By order dated June 13, 2013, the North Carolina Supreme Court denied C-S Aviation's Petition for Discretionary Review of the decision of the North Carolina Court of Appeals. Accordingly, the final judgment against C-S Aviation is no longer subject to further appellate review.

21. TradeWinds is unable to collect its judgment from C-S because Defendants have abused the corporate form and rendered C-S insolvent and judgment-proof in the manner previously set forth herein. Moreover, at no time since service of the complaint against C-S in the North Carolina litigation, would TradeWinds have been able to collect from Wells Fargo any judgment rendered against C-S for its misconduct.

22. Defendants' misconduct has worked a great injustice and unfairness against TradeWinds in that, *inter alia,* Defendants have created and operated C-S Aviation as their alter ego, abused the corporate form, disregarded C-S Aviation's formal management structure, failed to adequately capitalize C-S Aviation, commingled C-S Aviation's assets with the assets of other entities that Defendants owned and/or controlled, profited by up-streaming profits to themselves, and deliberately structured and operated C-S Aviation in a manner designed to render it judgment proof, thus leaving TradeWinds without compensation for the huge economic harm inflicted by their

7

creature, C-S Aviation, in violation of North Carolina law, as reflected in the unsatisfied North Carolina judgment.

23.     Defendants' conduct complained of herein also includes the period from and after June 2008, during which time Soros and Chatterjee engaged in gross abuse of the corporate form and ongoing efforts to thwart Plaintiffs in the North Carolina litigation so as to shield themselves from personal liability.  At no time during this period did C-S Aviation have any business operations, assets, employees, or genuine place of business. Its sole function was to litigate in North Carolina so as to protect Soros and Chatterjee from exposure in this veil piercing action, including but not limited to:

(a)     After technically reviving the defunct C-S Aviation corporate entity in August of 2008, Soros and Chatterjee retained and compensated the law firm of Ellis & Winters LLP in August 2008 to act as counsel for C-S Aviation to in the North Carolina litigation.  Soros and Chatterjee paid Ellis & Winters' fees and expenses, and supervised its activities, so as to use the empty C-S Aviation corporate shell to benefit the personal interests of Soros and Chatterjee at the expense of Plaintiffs.  These efforts included motions to vacate the default and default judgment, opposing Plaintiffs at the damages trial in North Carolina, moving for reconsideration, motions to set aside, reconsider or amend the final judgment, prosecuting appeals from the final Judgment to the North Carolina Court of Appeals, and petitioning for Discretionary Review by the North Carolina Supreme Court.

(b)     Soros and Chatterjee also retained the law firm of Womble Carlyle Sandridge & Rice to assist Ellis & Winters in prosecuting C-S Aviation's appeals and petitioning for Discretionary Review by the North Carolina Supreme Court.  Again, the

law firm's fees and expenses were paid by Soros and Chatterjee, and their activities were similarly supervised by Soros and Chatterjee, so as to use the empty C-S Aviation corporate shell to benefit the personal interests of Soros and Chatterjee at the expense of Plaintiffs.

(c)     Soros and Chatterjee, directly or indirectly, retained and compensated expert witnesses to testify on behalf of C-S Aviation at the damage trial in North Carolina. They also caused C-S Aviation to retain a newly minted "corporate officer" to appear as the C-S Aviation corporate representative and sit at counsel table on the corporate shell's behalf during the damage trial.

(d)     Soros and Chatterjee have also attempted to thwart Plaintiffs' efforts to execute on their judgments against C-S Aviation. After the judgments were entered, Plaintiffs obtained writs of execution, issued on March 22, 2011. The Sherriff of Guilford County, North Carolina attempted to serve the writs of execution on Ellis & Winters, as counsel of record for C-S Aviation. Service, however, was refused. The writs of execution were returned unsatisfied. Thereafter, Plaintiffs served Post-Judgment Interrogatories on Ellis & Winters, as counsel of record for C-S Aviation, to discover the existence and location of any C-S Aviation assets, including any accounts established for payment of C-S Aviation's substantial legal fees and expenses. C-S Aviation refused to answer any of those interrogatories. When Plaintiffs moved to

compel answers to those interrogatories, Ellis & Winters took the position that any discovery regarding the location of C-S Aviation's assets, including the payment of its legal fees and expense, should be conducted in the context of the veil piercing cases pending in New York. Throughout this period, Ellis & Winters was taking direction from

9

Soros and Chatterjee, either directly or through counsel, so as to protect the interests of Soros and Chatterjee to the detriment of TradeWinds.

(e)     From June 2008 to the present, Soros and Chatterjee have consistently attempted to conceal the full extent of their role in financing and directing the North Carolina litigation through the shell C-S Aviation entity, intending all along to leave C-S Aviation without funds to satisfy any judgment entered against it in the North Carolina litigation.

(f) These tactics constitute abuse of the corporate form, and are unfair to Plaintiff TradeWinds.

First Cause of Action – To Pierce Corporate Veil

24.     Plaintiff repeats and incorporates by reference the allegations of each of the foregoing paragraphs herein.

25.     Defendants Soros and Chatterjee have abused the corporate form by creating an elaborate shell game to profit themselves while defrauding creditors, creating C-S as a judgment-proof sham corporation in furtherance of said scheme, treating C-S as their alter ego, and actually defrauding the creditors of C-S, including Plaintiff, TradeWinds, through this conduct, as previously set forth herein.

26.     Said misconduct of Soros and Chatterjee has caused plaintiff TradeWinds economic injury in the amount of $56,131,935 plus applicable post-judgment interest.

27 .    This Court should accordingly issue a judgment piercing the corporate veil of C-S, and holding Soros and Chatterjee personally liable, jointly and severally, for the full amount of the North Carolina judgment plus post-judgment interest .

WHEREFORE PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:

1) Declaring the corporate veil of C-S Aviation pierced, and Defendants Soros and Chatterjee jointly and severally liable for any sum owed by C-S Aviation to Plaintiff, TradeWinds;

2) Entering judgment in favor of Plaintiff TradeWinds and against Defendants Soros and Chatterjee, jointly and severally, in the full amount of the North Carolina judgment, together with all applicable interest on said judgment;

3) Awarding Plaintiff attorney's fees and costs if and as allowed by law;

4) Awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: _____
Violet Elizabeth Grayson (VEG-2792)
Attorney at Law
548 West 148th Street
New York, N.Y. 10031
(646) 406-1512
vegrayson@gmail.com

Attorney for Plaintiff TradeWinds Airlines