LAW OFFICES

# BUTLER, FITZGERALD, FIVESON & McCARTHY

A Professional Corporation
NINE EAST 45TH STREET
NINTH FLOOR
NEW YORK, NEW YORK 10017

Raymond Fitzgerald
212-615-2222
rfitzgerald@bffmlaw.com

Telephone 212-615-2200
Facsimile 212-615-2215

September 23, 2013

**BY HAND**

Honorable Andrew J. Peck
United States Magistrate Judge
United States District Court
 For the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   TradeWinds Airlines, Inc. v. George Soros and Purnendu Chatterjee, 08 Civ. 5901 (JFK);
       Coreolis Holdings, Inc. and TradeWinds Holdings, Inc. v. George
       Soros and Purnendu Chatterjee, 10 Civ. 8175 (JFK)

Dear Magistrate Judge Peck:

    We, together with Willkie, Farr & Gallagher LLP, represent defendant George Soros ("Mr. Soros") in the above-referenced action. Mr. Soros's co-defendant Purnendu Chatterjee ("Dr. Chatterjee"), who is represented by Posternak Blankstein & Lund LLP and Morrison Cohen LLP, joins in this letter. The purpose of this letter motion is to seek an order compelling plaintiffs to provide full and complete interrogatory answers and a full and complete production of documents.

    Several discovery disputes have arisen between plaintiffs and defendants in these actions. On Wednesday September 18, 2013, plaintiffs and defendants engaged in a meet and confer conference call in an attempt to resolve these discovery disputes without the intervention of this Court. Some of the disputes were resolved, some were not and one, related to what the parties have referred to as the "Accountant Subpoenas" dispute, is in the process of being resolved, hopefully.

    The two unresolved discovery disputes that concern defendants are (i) a dispute with respect to plaintiffs' answers to interrogatories Mr. Soros propounded to plaintiffs TradeWinds Holdings, Inc. ("Holdings") and to Coreolis Holdings, Inc. ("Coreolis"), and (ii) a dispute with respect to Holdings' and Coreolis' responses, and production with respect to, document requests

propounded to plaintiffs by defendants.[1]

Central to both disputes, and plaintiffs' refusal to fully and completely respond to the interrogatories and the document requests, is what plaintiffs have referred to as their North Carolina Litigation objection. Plaintiffs have objected to many of the interrogatories propounded by Mr. Soros, and many of the document requests made by defendants, on the ground that they seek information concerning the North Carolina Litigation which, plaintiffs assert, is beyond the permissible scope of discovery in this case. Plaintiffs' objection should be overruled for two reasons.

First, plaintiffs themselves have opened the door to discovery with respect to the North Carolina Litigation because they each have devoted approximately one third of the fact allegation sections of their complaints to the North Carolina Litigation. Paragraphs 15 through 22 of Holdings' and Coreolis' First Amended Complaint, a copy of which is enclosed as Exhibit 1, and paragraphs 14 through 20 of TradeWinds' Third Amended Complaint, a copy of which is enclosed as Exhibit 2, make numerous allegations concerning the North Carolina Litigation. In addition, plaintiffs have specifically incorporated by reference into their complaints in these actions the Third Party Complaint in the North Carolina Litigation, a copy of which is enclosed as Exhibit 3. (See, paragraph 15 of the First Amended Complaint and paragraph 14 of the Third Amended Complaint.) Having based their allegations in their complaints in these actions, in part, on the North Carolina Litigation and having incorporated by reference into their complaints in these actions the Third Party Complaint, plaintiffs cannot now deny defendants discovery with respect to the North Carolina Litigation. In fact, plaintiffs requested that Mr. Soros and Dr. Chatterjee produce from their files, and asked them to arrange for production from the C-S Aviation's warehoused files, all documents concerning Coreolis, Holdings and TradeWinds, which requests obviously seek information regarding all of the facts that were in issue in the North Carolina Litigation.

Second, plaintiffs' proof of the elements of their claim in this action necessarily will involve an examination of the events and the transactions that were at issue in the North Carolina Litigation. Plaintiffs' claim in these actions is to pierce the corporate veil of C-S Aviation. In order to prove that claim, plaintiffs must show fraud or that C-S Aviation was the mere instrumentality, or alter ego, of defendants. Net Jets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168, 176 (2d Cir. 2008), quoting Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992). Plaintiffs have alleged both grounds for piercing the corporate veil. (See, paragraphs 8, 9, 10, 11 and 27 of the First Amended Complaint and paragraphs 7, 8, 9, 10 and 25 of the Third Amended Complaint.)

The fraud plaintiffs have alleged in their complaints is both broad and unspecific. Holdings and Coreolis allege in paragraph 8 of their First Amended Complaint that defendants

---

[1] The third plaintiff, TradeWinds Airlines, Inc. ("TradeWinds"), has not yet responded to either the interrogatories or the document requests because of delays resulting from the recent termination of its former counsel and the retention of its current counsel.

created:

> " a complex, multi-tiered corporate structure designed to, *inter alia*, conceal Soros's participation in the business, and ensure that the aircraft management company which actually conducted the business, owned no aircraft and was otherwise judgment proof. The entire business structure was designed as an elaborate shell game intended to defraud and perpetrate injustice." (emphasis added) (Exhibit 1, ¶8).

In paragraph 9 of their First Amended Complaint, Holdings and Coreolis allege that defendants engaged in a "fraudulent plan." In paragraph 10 of their First Amended Complaint, Holdings and Coreolis allege that defendants acted "for the purpose of defrauding creditors," make specific allegations as to how defendants purportedly defrauded creditors and reiterate that defendants had created an "elaborate shell game Defendants designed to defraud creditors such as [Holdings and Coreolis]." Again, in paragraph 11 of the First Amended Complaint, Holdings and Coreolis allege that defendants acted "to defraud creditors" and that "'C-S Aviation Services, Inc.' was a sham, designed and operated to perpetrate fraud." In paragraph 27 of the First Amended Complaint, Holdings and Coreolis charge defendants with "actually defrauding the creditors of C-S Aviation, including [Holdings and Coreolis]."

Because the fraud allegations are both broad and amorphous, defendants are entitled to a good deal of leeway in conducting discovery so that they can properly defend against such claims. Plaintiffs have not made any allegations that defendants interacted in any manner with plaintiffs. Plaintiffs, however, have alleged, in their Third Party Complaint, that the entity that interacted with plaintiffs was C-S Aviation, defendants' purported alter ego. (Exhibit 3, ¶9) More than eighty paragraphs of the Third Party Complaint are devoted to C-S Aviation's purported fraud, but not one of those eighty paragraphs alleges that C-S Aviation misrepresented the structure of the aircraft leasing business or how a misrepresentation concerning the structure of the aircraft leasing business harmed plaintiffs. Defendants are entitled to discover exactly what the fraud was, who committed the fraud, how, if at all, plaintiffs relied on such fraud and how, if at all, plaintiffs were damaged by such fraud. If that involves discovery with respect to the North Carolina Litigation, so be it.

In addition, in order to prove fraud, plaintiffs will have to prove reliance by plaintiffs on whatever misrepresentations they claim defrauded them. LaSalle National Bank v. Perelman, 82 F. Supp. 2d 279 (D. Del. 2000). It is difficult to see how plaintiffs will be able to prove reliance without relying on the events and transactions referred to in the North Carolina Litigation and, therefore, how defendants can defend against plaintiffs' claims of reliance without engaging in discovery that involves events and transactions referred to in the North Carolina Litigation.

In order to prove that defendants were the alter ego of C-S Aviation, plaintiffs have to satisfy the single economic entity test and prove that there was an element of injustice and unfairness to plaintiffs present in the manner in which defendants dealt with C-S Aviation. Net Jets, 537 F.3d at 176, citing Harco National Insurance Co. v. Green Farms, Inc., 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989). Fraud can be shown to establish the element of injustice

or unfairness. Brown v. General Electric Capital Corp. (In re Foxmeyer Corp.), 290 B.R. 229, 235-36 (Bankr. D. Del. 2003). See also NetJets, 537 F.3d at 176 (citing cases). To the extent that Mr. Soros' interrogatories or defendants' document requests seek information relevant, or potentially relevant, to fraud or the single economic entity test, they are entitled to full and complete interrogatory responses and to full and complete document request responses, and document production, regardless of whether such interrogatories or document requests also relate to the North Carolina Litigation.

Similarly, with respect to the element of unfairness and injustice to plaintiffs arising from the manner in which defendants dealt with C-S Aviation, that necessarily will involve the acts, and omissions, of C-S Aviation alleged in the Third Party Complaint in the North Carolina Litigation. Thus, to the extent that Mr. Soros' interrogatories or defendants' document requests seek information relevant, or potentially relevant, to injustice and unfairness to plaintiffs from the manner in which defendants dealt with C-S Aviation, they are entitled to full and complete interrogatory responses and to full and complete document request responses, and document production, regardless of whether such interrogatories or document requests also relate to the North Carolina Litigation.

Many of the interrogatories and document requests to which plaintiffs have refused to respond, or to fully and completely respond, however, have nothing to do with the North Carolina Litigation. Other of the interrogatories and document requests overlap with respect to events and transactions that were the subject of the North Carolina Litigation, i.e., they seek information that may have been relevant to the North Carolina Litigation and information that also may be relevant to the elements of the claim that plaintiffs have asserted against defendants in these actions and to defendants' defense thereto. With respect to those interrogatories and those document requests, defendants are entitled to full and complete responses and production because the information sought is relevant to the elements of plaintiffs' claim in this action, and defendants' defense thereto, even if such information also may relate to the North Carolina Litigation.

## INTERROGATORIES THAT DO NOT RELATE TO THE NORTH CAROLINA LITIGATION

The interrogatories that do not relate to the North Carolina Litigation are interrogatories 1, 2, 13, 14, 15, 17 and 18. The First Set of Interrogatories By Defendant George Soros to Holdings ("Interrogatories to Holdings") and the First Set of Interrogatories By Defendant George Soros to Coreolis ("Interrogatories to Coreolis") are enclosed respectively as Exhibits 4 and 5.

### 1. Holdings' and Coreolis' Response to Interrogatories 1 and 2

Interrogatory 1 requested that Holdings and Coreolis:

> "Identify all persons who have knowledge of any of the allegations contained in paragraphs 8 through 12, 14 through 16, 18, 22, 23, and the two paragraphs following paragraph 24 that are erroneously designated 20 and 21 of the Complaint."[2]

The Interrogatories to Holdings and the Interrogatories to Coreolis defined the word "identify" to mean "to give, to the extent known, the person's full name, present or last known residence and business addresses, present or last known residential and business telephone numbers and present or last known personal and business email addresses and, for a natural person, the present or last known place of employment." Holdings and Coreolis did not provide all of the information requested by interrogatory 1. Copies of Holdings' Objections and Responses to Defendant's First Set Of Interrogatories ("Holdings Interrogatory Response") and of Coreolis' Objections and Responses to Defendant's First Set Of Interrogatories ("Coreolis Interrogatory Response") are enclosed respectively as Exhibits 6 and 7.

The Holdings Interrogatory Response and the Coreolis Interrogatory Response to interrogatory 1 list thirty four names and by whom those people are, or were, employed. The Holdings Interrogatory Response and the Coreolis Interrogatory Response to interrogatory 1 do not provide the other requested information such as present or last known residence and business addresses, present or last known residential and business telephone numbers and present or last known personal and business email addresses.

With respect to thirty one of the thirty four people listed, defendants know, or can readily ascertain, the identification information requested that is missing. Therefore, Mr. Soros is not moving to compel plaintiffs to provide complete information with respect to such people. With respect to two of the people on that list, Richard Ressler and Mark Yung, they are within the control of Holdings and Coreolis so defendants do not require their residence addresses. However, with respect to one of the people on that list, Jeffrey Conry, he appears no longer to be within the control of Holdings and Coreolis and they may not be able to produce him for deposition. Therefore, defendants, in order to be able to subpoena Mr. Conry for deposition, may need his last known home address which Holdings and Coreolis should have because he is, or was, an officer and director of Holdings and Coreolis. We respectfully request that this Court order Holdings and Coreolis to provide defendants, within five days, either with Mr. Conry's last known residence address or an affidavit from officers of Holdings and Coreolis to the effect that Holdings and Coreolis do not have a last known residence address for Mr. Conry.

Interrogatory 2 requested Holdings and Coreolis to identify the custodians of documents concerning the allegations in the paragraphs of the Complaint set forth in interrogatory 1. Holdings and Coreolis, again, did not provide any identification information other than names. Defendants, however, can readily ascertain such information with respect to the names Holdings and Coreolis identified and, therefore, are not moving to compel with respect to such information.

---

[2] A copy of the Complaint, which is the predecessor to the First Amended Complaint, is annexed as Exhibit 8. The interrogatories were served before Holdings and Coreolis served and filed their First Amended Complaint

2. **Holdings' and Coreolis' Responses to Interrogatory 13**

Interrogatory 13 requested that Holdings and Coreolis:

> "Identify all persons who are, or were, custodians of documents concerning the corporate affairs of [Holdings and Coreolis] concerning TradeWinds or [Holdings and Coreolis] for any portion or all of the period from January 1, 1999 through December 31, 2008, including, without limitation, minutes of board of director meetings, consents in lieu of board of directors meetings, minutes of shareholder meetings and consents in lieu of shareholder meetings."

Holdings and Coreolis responded stating:

> "Subject to and without waiving the general objections and the foregoing objection, see documents produced in response to Defendants' First Request for Production of Documents, Bates No. Plaintiffs0000001 -Plaintiffs0023121, Plaintiffs0034532 - Plaintiffs0140301."

Those responses are improper for two reasons. First, such response, referring the proponent of the interrogatory to 128,890 pages of documents generally, is an abuse of Section (d) of Rule 33 of the Federal Rules of Civil Procedure and, in essence, is no response at all. Magistrate Judge Pitman held in In re Vivendi Universal, S.A. Securities Litigation, 2009 WL8588405 (S.D.N.Y. July 10,2009): "Rule 33(d) does not permit a party to respond to an interrogatory by simply pointing to a mass of documents and advising the interrogating party that the answer to its question is 'in there somewhere.' A Rule 33(d) interrogatory response must, to some extent, specify the appropriate documents from which the information sought can be derived. It is "'an abuse of the [Rule 33(d)] option' to merely direct the interrogating party to a mass of business records. Advisory Committee note to the 1980 Amendment to Rule 33(c); see, Budget Rent–A–Car, Inc. v. Hertz Corp., 55 F.R.D. 354, 357 (W.D.Mo.1972) ("a broad statement that the information sought is ascertainable generally from the documents . . . is not a sufficient answer"); In re MasterKey Litig., 53 F.R.D. 87, 90 (D.Conn.1971) (it is not plausible to assume that a response, that an answer may (or may not) be found in its records, accompanied by an offer to permit their inspection is sufficient [under Rule 33(d)]"); see, also, Sadofsky v. Fiesta Prods., LLC, 252 F.R.D. 143, 148–49 (E.D.N.Y.2008); Atlanta Shipping Corp. v. Cross & Brown Co., 113 F.R.D. 108, 111–112 (S.D.N.Y.1986); Colorado v. Schmidt–Tiago, 108 F.R.D. 731, 735 (D.Col.1985); Harlem River Consumers v. Associate Grocers of Harlem, 64 F.R.D. 459, 462 (S.D.N.Y.1974)." 2009 WL8588405 at *6. See, also, Convermat Corporation v. St. Paul Fire and marine Insurance Company, 2007 WL 2743696 (E.D.N.Y. Sept. 18, 2007).

Holdings and Coreolis responded to fifteen of the twenty interrogatories that were interposed in the same manner, i.e., telling Mr. Soros to search through 128,890 pages of documents for a response to his interrogatories. The fifteen interrogatories to which Holdings and Coreolis responded in this same manner are interrogatories 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

14, 15, 17 and 18.³  For this conduct alone, this Court should order Holdings and Coreolis to provide Mr. Soros with full and complete responses to these interrogatories.

Second, the information sought, of which interrogatory 13 is just the first step in ascertaining such information, is directed to the element of fraud that Holdings and Coroelis have alleged was committed by defendants and their purported alter ego. Defendants are entitled to inquire about the details of those fraud allegations and what facts plaintiffs knew, and when, in order for defendants to be able to defend against such allegations of fraud. Holdings and Coreolis should be compelled to provide defendants with the information requested in interrogatory 13 so that defendants can take the next steps to obtaining documents related to such fraud from the custodians of such documents.

We respectfully request that this Court order Holdings and Coreolis to provide full and complete responses to interrogatory 13 within five days.

3.   **Holdings' and Coreolis' Response to Interrogatory 14**

Interrogatory 14 requested that Holdings and Coreolis:

"Identify all persons who are, or were, custodians of any documents concerning the business affairs of Coreolis concerning TradeWinds or Holdings for any portion or all of the period from 1999 through 2008, including, without limitation, communications by, or to, or among any shareholder, director, officer or employee of Coreolis concerning TradeWinds or Holdings; TradeWinds' aircraft and aircraft engine leases; as they concern TradeWinds or Holdings, Coreolis' general ledger, accounts receivable records, accounts payable records, balance sheets, profit and loss statements, income statements, audited and unaudited financial statements, tax returns, bank account and/or investment account statements, records of intercompany transfers, credits and/or liabilities between or among TradeWinds, Holdings and/or Coreolis, projections of revenue, income, profits, losses, cash flows and/or the anticipated future financial condition of TradeWinds or Holdings; the capitalization of TradeWinds or Holdings; or any payment, dividend, conveyance or transfer of money, property or assets of any kind that TradeWinds or Holdings made, directly or indirectly, to, or for, the account of Holdings, Coreolis, David Robb, Richard Ressler or any investor in Holdings or Coreolis."

Interrogatory 14 is much the same as interrogatory 13 in that it is directed to ascertaining the identification information with respect to the custodians of documents that may be relevant, or may lead to other information that may be relevant, to the fraud element of plaintiffs' claim and, in part, to the single economic entity test element of plaintiffs' claims. For example, interrogatory 14 seeks the identification of custodians of documents that contain or refer to

---

³ The Court should consider that defendants, without raising it specifically in each instance, are contesting this type of response by Holdings and Coreolis with respect to their responses to each such interrogatory.

"communications by, or to, or among any shareholder, director, officer or employee of Coreolis concerning TradeWinds or Holdings." This discovery goes to the fraud element of the piercing of the corporate veil claim and defendants being able to show that Holdings and Coreolis knew facts that they now claim they did not know.

4.    **Holdings' and Coreolis' Response to Interrogatory 15**

Interrogatory 15 requested that Holdings and Coreolis:

"Identify all persons who were accountants for [Holdings and Coreolis] for any portion or all of the period from January 1, 1999 through December 31, 2008."

Interrogatory 15 is directed at ascertaining who Holdings' and Coreolis' accountants are so defendants can subpoena Holdings' and Coreolis' financial records. These may be relevant, or lead to the discovery of relevant information relating, to the issues of fraud and whether there was any injustice or unfairness, i.e., any harm, to Holdings and Coreolis from the manner in which defendants dealt with C-S Aviation. In any event, Holdings and Coreolis should identify such accountants and they can contest the discoverability of such documents if, and when, defendants' subpoena them.

5.    **Holdings' and Coreolis' Response to Interrogatory 16**

Interrogatory 16 requested that Holdings and Coreolis "[s]tate the last known residence and business addresses of David Robb, Jeff Conry, George McConnaughey, Robbie Dexter, Bryan Winters, Richard Ressler, Mark Yung, Clifford Routh, Dawson Wimmer, David Johnson, Richard Canoval and Mark Gallagher." Holdings and Coreolis responded by providing the business addresses of Messrs. Ressler and Yung and simply ignored responding with respect to the remaining individuals. Holdings and Coreolis should be ordered to provide the requested information with respect to the other individuals.

6.    **Holdings' and Coreolis' Responses to Interrogatories 17 and 18**

Interrogatory 17 requested that Holdings and Coreolis:

"Identify all persons who have knowledge of any forgery committed by any shareholder, director, officer, employee or agent of TradeWinds, Holdings or Coreolis during the period from January 1, 1999 through December 31, 2008, including, without limitation, the forgery of a letter dated December 16, 2002 from James F. Walsh to Jeff Conry."

Interrogatory 18 requested that Holdings and Coreolis:

"Identify all persons who are, or were, custodians of documents concerning any forgery committed by any shareholder, director, officer, employee or agent of TradeWinds, Holdings or Coreolis during the period from January 1, 1999 through

December 31, 2008, including, without limitation, documents concerning the forgery of a letter dated December 16, 2002 from James F. Walsh to Jeff Conry, the planting of that letter in the warehoused records of C-S Aviation and all court proceedings regarding such conduct."

These interrogatories are directed to the credibility and truthfulness of Holdings and Coreolis. David Robb and Jeff Conry were officers and directors of Holdings, Coreolis and TradeWinds. Mr. Robb was the president of Coreolis and Chairman of the Board of TradeWinds. Mr. Conry was the president of TradeWinds. While he was an president of Coreolis and an officer and director of Holdings and the Chairman of the Board of TradeWinds, Mr. Robb forged a letter purportedly signed by the chief excutive officer of C-S Aviation essentially confessing that C-S Aviation had committed all of the wrongdoing that TradeWinds, Holdings and Coreolis alleged. Mr. Robb then personally showed up at a document production of C-S Aviation's documents at a warehouse in New Jersey. He placed the forged document in C-S Aviation's files. Then he purported to discover the document. Mr. Conry commited perjury by swearing to a false affidavit. Interrogatories 17 and 18 seek discovery, and are entitled to discovery, concerning such forgery and perjury because it goes to Holdings' and Coreolis' credibility.

## INTERROGATORIES WITH RESPECT TO WHICH THE INFORMATION SOUGHT MAY OVERLAP IN BEING RELEVANT TO DEFENDANTS' DEFENSE AGAINST PLAINTIFFS' PIERCING THE CORPORATE VEIL CLAIM AND THE NORTH CAROLINA LITIGATION

The interrogatories that may overlap with respect to seeking information that is both relevant to defendants' defense to the elements of the piercing the corporate veil claim and to the North Carolina Litigation are 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 16.

### 1. Holdings' and Coreolis' Responses to Interrogatories 3 and 4

Interrogatory 3 requested that Holdings and Coreolis:

"Identify all persons who have knowledge of any of the allegations contained in paragraphs 1 through 4, 15 through 76, 78 through 83, 85, 86, 97 through 100 and 102 through 105 of the Third-Party Complaint."

Interrogatory 4 requested that Holdings and Coreolis identify the custodians of documents concerning the allegations contained in the paragraphs of the Third Party Complaint listed in interrogatory 3.

As noted above, Holdings and Coreolis incorporated their Third Party Complaint in the North Carolina Litigation by reference into the First Amended Complaint, making the Third Party Complaint subject to discovery in these actions. That, by itself, is sufficient reason for this Court to compel Holdings and Coreolis to provide full and complete responses to interrogatory 3

and all other interrogatories concerning the Third Party Complaint.

In addition, in their Third Party Complaint, Holdings and Coreolis allege that defendants' purported alter ego, C-S Aviation, defrauded Holdings and Coreolis. Paragraphs 1 through 4, 15 through 76, 78 through 83, 85, 85, 97 through 100 and 102 through 105 of the Third Party Complaint, which are the subject of interrogatories 3 and 4, allege numerous fraudulent acts and fraudulent statements allegedly made by defendants' purported alter ego, C-S Aviation, to Holdings and Coreolis. Defendants are entitled to discovery concerning all fraud allegedly committed by defendants or their purported alter ego, C-S Aviation, because fraud is an element of proof of the piercing the corporate veil claim in these actions. Such discovery may show what Holdings and Coreolis knew and when they knew it and whether their knowledge undermines their claim of fraud in these cases. Howevre, these interrogatories are merely a first step seeking the identification information with respect to persons with knowledge and the identification information with respect to custodians of documents that may relate to Holdings' and Coreolis' knowledge.

There may be an overlap in that the information sought by interrogatories 3 and 4 may relate both to the fraud element of the piercing the corporate veil claim in the First Amended Complaint and theNorth Carolina Litigation. Nevertheless, because there is a valid and incontestable ground for such discovery, this Court should order Holdings and Coreolis to provide such information to defendants within five days.

2.  **Holdings' and Coreolis' Responses to Interrogatories 5 through 9**

Interrogatories 5 through 9 request Holdings and Coreolis to provide information concerning the false statements allegedly made by defendants' purported alter ego, C-S Aviation, as referred to in paragraph 78 of the Third Party Complaint.

Holdings' and Coreolis' response was the same as that for interrogatories 3 and 4 and defendants are entitled to full and complete responses to interrogatories 5 through 9 for the same reasons they are entitled to full and complete responseswith respect to interrogatories 3 and 4.

3.  **Holdings' and Coreolis' Responses to Interrogatories 10 through 12**

Interrogatories 10 through 12 request Holdings and Coreolis to provide information concerning the unfair and deceptive acts and practices, in the nature of fraud, allegedly committed by defendants' purported alter ego, C-S Aviation, on Holdings and Coreolis as referred to in paragraph 102 of the Third Party Complaint.

Holdings' and Coreolis' response was the same as that for interrogatories 3 through 9 and defendants are entitled to full and complete responses to interrogatories 10 through 12 for the same reasons they are entitled to full and complete responses with respect to interrogatories 3 and 9.

## DOCUMENT PRODUCTION REQUESTS

Defendants' Document Request to Holdings ("Holdings Document Request") and defendants' Document Request to Coreolis ("Coreolis Document Request") were served on April 11, 2013. Copies of these requests are annexed respectively as Exhibits 9 and 10. On June 5, 2013 Holdings served its Objections and Responses to Defendants' First Request for Production of Documents ("Holdings' Document Request Response") and Coreolis served its Objections and Responses to Defendant's First Request for Production of Documents ("Coreolis' Document Request Response"), copies of which are annexed respectively as Exhibits 11 and 12. Holdings' Document Request Response and the Coreolis' Document Request Response and the production of documents made by Holdings and Coreolis are deficient because Holdings and Coreolis have not conducted a search for all of the requested documents, because they have not produced documents they said they would produce and because they are refusing to produce documents that are clearly relevant.

The most glaring deficiency is that Holdings and Coreolis have not been asked by their counsel to search for, and produce, all documents responsive to the Holdings Document Request and the Coreolis Document Request. In the meet and confer conference call on Wednesday September 18, 2013, counsel for Holdings and Coreolis stated that the only custodians of documents from which she requested documents were North Carolina counsel for Holdings, Coreolis and Tradewinds. Counsel for Holdings and Coreolis also stated that the only documents that Holdings and Coreolis have produced are copies of some, but not all, of the documents that were produced by some of the parties in the North Carolina Litigation.

The scope of the Holdings Document Request and of the Coreolis Document Request far exceed the scope of the documents which counsel for Holdings and Coreolis has searched for and produced. That scope goes well beyond what was, or could have been, produced in the North Carolina Litigation. In the first instance, Holdings and Coreolis should be ordered to identify all custodians of the documents whose production is requested (whether or not Holdings and Coreolis object to the production of such documents) and provide defendants with the search terms that were used, or proposed search terms if no search terms were used, with respect to the documents in each custodian's control. This was the procedure that defendants followed in responding to Holdings' and Coreolis' requests for the production of documents from Mr. Soros and Dr. Chatterjee. That is the same procedure that should be used by Holdings and Coreolis to respond to defendants' document request.

For example, document requests 1 through 4 and 5 through 9 request the production of documents concerning the allegations of fraud made by Holdings and Coreolis against Mr. Soros and Dr. Chatterjee in paragraphs 8 and 9 of the Complaint. Holdings and Coreolis responded to these requests stating: "Subject to and without waiving the General Objections, [Holdings and Coreolis] will produce or otherwise make available for inspection any non-privileged dcouments responsive to this Request that are in its possession, custody, and /or control." As counsel for Holdings and Coreolis has admitted, the only documents that Holdings and Coreolis have produced are copies of some of the documents produced in the North Carolina Litigation. The

Third Party Complaint in the North Carolina Litigation did not accuse Mr. Soros or Dr. Chatterjee of fraud or even name them as defendants. Therefore, it is extremely unlikely that documents responsive to paragraphs 8 and 9 of the Complaint were produced in the North Carolina Litigation.

Similarly, document requests 10 through 31 request the production of documents concerning the allegations of wrongdoing by Mr. Soros and Dr. Chatterjee set forth in parargraphs 10, 11, 12, 18, 22 and 25 of the Complaint. Holdings and Coreolis responded in the same manner stating that they would produce non-privileged documents. However, the only documents they did produce were copies of what had been produced in the North Carolina Litigation. Again, it is extremely unlikely that documents responsive to requests 10 through 31 of the Complaint were produced in another action to which defendants were not parties, that did not involve the accusations made in Holdings' and Coreolis' Complaint and in which the production was made three or four years before these actions were commenced. The way to clear up this problem is for counsel for Holdings and Coreolis to identify all of the custodians of documents and then conduct a search based on agreed upon search terms as defendants did.

With respect to requests 33, 34 and 35 which request the production of all documents concerning the initiation of these actions, all communications by, between and among Holdings, Coreolis and Tradewinds, and all agreements among Holdings, Coreolis and TradeWinds concerning the prosecution of these actions, Holdings and Coreolis have taken the position that they will not produce any such documents on the basis of privilege. There do not appear to be any documents listed in plaintiffs' privilege log responsive to these requests. Holdings and Coreolis should be ordered to produce such documents or provide an affidavit stating that no such documents exist.

Holdings and Coreolis have refused to produce, in response to request 37 (xxvii), any documents concerning communications between and/or among Holdings, Coreolis and TradeWinds, on the one hand, and Bingham McCutchen, on the other hand. Bingham McCutchen was the counsel for Deutsche Bank in the North Carolina Litigation. It negotiated the settlement among Holdings, Coreolis and TradeWinds and Deutsche Bank and others which resulted in a release. Defendants have asserted as a Seventh Affirmative Defense that they have been released from the claims in these actions by, in part, the release that Bingham McCutchen negotiated. This has nothing to do with the seven affirmative defenses that plaintiffs are challenging. These documents, and all other documents related to that settlement (see requests 152, 153 and 155), should be produced forthwith.

Holdings and Coreolis have refused to produce documents requested by defendants in request 139 concerning the false statements referred to in paragraph 78 of the Third Party Complaint. See the discussion above in the Interrogatory section of this letter motion as to why defendants are entitled to discovery concerning such statements. The same reasoning applies with respect to Holdings' and Coreolis' refusal to produce documents relating to reliance on such false statements as requested by request 140 and their refusal to produce documents responsive to request 143 relating to deceptive acts and practices of C-S Aviation.

Indeed, Holdings and Coreolis have refused to produce documents requested by defendants in requests 40-50, 52, 53, 60, 68, 89, 90, 92, 94, 98, 102-104, 106-109, 111, 112, 120, 121, 126, 128, 129, 131, 137, 139-143, 157 and 158 concerning the allegations of the Third Party Complaint. Again, plaintiffs have incorporated the Third Party Complaint by reference in their complaints in this action. Therefore, defendants are entitled to such discovery.

Holdings and Coreolis, in response to requests 148 through 151, have refused to produce documents which should be produced relating to Mr. Robbs' forgery and Mr. Conry's perjury which go to the credibility of Holdings and Coreolis.

Holdings and Coreolis, in paragraph 11 of their First Amended Complaint, allege that a part of defendants' wrongdoing was "grossly undercapitalizing" C-S Aviation. Because Holdings, Coreolis and TradeWinds were engaged in the same and a similar business, defendants requested, in request 163, all documents relating to the capitalization of Holdings, Coreolis and TradeWinds. Holdings and Coreolis have refused to produce such documents. Defendants are entitled to such production.

Document requests 176 through 179 are requests for the production of documents relating to board of director meetings and shareholder meetings and the governing corporate documents of Holdings, Coreolis and TradeWinds. Such documents are relevant to Holdings' and Coreolis' knowledge of the facts about what they claim to have been defrauded in paragraphs 8 through 11 and 27 of their First Amended Complaint. In addition, Holdings and Coreolis, in paragraph 9 and 11 of their First Amended Complaint, allege improprieties in the conduct of C-S Aviations' corporate affairs. Defendants are entitled to discover whether Holdings and Coreolis conducted their corporate affairs as they claim C-S Aviation's corporate affairs were conducted to be able to argue to the trier of fact that, if C-S Aviation's corporate affairs were conducted in a manner similar to that of Holdings and Coreolis, then they cannot claim impropriety. Those documents should be produced.

The Honorable John F. Keenan has granted plaintiffs' request for permission to move to strike certain of defendants' affirmative defenses relating to the North Carolina Litigation. Plaintiffs and defendants have entered into a briefing schedule that will result in the fully briefed motion being submitted to Judge Keenan no later than September 18, 2013. Therefore, this Court should defer to Judge Keenan with respect to ruling on issues relating to the North Carolina Litigation.

Respectfully submitted,

Raymond Fitzgerald

cc: Ellen R. Werther, Esq. (by e-mail)
Bruce Ressler, Esq. (by e-mail)
Ashley Simonsen, Esq. (by e-mail)
Shawn J. Rabin, Esq. (by e-mail)
William Carmody, Esq. (by e-mail)
Dustin F. Hecker, Esq. (by e-mail)
Kristin T. Roy, Esq. (by e-mail)
Martin Klotz, Esq. (by e-mail)