Raymond Fitzgerald, Esq. (RF 9526)
David J. McCarthy, Esq. (DM 7910)
BUTLER, FITZGERALD, FIVESON & McCARTHY
A Professional Corporation
Attorneys for Defendant George Soros
36 West 44th Street, Suite 816
New York, NY 10036
(212) 615-2200
(212) 615-2215 (Fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRADEWINDS AIRLINES INC.,

                          Plaintiff,

          -against-                                    08 Civ. 5901 (JFK)

GEORGE SOROS and PERNENDU CHATTERJEE,

                          Defendants.
-------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISQUALIFY PLAINTIFF'S ATTORNEY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS .................................................................................................................................... 2

    Disclosures In Connection With Ms. Grayson's Retention By TradeWinds.................... 7

    Disclosures In TradeWinds's Initial Complaint In This Action ......................................... 8

    Disclosures In Connection With Ms. Grayson's Retention By TradeWinds
    As Chapter 11 Debtor-In-Possession ................................................................................ 10

    Disclosures In TradeWinds's Amended Complaint In This Action .................................. 12

    Disclosures In Connection With Ms. Grayson's Retention By The Chapter
    7 Trustee For TradeWinds .................................................................................................. 13

SUMMARY OF ARGUMENT ............................................................................................. 14

ARGUMENT .......................................................................................................................... 14

    MS. GRAYSON SHOULD BE DISQUALIFIED BECAUSE
    HER POSSESSION OF, AND DEMONSTRATED
    PROPENSITY TO USE, CONFIDENTIAL INFORMATION
    HAS TAINTED, AND WILL INCREASINGLY TAINT,
    THIS ACTION.................................................................................................................... 14

CONCLUSION....................................................................................................................... 24

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                <u>Page</u>

<u>Bassman v. Fleet Bank</u>, Aug. 25, 2000 N.Y.L.J. 26 (col. 6) (Sup. Ct. N.Y. Co.
   Aug. 25, 2000), <u>aff'd</u>, <u>sub nom.</u>, 279 A.D.2d 280, 718 N.Y.S.2d 826 (1st Dep't 2001)....... 21, 22

<u>Biocore v. Medical Technologies, Inc. v. Khosrowshahi</u>, 1998 WL 919126
   (D. Kan. Nov. 6, 1998), <u>aff'd</u>, 348 F.3d 1163 (10th Cir. Kan. 2003)......................................... 23

<u>Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.</u>, 53 F. Supp.
   2d 338 (E.D.N.Y. 1999)................................................................................................ 19, 20

<u>Bd. of Educ. v. Nyquist</u>, 590 F.2d 1241 (2d Cir. 1979)......................................................... 15, 16

<u>Bottaro v. Hatton Assoc.</u>, 680 F.2d 895 (2d Cir. 1982).................................................................. 15

<u>Butler v. BioCore Medical Technologies, Inc.</u>, 348 F.3d 1163 (10th Cir. 2003) .............. 16, 17, 23

<u>Cargill Inc. v. Budine</u>, 2007 WL 1813762 (E.D. Cal. June 22, 2007)..................................... 17, 18

<u>Cmty. Programs of Westchester Jewish Cmty. Servs. v. City of Mount Vernon</u>,
   2007 WL 1484037 (S.D.N.Y. May 21, 2007) ............................................................................. 15

<u>Eshel v. Fleet Bank</u>, 279 A.D.2d 281, 718 N.Y.S.2d 825 (1st Dep't 2001).................................... 22

<u>Feldman v. Minars</u>, 230 A.D.2d 356, 658 N.Y.S.2d 614 (1st Dep't 1997)....................... 19, 20, 21

<u>Hull v. Celanese Corp.</u>, 513 F.2d 568 (2d Cir. 1975)....................................................... 15, 16, 18

<u>In re Peters</u>, 543 F. Supp. 2d 326 (S.D.N.Y. 2008) ............................................................... 22, 23

<u>Moss v. Moss Tubes, Inc.</u>, 1998 WL 641362 (N.D.N.Y. Sept. 9, 1998)...................................... 16

<u>Rentclub, Inc. v. Transamerica Rental Fin. Corp.</u>, 811 F. Supp. 651
   (M.D. Fla. 1992), <u>aff'd</u>, 43 F.3d 1439 (11th Cir. 1995) ................................................. 16, 17, 18

<u>The European Cmty. v. RJR Nabisco, Inc.</u>, 134 F. Supp. 2d 297 (E.D.N.Y. 2001)...................... 15

Defendant George Soros ("Mr. Soros") submits this memorandum of law in support of his motion to disqualify Victoria Elizabeth Grayson ("Ms. Grayson") as the attorney for the plaintiff, TradeWinds Airlines, Inc. ("TradeWinds"),[1] in this action.

## PRELIMINARY STATEMENT

This Court should exercise its discretion to disqualify Ms. Grayson as TradeWinds's counsel in order to preserve the integrity of the adversarial process in this action. In this action, Ms. Grayson's client, TradeWinds, is seeking to pierce the corporate veil of C-S Aviation Services, Inc. ("C-S") to hold Mr. Soros and Purnendu Chatterjee ("Dr. Chatterjee") liable for a $54,867,872.49 default judgment obtained by TradeWinds against C-S. (Fitzgerald Aff. ¶¶ 3 and 6)  In a prior action against Mr. Soros and Dr. Chatterjee ("JetStar Veil Piercing Action"), Ms. Grayson, on behalf of another client, Jet Star Enterprises, Ltd. ("JetStar"), sought to pierce C-S's corporate veil to hold Mr. Soros and Dr. Chatterjee liable for a $3,432,867 default judgment obtained by JetStar against C-S in the JetStar/C-S Action (defined below). (Fitzgerald Aff. ¶¶ 8 and 10 and Exh. E)

In these two prior actions, i.e., the JetStar/C-S Action and the JetStar Veil Piercing Action, Ms. Grayson entered into confidentiality agreements with respect to all discovery by which she obligated herself, among other things, not to disclose or use documents produced to her in discovery, or the information contained therein, or depositions taken in those actions, except in the action in which such documents were produced or depositions taken. (Fitzgerald Aff. ¶¶ 7 and 11 and Exhs. D and F)  Each of the confidentiality agreements was "so ordered" by the relevant court. (Id.)  In the JetStar Veil Piercing Action, Ms. Grayson also

---

[1] After Ms. Grayson commenced this action on behalf of TradeWinds, TradeWinds became the subject of a proceeding under Chapter 7 of the United States Bankruptcy Code. (Fitzgerald Aff. ¶ 25) Ms. Grayson's retention as TradeWinds's counsel in this action was approved by the Bankruptcy Court on January 7, 2009. (Fitzgerald Aff. ¶ 26)

agreed in a settlement agreement, among other things, not to disclose to, and to keep confidential from, any third parties the nature of JetStar's claims against Mr. Soros and Dr. Chatterjee in the JetStar Veil Piercing Action and the bases for such claims. (Fitzgerald Aff. ¶ 15 and Exh. G)

The information Ms. Grayson acquired in the prior actions, especially in the JetStar Veil Piercing Action, and which she agreed to keep confidential and not to disclose to third parties or to use except in the action in which the information was obtained, is highly relevant to this action. Ms. Grayson already has disclosed and used in this action and in connection with this action, to the detriment of Mr. Soros and Dr. Chatterjee, material information which she agreed not to disclose or use and, thereby, has tainted this action and given TradeWinds an unfair advantage over Mr. Soros and Dr. Chatterjee in this action. (Fitzgerald Aff. ¶¶ 16 – 25) If Ms.Grayson is not disqualified as TradeWinds's attorney in this action, that taint will be perpetuated, as will the unfair advantage over Mr. Soros and Dr. Chatterjee that TradeWinds has as a result of Ms. Grayson's disclosure and use of the information she agreed not to disclose or use. Following well-established precedent, the Court should disqualify Ms. Grayson as TradeWinds's counsel in this action.

## FACTS

TradeWinds obtained a $54,867,872.49 default judgment TradeWinds against C-S on June 27, 2008 in the Superior Court of Guilford County, North Carolina ("North Carolina Action"). (Fitzgerald Aff. ¶ 5 and Exh. A) In this action, TradeWinds seeks to pierce C-S's corporate veil to hold Mr. Soros and Dr. Chatterjee liable for that judgment. (Fitzgerald Aff. ¶¶ 3 and 6 and Exh. C)

In 2001 Ms. Grayson represented JetStar in the JetStar/C-S Action against C-S and Wells Fargo Bank Northwest, N.A. ("Wells Fargo"). (Fitzgerald Aff. ¶ 7) In that action,

Ms. Grayson entered into a Stipulation and Protective Order Governing the Use of Confidential

Materials ("C-S Protective Order") which was "so ordered" by Judge Batts on March 15, 2002.

(Fitzgerald Aff. ¶ 7 and Exh. D)  The C-S Protective Order provided, *inter alia*, that all

Litigation Materials, i.e., all information produced in discovery including information derived

from documents and depositions, could only be used for the prosecution or defense of the

JetStar/C-S Action and "not for any other purpose." (Fitzgerald Aff. ¶ 7 and Exh. D ¶ 2)  The C-

S Protective Order also provided that any Litigation Materials that were designated to be

confidential could only be disclosed to a limited group of people directly involved in the

JetStar/C-S Action.  (Fitzgerald Aff. ¶ 7 and Exh. D ¶ 4)  The C-S Protective Order further

provided that it would continue to be binding on the parties and their counsel forever.

(Fitzgerald Aff. ¶ 7 and Exh. D ¶ 6)

      Ms. Grayson conducted some discovery in the JetStar/C-S Action, primarily

directed at the underlying essentially contract based claims and counterclaims.  (Fitzgerald Aff. ¶

8)  For reasons not relevant here, the defendants in the JetStar/C-S Action eventually defaulted

and, on July 15, 2003, JetStar obtained a $3,432,867 default judgment against C-S and Wells

Fargo.  (Fitzgerald Aff. ¶ 8)

      Thereafter, Ms. Grayson conducted a few post judgment depositions, some

limited portion of which was directed at issues relating to veil piercing.  (Fitzgerald Aff. ¶ 9)

There appears not to have been any document production relating to veil piercing issues in the

JetStar/C-S Action.  (Fitzgerald Aff. ¶ 9)

      On July 20, 2005 Ms. Grayson, on behalf of Jet Star, commenced the JetStar Veil

piercing Action in this Court against Mr. Soros, Dr. Chatterjee and others to try to collect on the

judgment JetStar had obtained against C-S.  One of the claims asserted by JetStar was a veil

piercing claim to hold Mr. Soros and Dr. Chatterjee liable for that judgment. (Fitzgerald Aff. ¶ 10)

Prior to discovery in the JetStar Veil Piercing Action, Ms. Grayson entered into, and Judge Baer on February 14, 2006 "so ordered," a Stipulation and Protective Order Governing The Use Of Confidential Materials ("Soros Protective Order") which, *inter alia*, (1) limited the use of "[a]ll Litigation Materials . . . solely for the prosecution and defense of [the JetStar Veil Piercing Action]," [2] (2) precluded the use of "[a]ll Litigation Materials . . . for any other purpose," (3) precluded Ms. Grayson, and all other signatories to the Soros Protective Order and their respective clients, from disclosing "CONFIDENTIAL Litigation Materials to any other person except as provided in this Order," and (4) provided that "[t]he provisions of this Stipulation and Protective Order insofar as they restrict the disclosure and use of Confidential Litigation Material shall continue to be binding on all parties and persons subject thereto, as well as Undersigned Counsel, notwithstanding the entry of any judgment or dismissal herein or the final termination of this action." [3]   (Fitzgerald Aff. ¶ 11 and Exh. F ¶¶ 2, 4 and 6)

After Judge Baer "so ordered" the Soros Protective Order, the parties in the JetStar Veil Piercing Action engaged in hundreds of hours of extensive discovery, a significant amount of which related to the veil piercing claim. Ms. Grayson propounded document demands on Mr. Soros and other parties, and Ms. Grayson conducted eleven depositions, regarding the following subjects: (i) the corporate formalities at C-S, (ii) the ownership of C-S, (iii) the ownership of the aircraft managed by C-S, (iv) the manner in which C-S made business

---

[2] The Protective Order states that "Litigation Materials . . . are defined to include all documents and information produced in response to any discovery request promulgated under the Federal Rules of Civil Procedure in this Action, produced pursuant to the voluntary disclosure provisions of the Rules by any party or persons or entities not a party to this Action or produced in response to any court order." (Fitzgerald Aff. n. 2 and Exh. F ¶ 1)

[3] The wording of the C-S Protective Order and the Soros Protective Order are identical with respect to the sections herein relevant and substantially identical overall. (Compare Fitzgerald Aff. Exhs. D and F)

4

decisions, (v) the nature of the agreements C-S had entered into to manage aircraft, (vi) the

manner in which C-S disbursed the funds it had collected on behalf of the entities that owned the

aircraft C-S was managing, (vii) the expenses which C-S incurred in managing the aircraft on

behalf of the direct and indirect owners of those aircraft and the manner in which C-S paid such

expenses, (viii) the extent to which C-S was profitable, if at all, (ix) the business dealings and

relationships among Mr. Soros, and other persons employed by his employer, on one hand, and

C-S's employees, on the other hand, (x) the business relationships and dealings between Mr.

Soros and Mr. Chatterjee, and (xi) the corporate structure of the entities which directly or

indirectly owned the aircraft that C-S was managing.  (Fitzgerald Aff. ¶ 12)

Mr. Soros produced tens of thousands of pages of documents regarding the

subjects mentioned in the immediately preceding paragraph.  Mr. Soros designated all of those

documents as "Confidential" under the Soros Protective Order.  The other defendants in the

JetStar Veil Piercing Action also designated as confidential Litigation Materials they produced

during discovery.  In addition, during discovery in the JetStar Veil Piercing Action, Ms. Grayson

explored all the matters referred to in clauses (i) through (xi) of the immediately preceding

paragraph at depositions of, among others, Mr. Soros, Dr. Chatterjee, two employees of Soros

Fund Management LLC ("SFM"), two representatives of SFM, and two former employees of C-

S.  The transcripts of all these depositions were, pursuant to the terms of the Soros Protective

Order, designated "Confidential" by Mr. Soros's attorneys and/or by the attorneys for other

parties.  (Fitzgerald Aff. ¶ 13)

Included in the information that was disclosed to Ms. Grayson as part of the

Confidential Litigation Materials in the JetStar Veil Piercing Action was the existence of the

North Carolina Action.  (Fitzgerald Aff. ¶ 14)

The JetStar Veil Piercing Action was settled in 2006. Ms. Grayson, individually and as counsel for JetStar, entered into a Settlement and Confidentiality Agreement dated as of August 22, 2006 ("Settlement and Confidentiality Agreement"). (Fitzgerald Aff. ¶ 15 and Exh. G)  In the Settlement and Confidentiality Agreement, Ms. Grayson agreed to keep confidential "the existence, provisions and substance of [the Settlement and Confidentiality Agreement], and the claims for relief against Mr. Soros and/or Dr. Chatterjee and the bases or asserted bases therefor" and not to disclose that information "to any person or entity for any purpose." (Fitzgerald Aff. ¶ 15 and Exh. G p. 2 ¶ 3A)

Ms. Grayson repeatedly has violated the Soros Protective Order and the C-S Protective Order by (i) using the information she obtained from the Litigation Materials obtained in the JetStar Veil Piercing Action and JetStar/C-S Action for purposes of this action, and (ii) disclosing information she obtained from confidential Litigation Materials therein to others.  She also repeatedly has violated the Settlement and Confidentiality Order by not keeping confidential, and by disclosing to others, the existence, provisions and substance of the Settlement and Confidentiality Agreement, the claims for relief asserted against Mr. Soros and/or Dr. Chatterjee in the JetStar Veil Piercing Action, and the bases or asserted bases for those claims. Ms. Grayson's purposes in disclosing and using information she had agreed not to disclose or use, and which Judge Baer and Judge Batts had ordered her not to disclose or use, were to induce TradeWinds and TradeWinds's trustee  to retain her as counsel for the purpose of suing, and continuing the suit against,  Mr. Soros and Dr. Chatterjee, to persuade a bankruptcy judge twice to approve her retention as such counsel, and to assist her in prosecuting this action. The effect of Ms. Grayson's improper actions, and of her continuing ability to violate her

6

agreements and court orders, has been to give TradeWinds and its trustee an unfair advantage over Mr. Soros and Dr. Chatterjee in this action.

Disclosures in Connection with Ms. Grayson's Retention by TradeWinds.

In the North Carolina Action, C-S, which was a third party defendant, did not answer the Third Party Complaint, and on February 22, 2007, TradeWinds entered a default against C-S. (Fitzgerald Aff., ¶ 16 and Exh. H)  TradeWinds took no steps to convert the entry of default into a judgment for more than a year.  Then "[i]n the spring of 2008, TradeWinds became aware of the possibility of piercing the veil of the corporate shell C-S (sic) to reach Soros and Chatterjee, thus giving TradeWinds a reason to pursue a default judgment against C-S."  TradeWinds admitted this fact in a Brief in Response to Motion to Set Aside Entry of Default and Default Judgment in the North Carolina Action that it served on January 23, 2009.[4] (Fitzgerald Aff., ¶ 16 and Exh. I)

During the same time period that TradeWinds admits it learned about the possibility of commencing a veil piercing action against Mr. Soros and Dr. Chatterjee (i.e., in the Spring of 2008), TradeWinds retained Ms. Grayson to commence a veil piercing action against Mr. Soros and Dr. Chatterjee.  (Fitzgerald Aff. ¶ 17 and Exh. J)  The TradeWinds/Grayson retainer agreement specifically acknowledged that TradeWinds retained Ms. Grayson because of her "unique expertise" in having represented another client in an action against Mr. Soros and Dr. Chatterjee to pierce C-S's corporate veil.  The TradeWinds/Grayson retainer agreement states:

> TradeWinds and Tuggle Duggins hereby acknowledge that you have unique expertise pertinent to the New York Case because you previously represented another airline in a Southern District of New York action to pierce the corporate veil of C-S Aviation to reach Soros and Chatterjee.

---

[4] That motion was argued on January 27, 2009 and presently is *sub judice*.  (Fitzgerald Aff. n. 1)

(Fitzgerald Aff. ¶ 17 and  Ex. J, p. 2)

        A reasonable inference to be drawn from TradeWinds's retention of Ms. Grayson in the Spring of 2008 when TradeWinds admittedly learned of the possibility of a veil piercing claim against Mr. Soros and Dr. Chatterjee is that Ms. Grayson directly or indirectly disclosed to TradeWinds information she was obligated by agreements and court orders to maintain in confidence and not to disclose  and not to use except in the actions in which the agreements were made and orders entered.

Disclosures in TradeWinds's Initial Complaint in this Action.

        TradeWinds commenced this action against Mr. Soros and Dr. Chatterjee by complaint dated June 28, 2008 ("Complaint").  (Fitzgerald Aff., ¶ 18 and Exh. C)  In the Complaint, Ms. Grayson repeatedly violated the Soros Protective Order and the C-S Protective Order by using information she learned from Litigation Materials and confidential Litigation Materials as the bases for TradeWinds's Complaint and repeatedly breached the Settlement and Confidentiality Agreement by disclosing the veil piercing claim asserted against Mr. Soros and Dr. Chatterjee in the JetStar Veil Piercing Action and the bases therefor.  In the Complaint, Ms. Grayson alleged that:

        (i)     "[i]n 1994, defendants Soros and Chatterjee, long-time business partners, decided to enter the aviation business together.  For this purpose, they put in place a complex, multi-tiered corporate structure . . . ;" (Fitzgerald Aff. ¶ 18 and Exh. C ¶ 8)

        (ii)     "C-S Aviation Services, Inc. ("C-S") was incorporated in Delaware to serve as aircraft management company pursuant to the plan described above.  Chatterjee has, at all pertinent times, been the sole shareholder of C-S, and a Director of C-S.  For several years,

Chatterjee actually controlled C-S. In 1998, however, defendant Soros assumed control of C-S."
(Fitzgerald Aff. ¶ 18 and Exh. C ¶ 9)

        (iii)    "Defendants Soros and Chatterjee organized their aviation business
in the manner described above, and grossly undercapitalized C-S for the purpose of defrauding
potential judgment creditors such as plaintiff." (Fitzgerald Aff. ¶ 18 and Exh. C ¶ 10)

        (iv)    "Defendants Soros and Chatterjee also operated C-S as their alter-
ego, not only by grossly undercapitalizing the company, but also by entirely ignoring corporate
formalities, keeping no minutes of director's meetings or other normal corporate records,
operating the company through persons who were neither its officers nor its directors, freely co-
mingling the funds of C-S with the funds of other companies they controlled and with their own
funds, up-streaming all income from C-S and the aviation business to themselves on an
opportunistic basis, and ensuring that C-S always hovered on the verge of insolvency in order to
defraud creditors." (Fitzgerald Aff. ¶ 18 and Exh. C ¶ 11)

        (v)    ". . . Defendants hastily stripped C-S of its officers, directors,
employees, cash, chattel, business goodwill, business contracts, and business functions. A new
corporation, utilizing the same employees to perform the same business functions, immediately
commenced conducting business on defendant Soros's premises after C-S was dismembered."
(Fitzgerald Aff. ¶ 18 and Exh. C ¶ 12)

        (vi)    "Subsequently, C-S judgment creditor Jet Star Enterprises brought
suit in the Southern District seeking to, *inter alia*, pierce the corporate veil of C-S to reach
defendants Soros and Chatterjee. The proceedings in said action, 05 CV 6585 (HB), are a matter

of public record, and shed light upon the manner in which Soros and Chatterjee abused the

corporate form in their operation of C-S." (Fitzgerald Aff. ¶ 18 and Exh. C ¶ 13)[5]

These allegations in the Complaint constitute the bases for TradeWinds's veil

piercing claim and are the same as the allegations in the amended complaint in the JetStar Veil

Piercing Action which constituted the bases for JetStar's veil piercing claim. (Fitzgerald Aff. ¶

19 and compare Fitzgerald Aff. Exh. C ¶¶ 8-13 to Exh. E ¶¶ 14, 19, 59-63)  Ms. Grayson had

agreed in the Settlement and Confidentiality Agreement to keep the bases for the veil piercing

claim in the JetStar Veil Piercing Action confidential.  (Fitzgerald Aff. ¶ 19 and Exh. G, p.2 ¶

3A).  Obviously, she has not.

Disclosures in Connection with Ms. Grayson's Retention
by TradeWinds As Chapter 11 Debtor-in-Possession.

Shortly after Ms. Grayson filed the June 2008 Complaint, TradeWinds filed a

voluntary petition pursuant to chapter 11 of United States Bankruptcy Code in the United States

Bankruptcy Court for Southern District of Florida.  Thereafter, TradeWinds filed a motion

seeking Bankruptcy Court approval of its continued retention of Ms. Grayson as "Special

Counsel" to represent TradeWinds in this action ("TradeWinds's Application for Special

Counsel").  (Fitzgerald Aff. ¶ 20 and Exh. K)

TradeWinds's Application for Special Counsel, which presumably could only

have been based on information Ms. Grayson provided, continued the process of disclosing

information that Ms. Grayson had agreed not to disclose, and was prohibited from disclosing,

and using such information for the purpose of being retained by TradeWinds as a chapter

11debtor-in-possession and for the purpose of commencing and prosecuting this action.

---

[5] Ms. Grayson intentionally has misconstrued the information she learned during discovery in the JetStar Veil
Piercing Action and in the JetStar/C-S Action in an attempt to state a claim against Mr. Soros and Dr. Chatterjee.
Mr. Soros disputes all of Ms. Grayson's mischaracterizations. (Fitzgerald Aff., n.4)

TradeWinds's Application for Special Counsel contains numerous statements about the claim asserted against Mr. Soros and Dr. Chatterjee in the JetStar Veil Piercing Action, and the purported bases for that claim, and the existence of the settlement.  Specifically, TradeWinds's Application for Special Counsel touts Ms. Grayson as:

        (i)     having ". . . previously successfully litigated another case in the Southern District of New York in which an airline holding a judgment against C-S sought to pierce its corporate veil to reach its principals, Mr. Soros and Mr. Chatterjee." (Fitzgerald Aff. ¶ 21 and Exh. K ¶ 12)

        (ii)    having ". . . concluded her representation of the airline plaintiff, as a result of a favorable settlement reached in that prior litigation." (Fitzgerald Aff. ¶ 21 and Exh. K p. 4, n. 2)

        (iii)   having ". . . unique knowledge of the facts which resulted in the successful prosecution of an action alleging that corporate veil-piercing was justified . . ." (Fitzgerald Aff. ¶ 21 and  Exh. K ¶ 12)

        (iv)   having ". . . previously prosecuted a similar action in the Southern District of New York to pierce C-S's corporate veil on behalf of another plaintiff who is (sic) a C-S judgment creditor which led to a settlement." (Fitzgerald Aff. ¶ 21 and Exh. K ¶ 20)

        (v)    being ". . . well apprised of the legal issues that have arisen and are likely to arise in connection with the Soros Litigation." (Fitzgerald Aff. ¶ 21 and Exh. K ¶ 20)

        (vi)   being "likely the most qualified candidate to serve as special litigation counsel to [TradeWinds] due to . . . Grayson's previous representation of another plaintiff in an action to pierce C-S's corporate veil." (Fitzgerald Aff. ¶ 21 and Exh. K ¶ 20)

In fact, in her own declaration in support of TradeWinds's Application for Special Counsel, Ms. Grayson urged that she be retained because she had ". . . prior unique experience with litigation in the Federal District Court in the Southern District of New York to pierce the Corporate veil of C-S litigation [sic] to reach its principals." (Fitzgerald Aff. ¶ 22 and Exh. K, Ex. D thereto, at ¶ 17)

Disclosures in TradeWinds's Amended Complaint in this Action.

TradeWinds amended its complaint in this action on or about September 28, 2008 ("Amended Complaint"). (Fitzgerald Aff. ¶ 23 and Exh. L) In the Amended Complaint, Ms. Grayson continued to violate the Soros Protective Order and C-S Protective Order by using information she learned from Litigation Materials and confidential Litigation Materials as bases for TradeWinds's Amended Complaint and continued to breach the Settlement and Confidentiality Agreement by disclosing the piercing the corporate veil claim asserted against Mr. Soros and Dr. Chatterjee in the JetStar Veil Piercing Action and the bases therefor. In the Amended Complaint, Ms. Grayson essentially repeats the allegations of the Complaint. In addition, in an effort to properly plead a legally sufficient veil piercing claim, she adds some new factual allegations regarding how title to the aircraft managed by C-S was vested in Wells Fargo, in its capacity as an owner-trustee, while beneficial ownership was held in foreign corporations to avoid taxes, and how Wells Fargo purportedly would appear in litigation involving the aircraft only as a strawman, ceding any recovery to the beneficial owners of the aircraft while asserting that it had no personal liability and no assets as trustee to pay any judgment obtained against it. (Fitzgerald Aff. ¶ 23 and Exh. L ¶ 9) Both the repeated allegations and the new allegations are based entirely on information Ms. Grayson discovered in the JetStar Veil Piercing Action or the JetStar/C-S Action. (Fitzgerald Aff. ¶¶ 9 and 12-14)

Again, these allegations in the Amended Complaint constitute the bases for

TradeWinds's veil piercing claim and are the same as the allegations in the amended complaint

in the JetStar Veil Piercing Action which constituted the bases for JetStar's veil piercing claim.

(Fitzgerald Aff. ¶ 24 and compare Fitzgerald Aff. Exh. L ¶¶ 7-12 to Exh. E ¶¶ 14, 19, 59-63)

Ms. Grayson had agreed in the Settlement and Confidentiality Agreement to keep the bases for

the veil piercing claim in the JetStar Veil Piercing Action confidential.  (Fitzgerald Aff. ¶ 24 and

Exh. G, p.2 ¶ 3A).  Again, she has not.

Disclosures in Connection with Ms. Grayson's
Retention by The Chapter 7 Trustee for TradeWinds.

On or about October 29, 2008, TradeWinds's bankruptcy was converted from a

chapter 11 case to a chapter 7 liquidation.  (Fitzgerald Aff. ¶ 25 and Exh. M)  A chapter 7 trustee,

Barry E. Mukamal, was appointed.  On or about November 25, 2008, the trustee made a motion

for Bankruptcy Court approval of the continued retention of Ms. Grayson as TradeWinds's

counsel in this action ("Trustee's Retention Application").  (Fitzgerald Aff. ¶ 25 and Exh. N)

The Trustee's Application for Special Counsel, which again could only have been based on

information Ms. Grayson provided and which she learned during the course of discovery in the

JetStar Veil Piercing Action or the JetStar/C-S Action, continued the process of disclosing

information that Ms. Grayson had agreed not to disclose, and was prohibited from disclosing,

and using such information for the purpose of being retained, this time by TradeWinds's trustee,

and for the purpose of commencing this lawsuit.  The Trustee's Retention Application essentially

tracks TradeWinds's Application for Special Counsel and again discloses, *inter alia*, that Ms.

Grayson concluded her representation in the JetStar Veil Piercing Action "as a result of a

settlement reached in that prior litigation" (Fitzgerald Aff. ¶ 25 and Exh. N p. 4 n.1)  and

discloses that the claim that was settled was a veil piercing claim.  (Fitzgerald Aff. ¶ 25 and Exh.

N ¶¶ 10 and 18)  Indeed, the trustee stated that he believed Ms. Grayson was "likely the most

qualified candidate to serve as special litigation counsel to the Trustee due to . . . Grayson's

previous representation of another plaintiff in an action to pierce C-S's corporate veil."

(Fitzgerald Aff. ¶ 25 and Exh. N ¶ 18)

## SUMMARY OF ARGUMENT

The Court should exercise its discretion to disqualify Ms. Grayson as plaintiff's

counsel because her possession of highly relevant information concerning plaintiff's claim in this

action, in light of her prior agreements and court orders, will taint this action and subvert the

integrity of the judicial process in an increasingly material way the longer she is permitted to

serve as such counsel.  Ms. Grayson already has tainted this action and subverted the integrity of

the judicial process, to the unfair disadvantage of Mr. Soros and Dr. Chatterjee, by using

confidential information to secure her retention as TradeWinds's counsel and to formulate the

allegations in the Complaint and Amended Complaint.  As a practical matter, Ms. Grayson is

unable to eliminate from her mind and to refrain from using in this action the information she

learned from Litigation Materials and Confidential Litigation Materials she obtained in the prior

actions.  The only way this Court can prevent Ms. Grayson from further tainting this action and

further subverting the integrity of the judicial process is to exercise its discretion to disqualify

Ms. Grayson as TradeWinds's counsel.

## ARGUMENT

### MS. GRAYSON SHOULD BE DISQUALIFIED BECAUSE HER POSSESSION OF, AND DEMONSTRATED PROPENSITY TO USE, CONFIDENTIAL INFORMATION HAS TAINTED, AND WILL INCREASINGLY TAINT, THIS ACTION

Federal courts have the inherent authority "to disqualify attorneys in litigation

pending before them" when such disqualification is "necessary to preserve the integrity of the

adversary process [.]"  Bd. Of Educ. v. Nyquist, 590 F.2d 1241, 1245-46 (2d Cir. 1979).  That

authority should be exercised when an attorney is "in a position to use privileged information

concerning the other side . . ." Id.  In order to justify disqualification, a movant must show "that

the presence of a particular counsel will taint the trial by affecting his or her presentation of a

case."  The European Cmty. v. RJR Nabisco, Inc., 134 F. Supp. 2d 297, 300 (E.D.N.Y. 2001)

quoting Bottaro v. Hatton Assoc., 680 F. 2d 895, 896 (2d Cir. 1982) (additional citations

omitted).  When a party moves to disqualify his adverary's attorney, "any doubt is to be resolved

in favor of disqualification."  Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).

Whether an attorney should be disqualified is left to the sound discretion of the

Court.  Id.  See also Cmty. Programs of Westchester Jewish Comty. Servs. v. City of Mount

Vernon, 2007 WL 1484037, at *1 (S.D.N.Y. May 21, 2007) (citation omitted) ("The

determination as to whether disqualification is warranted is committed to the sound discretion of

the trial court.")

Courts disqualifying a lawyer to preserve the integrity of the judicial process

typically rely on Canon 9 of the Model Code or other applicable code of professional

responsibility.  Canon 9 of the New York Code of Professional Responsibility states that "[a]

lawyer should avoid even the appearance of professional impropriety."[6]  The frequent reliance by

the courts on Canon 9 makes clear that it is a sufficient basis for disqualification that an attorney

be in a position to taint the proceedings by his or her wrongful disclosure of confidential

---

[6] Ethical Consideration 9-6 states:

> [e]very lawyer owes a solemn duty to uphold the integrity and honor of the
> profession; to encourage respect for the law and for the courts and the judges
> thereof; to observe the Code of Professional Responsibility; . . . and to strive to
> avoid not only professional impropriety but also the appearance of impropriety.

information, without the need of any showing that the attorney actually wrongfully has disclosed such information.

The Canon 9 proscription against even the appearance of impropriety has most frequently been invoked as a basis for disqualification when a lawyer "switches sides" and represents a new client in an action against a former client. In such circumstances, there is a taint on the judicial process because "the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving his present client an unfair advantage." Nyquist, 590 F.2d at 1246 (footnote and citations omitted). See also Moss v. Moss Tubes, Inc., 1998 WL 641362, at *6 (N.D.N.Y. Sept. 9, 1998) ("Disqualification is warranted where an attorney had access to confidential information.")

The range of cases where an attorney's conduct has a sufficient "taint" on the judicial process to warrant disqualification under Canon 9 is not limited to cases involving lawyers who "switch sides". Thus, for example, under Canon 9 a lawyer will be disqualified in an action if she accepts as a client an attorney, or non-lawyer, who was employed by an adversary and who was involved in or had knowledge of the events at issue in the action. See, e.g. Hull v. Celanese Corp., 513 F.2d 568, 571-72 (2d Cir. 1975). Likewise, Canon 9 requires disqualification of a lawyer who hires as a consultant a former employee of the adversary of the lawyer's client. See Butler v. BioCore Medical Technologies, Inc., 348 F.3d 1163, 1170-71 (10th Cir. 2003); Rentclub, Inc. v. Transamerica Rental Fin. Corp., 811 F. Supp. 651, 655 (M.D. Fla. 1992), aff'd, 43 F.3d 1439 (11th Cir. 1995).

The rationale for disqualification in such cases is that there is an appearance that the lawyer is inducing or might induce someone who has a confidentiality obligation to an adversary to disclose to the attorney confidential matters about the adversary in order to gain an

unfair advantage for the attorney's client.  In that situation, the attorney's access to an

adversary's confidential information gives rise to a presumption that, in fact, confidential

information was received by the attorney, which "creates at least an appearance that [the

attorney's client] has obtained an unfair advantage at trial [and thereby] taints the judicial

proceedings so as to warrant disqualification."  The "likelihood of public suspicion aroused by

this relationship necessarily outweighed the social interest that would be served by counsel's

continued participation."  Rent Club, 811 F. Supp. at 657; Biocore, 348 F. 3d at 1170-71 (hiring

adversary's former employee who was "a veritable treasure-trove of information about

[adversary's] operations [which although relevant] was protected by a confidentiality agreement"

raised appearance of impropriety, even when attorney takes precautions to prevent the disclosure

of confidential information.)

   These same principles have been invoked as a ground for disqualification when a

lawyer obtains access to materials produced subject to a confidentiality order in another action.

See e.g. Cargill Inc. v. Budine, 2007 WL 1813762 (E.D. Cal. June 22, 2007).  In Cargill the

company sued several former employees, and the business they started, alleging breach of

confidentiality agreements, unfair competition and misappropriation of trade secrets.  The former

employees retained a group of lawyers who already had been representing a group of plaintiffs in

a suit against Cargill.  In the first suit in which the attorneys represented plaintiffs against

Cargill, the court had issued a protective order which prohibited the lawyers from using

confidential material produced in discovery in that action for any purpose other than to prosecute

or defend the lawsuit.  Cargill then produced to the plaintiff's lawyers over 100,000 documents

marked confidential or highly confidential under the protective order.  Id. at *1-2, 12.

In the second suit, the one by Cargill against its former employees, the court ruled that defense counsel who had received documents produced by Cargill subject to the protective order in the first action had to be disqualified from representing the defendants in the second action. The court ruled that access by defense counsel to Cargill's confidential business material produced under the protective order in the first suit gave the appearance of impropriety. In so ruling, the court stated:

> Where it can be reasonably said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified. The breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of Code [of Professional Conduct, Canon 9].

Cargill, 2007 WL 1813762, at *12, quoting Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975). The court concluded "[t]he arrangement impugns the integrity of these judicial proceedings, the integrity of this Court, and the administration of justice." 2007 WL 1813762, at *14. See also Rentclub, 811 F. Supp. at 656 (access to confidential information gives rise to irrefutable presumption of use of that confidential information).

These same principles dictate disqualification of Ms. Grayson as the attorney for TradeWinds in this action. Here, Ms. Grayson was under five separate confidentiality restrictions: (i) she was obligated under the Settlement and Confidentiality Agreement to keep confidential the settlement and the claims, and purported bases for the claims, asserted against Mr. Soros and Dr. Chatterjee in the JetStar Veil Piercing Action, (ii) she was obligated under the Soros Protective Order not to use for any purpose, other than the prosecution of the JetStar Veil Piercing Action, any of the information derived from Litigation Materials, (iii) she was obligated under the Soros Protective Order not to disclose to anyone (other than certain select persons not relevant here) any of the Litigation Materials that had been designated confidential in the JetStar

18

Veil Piercing Action, (iv) she was obligated under the C-S Protective Order not to use for any purpose, other than the prosecution of JetStar/C-S Action, any of the information derived from Litigation Materials, and (v) she was obligated under the C-S Protective Order not to disclose to anyone (other than certain select persons not relevant here) any of the Litigation Materials that had been designated confidential in the JetStar/C-S Action.  For the same reason courts have held it would constitute a violation of Canon 9 warranting disqualification if Ms. Grayson had hired an employee, or accepted a client, who had confidentiality obligations to Mr. Soros or Dr. Chatterjee, this Court should hold that it also is a violation warranting disqualification when Ms. Grayson has confidentiality obligations directly to Mr. Soros and Dr. Chatterjee.  The justification for disqualification is, of course, particularly acute when, as the record in this action shows, Ms. Grayson, in fact, already has violated such direct obligations on numerous occasions.

Indeed, there are several cases that suggest that particular weight should be given to a party's motion for disqualification of an adversary attorney when the party has directly entered into a relevant confidentiality agreement with such attorney.  An attorney, like everyone else, is bound by the clear and unambiguous provisions of her contracts.  Thus, when an attorney enters into a contract that restricts her ability to represent a client in a lawsuit, she is bound by her contract and cannot represent the client.  See, e.g. Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc., 53 F. Supp. 2d 338, 343-44 (E.D.N.Y. 1999); Feldman v. Minars, 230 A.D.2d 356, 360-61, 658 N.Y.S.2d 614, 617 (1st Dep't 1997).

In Blue Cross, after Philip Morris was sued by group health insurers in three coordinated actions in Chicago, Seattle and New York, a law firm that had represented Philip Morris in other tobacco litigation hoped to represent Philip Morris in the Chicago action and to coordinate the joint industry defense in all three actions.  However, two of the group health

19

insurers involved in the New York Action already were clients of that law firm with respect to matters not involved in the action against Philip Morris and objected to the law firm representing Philip Morris. 53 F. Supp. 2d at 340. In order to resolve this objection, the law firm agreed it would not appear as the attorneys for Philip Morris in the New York Action and the group health insurers agreed they would not seek to disqualify the firm in the Chicago or Seattle actions or from participating in the coordination of the industry defense of all three actions. 53 F. Supp. 2d at 340-41.

A year later, after the firm's relationship with its group health insurer clients had ended, the firm appeared as attorneys for Philip Morris in the New York action. The court ruled that the firm was bound by its agreement not to represent Philip Morris in the New York action. The court held the firm's appearance "violated both the intent and letter of the Agreement" which the firm "freely entered into and is clear and unambiguous." As a result, the court disqualified the firm as counsel for Philip Morris in the New York Action. 53 F. Supp. 2d at 343-44.

The court in Blue Cross relied, in part, on the decision of the New York State Appellate Division for the First Department in Feldman v. Minars, 203 A.D.2d 356, 357, 658 N.Y.S.2d 614, 615 (1st Dep't 1997). In Feldman, a law firm that had represented a settling plaintiff in an action in Illinois had agreed in the settlement agreement that it would not (i) assist any other parties or attorneys in any action against the settling defendants arising out of the same investments at issue in the plaintiff's case or (ii) encourage any parties or attorneys to commence such an action against the settling defendants. One year later, the law firm commenced an action in New York as attorneys for other plaintiff investors against the same defendants that had settled the Illinois action. 203 A.2d at 357-58, 658 N.Y.S.2d at 615.

The court ruled that the settlement agreement was clear and unambiguous and "the act of representation by [the] firm of plaintiffs [in the New York Action] violated the language and intent of the Settlement Agreement." 203 A.2d at 359, 658 N.Y.S.2d at 616. The court ruled that, as a result of the firm's breach of the Settlement Agreement, the firm had to be disqualified as attorneys for the plaintiffs in the New York Action. 203 A.2d at 361, 658 N.Y.S.2d at 617.

An attorney's agreement to keep confidential another client's settlement in an earlier action by itself requires disqualification of the attorney if, as here, the two clients are similarly situated. This is because the confidentiality obligation to the adversary creates a conflict with the lawyer's ability freely to contemplate settlement strategies on behalf of her new client. In Bassman v. Fleet Bank, Aug. 25, 2000 N.Y.L.J. 26 (col. 6) (Sup. Ct. NY. Co. Aug. 25, 2000), aff'd, sub nom., 279 A.D.2d 280, 718 N.Y.S.2d 826 (1st Dep't 2001), a law firm had agreed in a settlement agreement in an earlier action that the law firm would "keep the amount of the Settlement Agreement and any prior specific dollar amounts offered or demanded confidential." The law firm then brought another action as the attorney for a similarly situated plaintiff. The trial court disqualified the law firm, holding that the obligation to maintain the settlement in confidence prohibited the lawyer from accepting future representations of similarly situated plaintiffs. Id. and 279 A.D.2d at 281, 718 N.Y.S.2d at 826.

The First Department affirmed the disqualification stating:

> [T]he confidentiality provisions of the settlement agreement in another action in which [the firm] represented the plaintiffs prohibited [the firm] from accepting future representations of similarly situated plaintiffs. Such a prohibition is necessarily implicated in the agreement's prohibition against disclosure of the settlement amount and any prior specific dollar amounts offered or demanded. As the motion court aptly put it, since it is not apparent how [the firm] 'could use, yet somehow not reveal or give

21

> plaintiffs in this lawsuit access to,' such information, its
> confidentiality obligation 'conflicts with its ability to freely
> contemplate settlement strategies' in this action.

279 A.D.2d at 281, 718 N.Y.S.2d at 826 (quoting trial court decision).  See also Eshel v. Fleet

Bank, 279 A.D.2d 281, 718 N.Y.S.2d 825 (1st Dep't 2001) (affirming, for same reasons stated in

Bassman, order that disqualified attorney from representing investors suing bank when attorney

previously had represented similarly situated plaintiffs in suit against same bank and agreed to

keep confidencial the settlement in that earlier action).  Because Ms. Grayson agreed to keep

confidential the existence, provisions and substance of the Settlement and Confidentiality

Agreement in the JetStar Veil Piercing Action and because TradeWinds's trustee and JetStar are

similarly situatuated, Ms. Grayson's confidentiality obligation to Mr. Soros and Dr. Chatterjee

creates a conflict between her obligations to Mr. Soros and Dr. Chatterjee, on the one hand, and

her obligations to her new client, on the other.  Accordingly, she must be disqualified.

The case for Ms. Grayson's disqualification is even stronger given that Ms.

Grayson's confidentiality agreements were "so ordered".  The New York Code of Professional

Responsibility requires that a lawyer comply with court orders.  Disciplinary Rule 1-102 (a) (5)

states "[a] lawyer or law firm shall not: (5) Engage in conduct that is prejudicial to the

administration of justice."  Disciplinary Rule 7-106 (A) states that "[a] lawyer shall not disregard

. . . a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding."

Both of those disciplinary rules are implicated when a lawyer fails to comply with a protective

order.   In re Peters, 543 F. Supp. 2d 326, 334-35 (S.D.N.Y. 2008) (using in another litigation

material produced under a protective order that restricted use of material to that lawsuit

constituted a violation of both DR 1-102(a)(5) and DR 7-106(A))

22

When a lawyer uses material produced under a protective order in a manner prohibited by the protective order, the attorney taints the proceeding and is subject to disqualification and suspension from the practice of law.  See e.g. In re Peters, 543 F. Supp. 2d 326, 334-35 (S.D.N.Y. 2008) (attorney temporarily suspended due, inter alia, to using in another litigation material produced under a protective order which restricted use of material to that lawsuit); Biocore Medical Technologies, Inc. v. Khosrowshahi, 1998 WL 919126, at *3-4 (D. Kan. Nov. 6, 1998), aff'd, 348 F.3d 1163 (10th Cir. 2003) (attorney disqualified for using in another litigation information that was subject to court order restricting use of material to that litigation where there was risk of further violations of the protective order).

Anticipating that her breach of the Settlement and Confidentiality Agreement and her violation of the Soros Protective Order would be an issue in this action, Ms. Grayson alleges in paragraph 12 of the Amended Complaint that the proceedings in the JetStar Veil Piercing Action are a matter of public record.  That is true to a limited degree.  The veil piercing claim in the JetStar Veil Piercing Action is a matter of public record.  Moreover, to the extent the bases for that claim are set forth in motion papers and in Judge Baer's summary judgment decisions, they also are a matter of public record.  However, the fact that some of the challenged information used and disclosed by Ms. Grayson was a matter of public record does not excuse her from either her contractual obligations, or her legal and professional obligations, to maintain the confidentiality of that information and not to disclose it or use it for her own, or any other, purposes.  There is no provision in any of the applicable agreements and orders that permits Ms. Grayson to disclose or use restricted information if the information is contained in a court file or is otherwise a matter of public record.  There is clearly a significant difference between (i) the existence of information in a public court file, perhaps hundreds of miles away from the eyes of a

23

person who might have an interest in it, and (ii) the explicit disclosure to that person of the

contents of that file.  Given the public's interest  in preserving the integrity of the judicial

process, encouraging the settlement of legal disputes, and upholding the sanctity of private

contracts entered into for valuable consideration, Ms. Grayson's breach of her contracts and her

violation of court orders cannot be excused and warrants her disqualification as plaintiff's

counsel in this action.

## **CONCLUSION**

For the foregoing reasons, Mr. Soros's motion to disqualify should be granted in

all respects.

Dated: New York, New York
       February 2, 2009

BUTLER, FITZGERALD, FYESON
 & McCARTHY
A Professional Corporation

By: _____
       Raymond Fitzgerald (RF 9526)
Attorneys for Defendant
 George Soros
36 West 44th Street, Suite 816
New York, New York 10036
(212) 615-2200

24

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK  )

JOEL JEAN, being duly sworn, deposes and says:  that deponent is not a party to

the action, is over 18 years of age and resides at 36 West 44th Street, Suite 816, New York, New

York 10036.  That on the 2nd day of February, 2009 deponent served the within

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY**

**PLAINTIFF'S ATTORNEY** upon:

VIOLET ELIZABETH GRAYSON, ESQ.
888 Seventh Avenue
45th Floor
New York, New York   10106
vegrayson@gmail.com

Kristin Roy, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, NY   10022
kroy@morrisoncohen.com

Dustin F. Hecker, Esq.
POSTERNAK BLANKSTEIN
 & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA   02199
dhecker@pbl.com

Ellen R. Werther, Esq.
RESSLER & RESSLER
Attorneys at Law
48 Wall Street
New York, New York   10005
ressler@resslerlaw.com

by e-mail and by depositing true copies of same enclosed, in post-paid, properly addressed

envelopes within a depository of the United States Postal Service within the State of New York.

JOEL JEAN

Sworn to before me this

___ day of February, 2009

Notary Public

DOLORES ZAMORA SOBRINO
Notary Public, State of New York
No. 01ZA6185076
Qualified in Queens County
Commission Expires April 14, 20___