LAW OFFICES

# BUTLER, FITZGERALD, FIVESON & McCARTHY

A Professional Corporation
NINE EAST 45TH STREET
NINTH FLOOR
NEW YORK, NEW YORK 10017

Raymond Fitzgerald
212-615-2222
rfitzgerald@bffmlaw.com

Telephone 212-615-2200
Facsimile 212-615-2215

December 13, 2013

**BY ECF and HAND**

Honorable Andrew J. Peck
United States Magistrate Judge
United States District Court
 For the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   TradeWinds Airlines, Inc. v. George Soros and Purnendu Chatterjee, 08 Civ. 5901 (JFK);
      Coreolis Holdings, Inc. and TradeWinds Holdings, Inc. v. George
      Soros and Purnendu Chatterjee, 10 Civ. 8175 (JFK)

Dear Judge Peck:

      We, together with Willkie, Farr & Gallagher LLP, represent defendant George Soros ("Mr. Soros") in the above-referenced actions. Mr. Soros's co-defendant Purnendu Chatterjee ("Dr. Chatterjee"), who is represented by Posternak Blankstein & Lund LLP and Morrison Cohen LLP, joins in this letter motion.

      The purpose of this letter motion is to seek an order compelling plaintiffs TradeWinds Airlines, Inc. ("TradeWinds"), Coreolis Holdings, Inc. ("Coreolis") and TradeWinds Holdings Inc. ("Holdings") (collectively, "Plaintiffs") to (i) provide a complete response to Interrogatories 13 and 14 of Defendant George Soros's First Set of Interrogatories seeking the identity of all of the custodians of Plaintiffs' documents during the relevant time period when Plaintiff has engaged in business activity with the entity they now allege is the alter ego of Mr. Soros and Dr. Chatterjee; (ii) disclose the descriptions of the purported "broad, relevant categories" of documents used by Plaintiffs when searching for documents for production; (iii) provide a log of TradeWinds's pre-lawsuit purported privileged communications with its former counsel or produce such documents, and a log of the communications between Ms. Grayson and Coreolis or Holdings, or their counsel, which pre-dated the action commenced by them in October 2010; and (iv) produce a copy of a certain server located by TradeWinds.

### Custodians of Records - Plaintiffs' Joint Response to Interrogatories 13 and 14

After directed to do so by the Court, Plaintiffs served Amended answers to Interrogatories 13 and 14 of Defendant George Soros's First Set of Interrogatories. A copy of that Joint Response is annexed hereto as Exhibit A.

As the Joint Response indicates, Interrogatories 13 and 14 each request the identity of all persons **who are or were**, custodians of documents concerning [certain subjects] **for any portion or all of the period from January 1, 1999 through December 31, 2008."** (Id.) (emphasis added). In the Joint Response, Plaintiffs identify two individuals and four law firms "as custodians whose identity is sought by Interrogatory 13 [and 14]". (Id.)

The response is incomplete because it identifies the current custodians of the records but not the identity of the custodians who possessed and controlled the records during the period from 1999 through 2005 relevant to Plaintiffs' business dealings with the entity they claim is the alter ego of Mr. Soros and Dr. Chatterjee. We know the identified custodians could not have been the custodians of the records during that time period because none of the persons identified was involved with the affairs of the Plaintiffs during that time period.

For example, the two individuals identified in the Joint Response as record custodians, Mark Yung and Mr. Mukamal, were not involved with the affairs of the Plaintiffs until after 2005. Mr. Yung was not hired by Orchard Capital (and did not otherwise have any position at Coreolis or TradeWinds Holdings) until approximately April 2006 and Mr. Mukamal did not become Trustee for TradeWinds until sometime after August 1, 2008.

The same is true for the four law firms identified as custodians in the Joint Response. Gordon Rees, LLP did not have any involvement with the affairs of any of the Plaintiffs prior to Mr. Mukamal becoming Trustee for TradeWinds, sometime after August 1, 2008. The law firms of Smith Moore, Tuggle Duggins and McGuire Woods, purportedly have in their possession documents that were produced by their clients in the North Carolina Action, but none of them was a custodian of any of Plaintiffs' records prior to their engagement in late 2003 or 2004, and even after their engagement, none was the sole custodian of the business records of those operating businesses.

While the information provided about the current custodians of records is responsive to Interrogatory Nos. 13 and 14, it is only partially responsive. We asked counsel for Plaintiffs to supplement their answers to provide complete information regarding the identity of each custodian of the business records of each of the Plaintiffs for the period of time commencing on January 1, 1999 through the date the persons and firms identified in the Joint Response became custodians of Plaintiffs' records. A copy of Defendants' letter dated November 5, 2013, in which that request was made, is annexed hereto as Exhibit B.

By letter dated November 11, 2013, counsel for Plaintiffs confirmed that the Joint Response to Interrogatories 13 and 14 identified only current custodians and not the former custodians of the plaintiffs' corporate records. A copy of Plaintiffs' letter dated November 11,

2013 is annexed hereto as Exhibit C. Plaintiffs asserted that the reference to "custodian" in Local Civil Rule 33.3 is not preceded by the word former, but ignore that the reference to "custodian" in that Rule also is not preceded by the word "current." Therefore, that Rule does not support the artificial distinction Plaintiffs have drawn. Moreover, Plaintiffs ignore that the request for the identity of the custodians during the relevant time periods in 1999 through 2005 falls squarely within other sections of Local Civil Rule 33.3, such as the provision in Rule 33.3 permitting interrogatories "seeking names of witnesses with knowledge of information relevant to the subject matter of the action," and the provision in Rule 33.3(b)(1) permitting interrogatories "if they are a more practical method of obtaining the information sought that a request for production or a deposition."

This information is important because the current custodians of the records are not in a position to know what document destruction occurred before they became custodians of the records. Therefore, we respectfully submit that the Court should direct Plaintiffs to provide the requested information regarding the former custodians of the records of Plaintiffs.

### The Document Production Search Terms set forth in Plaintiffs' October 17, 2013 Letter

After directed to do so by the Court, Plaintiffs by letter dated October 17, 2013 provided information regarding the terms used to define the scope of their document production search. A copy of Plaintiffs October 17, 2013 letter is annexed as Exhibit D.

There is a significant gap in Plaintiffs disclosure regarding its search for documents. In particular, Plaintiffs fail to disclose how their respective clients selected documents for their attorney production review, and what subjects and topics the parties looked for when searching their business records. Providing a search term list applied by counsel when reviewing documents provided by their client is hardly constructive without knowing whether their clients pulled for review all of its business records, including all intracompany and intercompany records, regarding their business transactions with C-S Aviation, Wells Fargo, the beneficial owners of the aircraft leased to TradeWinds, S-C Newco LLC, P-G Newco LLC, and Deutsche Bank.

The document search description in Plaintiffs' letter dated November 11, 2013 appears to concede that Plaintiffs' did not search for all documents responsive to the Requests, but rather employed some narrower, undisclosed description provided by counsel to search for "documents falling into broad, relevant categories." (Ex. C, at item 2) Therefore, we respectfully submit that the court again direct Plaintiffs to disclose the descriptions of the purportedly "broad, relevant categories" used by Plaintiffs when searching their records for documents for counsel to then review for potential production.

### Communications with Elizabeth Grayson

In our November 5, 2013 letter, we asked Plaintiffs to provide a privilege log with sufficient information to identify whether their pre-lawsuit communications with Elizabeth Grayson were privileged communications. We specifically stated that we were not requesting a

- 3 -

log of communications between Ms. Grayson and TradeWinds after TradeWinds commenced its veil piercing action on June 28, 2008, or a log of communications between Ms. Grayson and Coreolis or Holdings, after October 28, 2010 when Coreolis or Holdings commenced its veil piercing action. (Ex. B at p. 3)

The response of Coreolis and Holdings was evasive. Counsel stated a search was conducted of the files of Coreolis and Holdings and their counsel (presumably including their counsel in the NC action) and no communications with Elizabeth Grayson prior to June 2008 were found. (Ex. C at item 3) However, that was not the relevant time period of the pertinent information sought from Coreolis and Holdings, who did not commence their veil piercing action until October 28, 2010. Rather, we asked for a log of any communications in their files prior to October 28, 2010, when they commenced the action.

We respectfully submit that Coreolis and Holdings should be directed to search their files, and cause the files of their attorneys, including any of their attorneys in the NC action, for communications with Ms. Grayson prior their commencing their suit on October 28, 2010 and either produce any documents regarding such communications or provide a log of any communications with Ms. Grayson which they contend are privileged and the basis for that privilege.

The response of TradeWinds on this subject was even more evasive. First, TradeWinds asserted that in addition to its privilege objection with respect to its pre-lawsuit communications with Ms. Grayson, it also asserted a relevance objection to requests for such documents. (Ex. C, item 3) However, relevance is not pertinent to the assertion of a privilege and if TradeWinds wishes to assert both a relevance objection and a privilege objection they are required by Local Civil Rule 26.2 to provide sufficient information to enable Defendants to evaluate the merits of the privilege objection. There has been testimony that Ms. Grayson did communicate with TradeWinds prior to TradeWinds commencing its veil piercing action and did provide some information to TradeWinds about the defendants before she was retained. Depending on the timing of the communication, and the extent to which Ms. Grayson provided factual information, as opposed to advice, that information may not be insulated from discovery simply because it was provided by counsel.

Second, TradeWinds asserts that it does not believe a log of the pre-lawsuit communications with its subsequently retained counsel is appropriate, presumably because they believe it is indisputable such communications are privilege. However, whether the communications are privileged depends in part on the timing of the communications and whether the information included in any such communication was factual in nature. For example, communications before retention was discussed likely would not be privileged, or if Ms. Grayson provided to TradeWinds a document or factual information she had obtained in discovery in a prior lawsuit against Mr. Soros or Dr. Chatterjee that would not insulate that document or information from discovery. These and other questions pertinent to the privilege cannot be evaluated without the log.

Third, TradeWinds assertion that not providing a log is consistent with Your Honor's

"guidance" is disingenuous. They refer to pages in the September 23, 2013 transcript but the Court did not say anything there that excused TradeWinds from providing a log. Your Honor's "guidance" on the subject was addressed, we believe, to the context of the parties' attempting to avoid what can be an enormous burden of logging thousands of privileged documents and instead dealing with the issue in buckets. That clearly is not at issue on this question regarding Ms. Grayson's pre-lawsuit communications between Ms. Grayson and her former client. TradeWinds has not given any reason to believe that there is a burdensome number of pre-lawsuit communications to be logged. Moreover, plaintiffs have not obtained any agreement from Defendants to excuse their having to provide a log, and have not given any quarter to Defendants regarding the enormous log we have had to prepare.

Finally, the relevance objection is spurious. It simply is not credible that communications between Ms. Grayson and TradeWinds were on any subject other than the subject matter that is the basis for this lawsuit.

**The TradeWinds Server That Has Not Been Produced or Searched**

In Plaintiffs' letter dated October 17, 2013, Plaintiffs stated that TradeWinds has "obtained a copy of a server" but have not "revive[d] and access[ed] this server" because of the purported cost involved in doing so. (Ex. D at p. 6) We pressed to obtain a copy of the information on that server (Ex. B at p. 3), something Defendants did for Plaintiffs in other instances with respect servers in the possession or control of non-parties. Plaintiffs then made a whole new set of inconsistent assertions that some material at some unidentified time had already been pulled from the server and some unidentified person at some unidentified point in time had sufficient access to the server to ascertain that it "consists of material that is not relevant in this matter." (Ex. C, at item 4) The Court should direct Plaintiffs to produce an electronic copy of the server for our review.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should issue an order directing Plaintiffs to (i) provide a complete response to Interrogatories 13 and 14 of Defendant George Soros's First Set of Interrogatories and identify all of the custodians of Plaintiffs' documents during the time period requested; (ii) disclose the descriptions of the purported "broad, relevant categories" of documents used by Plaintiffs when searching for documents for production; (iii) provide a log of TradeWinds's pre-lawsuit purported privileged communications with its former counsel or produce such documents; (iv) search for and either produce or log all communications between Ms. Grayson and Coreolis or Holdings, or their counsel, which pre-dated the action commenced by them in October 2010; and (v) produce a copy of a certain server located by TradeWinds.

Very truly yours,

Raymond Fitzgerald

cc: Bruce Ressler, Esq. (by e-mail)
William Carmody, Esq. (by e-mail)
Shawn Rabin, Esq. (by email)
Ashley Simonsen, Esq. (by e-mail)
Dustin F. Hecker, Esq. (by e-mail)
Kristin T. Roy, Esq. (by e-mail)
Martin Klotz, Esq. (by e-mail)
Steven Reisberg, Esq. (by e-mail)