USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec. 17, 2013

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------X

TRADEWINDS AIRLINES, INC.,      :

                              :

               Plaintiff,    :

                              :

    -against-                 :

                              :

GEORGE SOROS, and PURNENDU    :

CHATTERJEE,                  :

                              :      08 Civ. 5901 (JFK)

             Defendants.   :      10 Civ. 8175 (JFK)

------------------------------------X

COREOLIS HOLDINGS, INC., and   :      **Opinion and Order**

TRADEWINDS HOLDINGS, INC.,    :

                              :

              Plaintiffs,   :

                              :

    -against-                 :

                              :

GEORGE SOROS, and PURNENDU    :

CHATTERJEE,                  :

                              :

             Defendants.   :

------------------------------------X

<u>APPEARANCES</u>

FOR TRADEWINDS AIRLINES, INC.
    Shawn J. Rabin
    Ashley Simonsen
    SUSMAN GODFREY LLP

FOR COREOLIS HOLDINGS, INC. AND TRADEWINDS HOLDINGS, INC.
    Ellen R. Werther
    Bruce J. Ressler
    RESSLER & RESSLER

FOR GEORGE SOROS
    Raymond Fitzgerald
    David J. McCarthy
    BUTLER, FITZGERALD, FIVESON & McCARTHY, P.C.

    Martin B. Klotz
    WILLKIE FARR & GALLAGHER LLP

FOR PURNENDU CHATTERJEE
      Kristin T. Roy
      MORRISON COHEN LLP

      Dustin F. Hecker
      POSTERNAK BLANKSTEIN & LUND LLP

**JOHN F. KEENAN, United States District Judge:**

Plaintiffs TradeWinds Airlines, Inc. ("TradeWinds Airlines"), Coreolis Holdings, Inc. ("Coreolis"), and TradeWinds Holdings, Inc. ("TradeWinds Holdings") (collectively, "the TradeWinds Group" or "Plaintiffs") hold an unsatisfied default judgment against C-S Aviation Services ("C-S Aviation"). Plaintiffs brought the instant actions to pierce the corporate veil of C-S Aviation and recover from the company's alleged alter egos, Defendants George Soros and Purnendu Chatterjee.

Before the Court is Plaintiffs' motion to strike Defendants' second, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, twentieth, and twenty-first affirmative defenses.[1] For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## I. Background

On November 14, 2003, the TradeWinds Group was sued in North Carolina Superior Court (the "North Carolina Action") by Deutsche Bank Trust Company Americas ("Deutsche Bank"), which is

---

[1] Although there are four separate answers, one for each Defendant in each action, they raise substantially similar defenses. The affirmative defenses are identified in this Opinion by the numbers used in Soros's answer to Plaintiffs' amended complaint in the 2010 Action.

not a party to the instant litigation. See Deutsche Bank Trust
Co. Ams. v. TradeWinds Airlines, Inc., No. 03 CVS 12215, 2009 WL
1154861, ¶¶ 5-6 (N.C. Super. Ct. Apr. 29, 2009).  In January
2004, the TradeWinds Group filed a third-party complaint against
C-S Aviation and others, claiming breach of contract on a series
of aircraft leases, as well as fraudulent inducement and unfair
and deceptive trade practices associated with those leases. See
id. ¶ 6.  The TradeWinds Group ultimately settled with Deutsche
Bank, and the North Carolina court dismissed all of the
remaining claims, except those against C-S Aviation. See
id. ¶ 8.

     C-S Aviation never filed an answer, and the North Carolina
court entered default against C-S Aviation in August 2004. See
id. ¶ 7.  Nearly four years later, in April 2008, TradeWinds
Airlines (acting alone) moved for entry of default judgment
against C-S Aviation. See id. ¶ 11.  The North Carolina court
held a hearing on the motion, which C-S Aviation did not attend.
See id. ¶ 12.  The court entered the default judgment on June
27, 2008, see id., and TradeWinds Airlines promptly filed an
action before this Court to pierce C-S Aviation's corporate veil
and hold Soros and Chatterjee personally liable for the default
judgment (the "2008 Action").

     On August 27, 2008, C-S Aviation moved before the North
Carolina court to set aside the entry of default and the default

judgment. See id. ¶ 16.   TradeWinds Holdings and Coreolis
initially moved to be added to the default judgment, but later
withdrew that motion and instead moved for default judgment. See
id. ¶¶ 17, 19-20.   Meanwhile, this Court granted Defendants'
request for a stay of the 2008 Action pending resolution of the
North Carolina Action. TradeWinds Airlines, Inc. v. Soros, No.
08 Civ. 5901, 2009 WL 435298, at *4 (S.D.N.Y. Feb. 23, 2009).

The North Carolina court set aside the default judgment but
did not disturb the entry of default. (Simonsen Decl. Ex. 2,
¶ 4.)   The parties were allowed to conduct discovery on damages,
and the court held a six-day hearing on damages in May 2010.
(Id. ¶¶ 4-5.)   No corporate representative of C-S Aviation
testified. (Id. ¶ 5)   On July 26, 2010, the court ordered
judgment for TradeWinds Holdings and Coreolis in the amount of
$11,544,000.00, and judgment for TradeWinds Airlines in the
amount of $16,111,403.00, with both amounts subject to trebling
and interest. (Id. ¶ 14.)

Three months later, on October 28, 2010, Coreolis and
TradeWinds Holdings filed their own action before this Court to
pierce C-S Aviation's corporate veil to reach Soros and
Chatterjee (the "2010 Action").   At Defendants' request, the
2010 Action was also stayed, pending appeals in the North
Carolina Action. TradeWinds Airlines, Inc. v. Soros, Nos. 08

4

Civ. 5901, 10 Civ. 8175, 2011 WL 309636, at *4 (S.D.N.Y. Feb. 1, 2011).

A panel of the North Carolina Court of Appeals unanimously affirmed the default judgment. TradeWinds Airlines, Inc. v. C-S Aviation Servs., 733 S.E.2d 162 (N.C. Ct. App. 2012). The North Carolina Supreme Court denied review, rendering the judgment final on June 12, 2013. TradeWinds Airlines, Inc. v. C-S Aviation Servs., 743 S.E.2d 189 (N.C. 2013). This Court lifted the stays of the 2008 Action and the 2010 Action on July 10, 2013. (No. 08 Civ. 5901, ECF No. 107; 10 Civ. 8175, ECF No. 51.)

Plaintiffs now move to strike nine of Defendants' affirmative defenses. Defendants have withdrawn one of those defenses, the twelfth, which contested the finality of the North Carolina default judgment. (Defs.' Mem. App. 2.) Eight defenses remain in dispute.

## II. Discussion

### A. Legal Standard

An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary 482 (9th ed. 2009). A court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Nevertheless, motions to strike are generally disfavored and

will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984) (internal quotation marks omitted), vacated on other grounds, 478 U.S. 1015 (1986); see also Walsh v. City of N.Y., 585 F. Supp. 2d 555, 557 (S.D.N.Y. 2008).  In order to strike a defense as "insufficient," not only must there be no questions of law or fact that might allow the defense to succeed, but the plaintiff must also show that it would be prejudiced by the inclusion of the defense. See Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).  The burden of additional discovery and increasing the duration and expense of litigation can constitute sufficient prejudice. See, e.g., id. at 426; Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005).

## B. Analysis

The parties no longer contest the finality of the North Carolina default judgment.  Because it is a final judgment, this Court must give it the same preclusive effect that it would have in North Carolina. See Kremer v. Chem. Const. Corp., 456 U.S. 461, 466 (1982); Joseph v. Athanasopoulos, 648 F.3d 58, 61 (2d Cir. 2011).  Thus, as both parties recognize, North Carolina preclusion law governs.

In North Carolina, when a plaintiff prevails in an earlier suit, the cause of action merges with the judgment. See Thomas M. McInnis & Assocs., Inc. v. Hall, 349 S.E.2d 552, 556–57 (N.C. 1986).  Merger prevents relitigation of "all matters . . . that were or should have been adjudicated in the prior action." Id.; see also Whitacre P'ship v. Biosignia, Inc., 591 S.E.2d 870, 880 (N.C. 2004).  Thus, in a subsequent action on the judgment, "the defendant cannot avail himself of defenses he might have interposed . . . in the first action." Restatement (Second) of Judgments § 18 (1982); see also McInnis, 349 S.E.2d at 556–57. As Defendants note, North Carolina courts have favorably cited Restatement (Second) of Judgments § 18, (Defs.' Mem. App. 1.), which provides a helpful illustration of this principle:

> A brings an action against B on a promissory note.  B defaults.  Judgment is given for A.  A brings an action against B on the judgment.  In this action B is precluded from denying that he executed the note and from setting up an affirmative defense such as fraud or illegality.

Restatement (Second) of Judgments § 18 cmt. c, illus. 4.

Here, the TradeWinds Group prevailed in North Carolina, merging the cause of action with the default judgment.  Since Plaintiffs' veil-piercing claims are actions upon that judgment, C-S Aviation is now barred from raising affirmative defenses that it could have asserted in the earlier action ("the North Carolina Defenses").  If Soros and Chatterjee are the same

parties as, or privies of, C-S Aviation, then they will also be
barred from raising the North Carolina Defenses.

Whether Soros and Chatterjee are the same parties as, or
privies of, C-S Aviation is the question that this litigation
will ultimately resolve.  As a consequence of the eventual
adjudication of the merits, Soros and Chatterjee either will or
will not be bound to the North Carolina default judgment.  At
this point in the litigation, it is not clear whether, as
Plaintiffs argue, veil piercing alone is sufficient under North
Carolina law to bind an alter ego to a judgment entered against
the corporation.  Alternatively, it may be the case, as
Defendants argue, that some combination of notice, control, and
the opportunity to litigate the action underlying the judgment
is also required.

There are several paths this case could take, but the Court
can see none that would allow the North Carolina Defenses to
succeed because none of those defenses would defeat Plaintiffs'
instant veil-piercing claims.  If Plaintiffs establish the
elements of veil piercing and satisfy whatever else may be
required under North Carolina's same party or privy analysis,
then Soros and Chatterjee will be personally liable for the
default judgment whether the North Carolina Defenses are
meritorious or not.  Even if something more than veil piercing
is necessary to bind Soros and Chatterjee to the default

judgment and Plaintiffs fail to satisfy that requirement, there would still be no need for the North Carolina Defenses.  In that scenario, Defendants would instead defeat the veil-piercing claims by demonstrating that Soros and Chatterjee cannot be personally bound by the North Carolina default judgment.

Thus, defenses that C-S Aviation could have raised in the North Carolina Action are "insufficient" here because there are no legal or factual scenarios where they would succeed in defeating Plaintiffs' instant claims.  Allowing the North Carolina Defenses to remain would undoubtedly prejudice Plaintiffs because relitigation of the North Carolina Action would require additional discovery and increase the duration and expense of the instant litigation.  This Court will therefore strike those affirmative defenses that C-S Aviation could have raised in the North Carolina Action.  Each disputed affirmative defense will be analyzed in turn below.

### 1. Second Affirmative Defense

Affirmative Defense 2 asserts that "Plaintiffs have unclean hands." (2010 Soros Answer to Am. Compl. ¶ 31.)  The equitable defense of unclean hands requires that plaintiffs "have acted fairly and without fraud or deceit as to the controversy in issue." Dunlop-McCullen v. Local 1-S, 149 F.3d 85, 90 (2d Cir. 1998) (internal quotation marks omitted).  Insofar as the

defense applies to the post-default judgment veil-piercing claims, it cannot be stricken.

The defense cannot, however, be raised as to the North Carolina Action. North Carolina courts recognize unclean hands as an affirmative defense, see, e.g., Hendrix v. Advanced Metal Corp., 672 S.E.2d 745, 746 (N.C. Ct. App. 2009), which means it must be raised in a responsive pleading, N.C. R. Civ. P. 12(b). Thus, Defendants may not use the second affirmative defense to litigate the merits of the North Carolina Action, nor may they pursue discovery as to the North Carolina Action.

### 2. Thirteenth Affirmative Defense

The thirteenth affirmative defense asserts that, because it resulted in a default judgment, the North Carolina Action was not litigated on the merits. (2010 Soros Answer to Am. Compl. ¶ 42.) Defendants may argue that they cannot be held personally liable for the default judgment because the North Carolina Action was not litigated on the merits. Therefore, the Court cannot strike this defense. However, for the reasons stated above, Defendants may not use this defense to litigate the merits of the North Carolina Action, nor may they pursue discovery as to the North Carolina Action.

### 3. Fourteenth Affirmative Defense

Defendants assert that due process requires the relitigation of the merits of the North Carolina Action. (2010

Soros Answer to Am. Compl. ¶ 43.)  Defendants may argue that
they cannot be personally liable for the default judgment
because the North Carolina Action lacked certain hallmarks of
due process.  Therefore, this defense cannot be stricken.  But,
for the reasons discussed above, Defendants cannot use this
defense to litigate the merits of the North Carolina Action, nor
may they pursue discovery as to the North Carolina Action.

### 4. Fifteenth Affirmative Defense

This defense asserts that North Carolina did not have
personal jurisdiction over C-S Aviation. (2010 Soros Answer to
Am. Compl. ¶ 44.)  The North Carolina default judgment would not
be entitled to full faith and credit, and would have no
preclusive effect, if the North Carolina court lacked
jurisdiction over C-S Aviation. See Underwriters Nat'l Assurance
Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S.
691, 704-05 (1982).  However, "[a] judgment is entitled to full
faith and credit — even as to questions of jurisdiction — when
the second court's inquiry discloses that those questions have
been fully and fairly litigated and finally decided in the court
which rendered the original judgment." Id. at 706 (internal
quotation marks omitted); see also Stone v. Williams, 970 F.2d
1043, 1057 (2d Cir. 1992).

Therefore, Defendants may argue that personal jurisdiction
was not "fully and fairly litigated and finally decided" in the

North Carolina Action.  Since this argument would be a collateral attack on the judgment, the Court will not strike this affirmative defense.

### 5. Sixteenth Affirmative Defense

Soros and Chatterjee allege that Plaintiffs did not state a valid claim against C-S Aviation in the North Carolina Action. (2010 Soros Answer to Am. Compl. ¶ 45.)  In North Carolina, failure to state a claim is a defense that can be raised at any time until judgment. N.C. R. Civ. P. 12(b), (h)(2).  The Court therefore grants Plaintiffs' motion to strike the sixteenth affirmative defense.

### 6. Seventeenth Affirmative Defense

Soros challenges Coreolis's and TradeWinds Holdings's standing in the North Carolina Action. (2010 Soros Answer to Am. Compl. ¶ 46.)  Standing is a component of subject matter jurisdiction. See Aubin v. Susi, 560 S.E.2d 875, 878 (N.C. Ct. App. 2002).  Therefore, this Court cannot strike this jurisdictional defense for the same reason it cannot strike the fifteenth affirmative defense. See also Underwriters Nat'l Assurance, 455 U.S. at 704–05.

### 7. Twentieth Affirmative Defense

Defendants allege that Plaintiffs entered into an accord and satisfaction with C-S Aviation. (2010 Soros Answer to Am. Compl. ¶ 49.)  Accord and satisfaction is an affirmative defense

in North Carolina that must be asserted in the responsive pleading. N.C. R. Civ. P. 8(c), 12(b).  Therefore, the Court grants Plaintiffs' motion to strike the twentieth affirmative defense.

### 8. Twenty-First Affirmative Defense

Soros and Chatterjee allege that "Plaintiffs have failed to mitigate damages." (2010 Soros Answer to Am. Compl. ¶ 50.)  This defense is clearly directed at the damages awarded to the Plaintiffs in the North Carolina default judgment.  It is not a defense against the instant litigation, which merely seeks to enforce that judgment against Defendants personally. (2008 Third Am. Compl. ¶ 27; 2010 Am. Compl. ¶ 29.)

North Carolina courts recognize failure to mitigate damages as an affirmative defense, <u>see, e.g.</u>, <u>Barfield v. Matos</u>, 714 S.E.2d 812, 817 (N.C. Ct. App. 2011), which means it must be raised in the responsive pleading, N.C. R. Civ. P. 12(b).  The Court therefore grants Plaintiffs' motion to strike the twenty-first affirmative defense.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion to strike Defendants' sixteenth, twentieth, and twenty-first affirmative defenses is granted.  Plaintiff's motion to strike the second, thirteenth, fourteenth, fifteenth, and seventeenth affirmative

defenses is denied, except that the surviving affirmative

defenses may not be used to litigate the merits of the North

Carolina Action.  Defendants may not use the second, thirteenth,

or fourteenth affirmative defenses to pursue discovery as to the

North Carolina Action.

**SO ORDERED.**

Dated:     New York, New York
           December 17, 2013

                                        John F. Keenan
                                   United States District Judge