# WILLKIE FARR & GALLAGHER LLP

STEVEN H. REISBERG
212 728 8257
sreisberg@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

March 3, 2014

**VIA FAX**

Honorable Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   TradeWinds Airlines, Inc. v. George Soros and Purnendu Chatterjee 08 Civ. 5901 (JFK);
       Coreolis Holdings, Inc. and TradeWinds Holdings, Inc. v. George Soros and Purnendu
       Chatterjee 10 Civ. 8175 (JFK)

Dear Judge Peck:

      We, together with Butler, Fitzgerald, Fiveson & McCarthy, P.C., represent defendant George Soros in the above-referenced action. We write in response to the Plaintiffs' letter, dated February 26, 2014 ("Plaintiffs' Letter"). The Court has scheduled a hearing on this matter for 11:30 a.m. on March 4, 2014.

### A. The Relief Requested

      Plaintiffs' Letter questions 93 documents contained on Defendants' updated privilege log, dated February 7, 2014. We note that this is the second time Plaintiffs have brought issues to the Court, prior to giving us any advanced notice and without seeking in any way to satisfy their obligation to meet and confer with us. Plaintiffs, in bringing this application, have also acted in direct violation of the Court's instructions issued at the discovery conference held on December 18, 2013 (the "December 18 Conference").

      At the December 18 Conference, Plaintiffs criticized Defendants' privilege log, asserting that many of the descriptions were "very vague" (Ex. A, December 18 Conference Tr. at 31:12), and wanted Defendants to provide more detailed descriptions in order to produce a "useful privilege log." (Id. at 36:3-4.) Plaintiffs also raised specific questions about communications involving (i) Diane Southwood-Smith, a former C-S Aviation employee; and (ii) David Bell, who had been incorrectly identified as an attorney for C-S Aviation. (Id. at 30:24-31:18.)

As counsel for Mr. Soros, it was our position that it would be extremely expensive and wasteful to have attorneys "physically writing out revised descriptions" for many hundreds of documents simply to satisfy Plaintiffs that the documents were privileged. (Id. at 34:25-35:3.) As an alternative, I requested that "the court order that the plaintiffs meet with us. We will have each of the documents available. We will go though them across a conference table." (Id. at 35:4-6.) This approach will allow us to efficiently resolve Plaintiffs' questions. Moreover, as to David Bell, after being made aware of the error, we had already searched for and produced any documents where he was an author or recipient. We also believed that the logged communications with Ms. Southwood-Smith were privileged, but agreed to re-review those documents.

At the December 18 Conference, this Court provided the parties with guidance as to how the Court wanted privilege log disputes to be resolved. (See id. at 36-37.) The Court instructed the parties as follows.

First, the Court instructed counsel for Defendant Soros to review the specific documents being questioned by Plaintiffs on Exhibit A to their December 13, 2013 letter, and produce those it was willing to produce. (Id. at 35:11-16.)

We complied with this instruction. This review was done by Willkie associates.

Second, the Court directed that "whether we use your suggestion or whether . . . you bring the stack of documents . . . to plaintiffs' counsel's office and sit down with them there," the parties should meet and confer to discuss and resolve the remaining privilege log issues. (See id. at 36:20-23.)

Plaintiffs ignored this instruction, as well as my offer. Plaintiffs never requested any such meeting. Instead, without notice, Plaintiffs filed their February 26 letter requesting this court proceeding.

Third, the Court stated that "I am going to in essence put this back on both of you to cooperate and try to resolve the problem." (Id. at 37:13-14.) The Court also suggested that the parties explore any "other ways to deal with" these issues in order to resolve these issues "in as amicable a way as possible." (Id. at 37:2-4.)

Plaintiffs now seek to challenge 93 documents that have been withheld as privileged. We respectfully request that this Court deny their request that these documents be produced, and instead order the parties to meet at Willkie Farr & Gallagher LLP's offices, where the documents at issue are located, so that the parties can discuss and resolve any issues of privilege. Plaintiffs should be given leave to apply to this Court as to any documents for which disagreement remains following the meeting.

### B. Response To Certain Specific Allegations

We believe it appropriate to respond to certain of Plaintiffs' incorrect speculations and attacks.

### 1. The Documents Involving Ms. Dianne South-Wood Smith (see Plaintiffs' Letter at B)

Ms. Southwood-Smith was employed in the finance/accounting department of C-S Aviation. At her deposition, taken more than 10 years after the events in question, she did not recall occasions on which she asked legal advice of certain lawyers. (See Plaintiffs' Letter at Ex. 2.) Based on this testimony, Plaintiffs assert that all communications involving Ms. Southwood-Smith are not privileged, and further criticize counsel for not getting Ms. Southwood-Smith to testify as to something she has already testified that she does not recall.

As we informed Plaintiffs, we conducted a re-review of her documents. There are eight documents involving Ms. Southwood-Smith that are being withheld on grounds of privilege.

For example, Plaintiffs challenge Log Nos. 1170 and 1171. (See Plaintiffs' Letter at Ex. 4.) These involve an e-mail exchange between, among others, Ms. Southwood-Smith and Richard Holahan, an attorney at SFM, telling him that TradeWinds has sent a check, instead of the usual wire transfer, for past rent due and "they've marked the memo line 'Payment in full for 1/03 Supp. Rent, 2/03 Base & Supplemental, and 3/03 Base Rent.'" She asked: "Is the memo binding if we deposit the check?"

This exchange speaks for itself. It does not matter that Ms. Southwood-Smith, or Mr. Arteaga, another former employee of C-S Aviation in the accounting department, testified that they did not recall asking Mr. Holahan for legal advice. The documents prove that they did. We are available to meet and discuss the remaining 31 documents involving either Ms. Southwood-Smith or Mr. Arteaga with Plaintiffs.

### 2. Documents Whose Description Is "General Business Operations" (see Plaintiffs' Letter at C)

Plaintiffs' Letter at Exhibit 6 identifies 60 documents that Plaintiffs are challenging on the grounds that the description "re: general business operations" is improper. We fully appreciate this Court's knowledge of the burdens that e-discovery have created, including with respect to privilege logs.

In order to efficiently log the large volume of privileged documents, Defendants crafted 23 descriptors for reviewers to choose from, including "aircraft leasing," "board of directors," "maintenance/servicing agreements," "pending litigation," and "purchase and sale of aircraft." "General business operations" is one of these descriptors. We consider this approach to have been completely proper, and that the creation of individualized detailed descriptions for thousands of documents that are of no interest to the Plaintiffs would have been an extraordinary waste. Plaintiff's prior counsel had no issues with this approach.

As examples, Plaintiffs refer to communications from mid-July 2003 between Mr. Walsh or Mr. Arteaga and attorneys at Akin Gump. As Plaintiffs know, because the airplane leases were not generating sufficient revenue to cover the payments due under the Deutsche Bank loan, the lenders declared an event of default. On July 25, 2003, an Acceptance Agreement was entered into with the lenders pursuant to which the lenders essentially foreclosed on all the pledged aircraft, and C-S

Aviation went out of business. The communications with Akin Gump relate to that event. We could have resolved any issues with these documents with Plaintiffs in a matter of minutes, had they approached us first.

### 3. 1988 Shareholder Documents (see Plaintiffs' Letter at D)

Plaintiffs challenge three documents in this category. The documents do not refer to C-S Aviation, and should most likely have been marked as non-responsive.

### 4. David Bell (see Plaintiffs' Letter at E)

Plaintiffs assert that Defendants continue to improperly withhold documents of David Bell. (See Plaintiffs' Letter at 9-10.) Plaintiffs, more specifically, accuse me of acting in contradiction to my representation to the Court that when we discovered we had mistakenly identified Mr. Bell as an attorney for one of the Defendants, we immediately ran Mr. Bell's name against our privilege log and produced any documents on which he was an author or recipient.

I stand by my representations to this Court. We did exactly as I said. None of the 13 documents listed on Exhibit 9 of Plaintiffs' Letter are from or to Mr. Bell. As can be seen from the description, each is a draft agreement prepared by Akin Gump. Mr. Bell was erroneously listed as an author of the documents by document coders apparently because his name appears under the signature line for Deutsche Bank. We produced all the documents on which Mr. Bell was actually an author or recipient; we did not go back and correct the log entries as to these eight documents.

Plaintiffs also challenge certain documents because the log lists them as being authored by or addressed to Mr. Soros. (See Plaintiffs' Letter at 10.) The explanation is the same. Each is a draft agreement prepared by Akin Gump. The document coders erroneously listed Mr. Soros as the author or recipient because he would have been the recipient or signatory of the document when it was executed. Because Mr. Soros at times was also the authorized representative of a corporate entity, he was sometime erroneously listed twice. This issue would have taken seconds to resolve with Plaintiffs.

### 5. Certain Post-Foreclosure Documents (see Plaintiffs' Letter at F)

Plaintiffs challenge Log No. 1641, because Mr. Soros is listed as author and recipient, while acknowledging that the document is described as a "Draft agreement reflecting legal advice of Akin Gump." (See Plaintiffs' Letter at 10.) The document is a draft prepared by Akin Gump for the combination of Soros Private Funds Management LLC and Soros Fund Management LLC in December 2003. While clearly privileged, it is also irrelevant. We remain available to review and discuss the remaining documents directly with Plaintiffs.

\*\*\*

We request that the Court, consistent with its instructions issued at the December 18 Conference, order Plaintiffs to meet with counsel for Mr. Soros, at our offices, in order to review the issues of privilege with respect to the documents being challenged as improperly withheld.

March 3, 2014
Page 5

Documents, if any, as to which agreement cannot be reached can then be the subject of an application to this Court.

Respectfully yours,

Steven H. Reisberg

cc:  Ellen R. Werther, Esq. (by e-mail)
     Matthew R. Berry, Esq. (by e-mail)
     Shawn Rabin, Esq. (by e-mail)
     Dustin F. Hecker, Esq. (by e-mail)
     Kristin T. Roy, Esq. (by e-mail)
     Raymond Fitzgerald, Esq. (by e-mail)