**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TRADEWINDS AIRLINES INC., | § § § § | |
| Plaintiff, | § | |
| v. | § § § | 08-cv-5901(JFK) |
| GEORGE SOROS and PURNENDU CHATTERJEE, | § § § § | |
| Defendants. | § | |

------------------------------------------------------

| | | |
|---|---|---|
| COREOLIS HOLDINGS, INC. and TRADEWINDS HOLDINGS INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | 10-cv-8175(JFK) |
| GEORGE SOROS and PURNENDU CHATTERJEE, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *DAUBERT* MOTION TO STRIKE PORTIONS OF GUHAN SUBRAMANIAN'S EXPERT REPORT AND TO EXCLUDE SUCH TESTIMONY AT TRIAL

3153353v1/013900

**TABLE OF CONTENTS**

Page

I. BACKGROUND AND FACTUAL OVERVIEW ................................................................1

II. APPLICABLE LAW ....................................................................................................4

III. SUBRAMANIAN'S LEGAL OPINIONS SHOULD BE EXCLUDED ...........................5

    A. Subramanian's "Eyes Wide Open" Theory is an Impermissible Legal Opinion ......................................................................................................6

    B. Subramanian's Legal Opinions are Wrong............................................................8

    C. Subramanian's Extensive Policy Discussion Should be Excluded........................11

IV. SUBRAMANIAN'S TESTIMONY IMPERMISSIBLY OPINES ON THE ULTIMATE LEGAL QUESTION ................................................................................12

V. SUBRAMANIAN IMPERMISSIBLY OPINES ON TRADEWINDS' STATE OF MIND....................................................................................................................15

VI. CONCLUSION...........................................................................................................18

3153353v1/013900

# TABLE OF AUTHORITIES

Page

Cases

*Andrews v. Metro North Commuter R. Co.*,
    882 F.2d 705 (2d Cir. 1989)............................................................. 5

*Bd. Of Trustees of AFTRA Retirement Fund v. JP Morgan Chase Bank*,
    09 Civ. 686, 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011)........................... 12

*Burkhart v. WMATA*,
    112 F.3d 1207 (D.C. Cir. 1997)........................................................ 7

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)..................................................................... 5

*Feinberg v. Katz*,
    01 Civ. 2739, 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)......................... 12

*Fiataruolo v. United States*,
    8 F.3d 930 (2d Cir. 1993)............................................................... 5

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995)........................................................... 8, 9

*Harco Nat'l Ins. Co. v. Green Farms, Inc.*,
    No. Civ. A. 1331, 1989 WL 110537 (Del. Ch. Sept. 19, 1989)........................ 9

*HBC Ventures, LLC v. Holt MD Consulting, Inc.*,
    No. 06 Civ. 190, 2012 WL 4483625 (E.D.N.C. Sept. 27, 2012)...................... 7

*Highland Capital Mgmt. L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................. 17

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)............................................... 14, 15

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992)............................................................ 6

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)................................................ 15

*In re Fosomax Prod. Liab. Litig.*,
    807 F. Supp.2d 168 (S.D.N.Y. 2011)............................................. 4, 5, 6, 8

3153353v1/013900

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).............................................................. 4, 15, 17

*Jet Star Enterprises Ltd. v. Soros*,
    No. 05 Civ. 6585, 2006 WL 2270375, at \*7 (S.D.N.Y. Aug. 9, 2006) .................... 1, 3, 9

*Kidder, Peabody & Co., Inc. v. IAG International Acceptance Group N. V.*,
    14 F.Supp. 2d 391 (S.D.N.Y. 1998).............................................................. 12

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)....................................................................... 5

*Marx & Co., Inc. v. Diners' Club, Inc.*,
    550 F.2d 505 (2d Cir. 1977)....................................................................... 7

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
    No. 95 Civ. 3901, 1999 WL 946354 (S.D.N.Y. Oct. 18, 1999) .......................... 14

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F.Supp. 260 (D. Del. 1989).................................................................. 9

*Muniz v. Rexnord Corp.*,
    No. 04 Civ. 2405, 2006 WL 5153078............................................................ 13

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
    537 F.3d 168 (2d Cir. 2008)....................................................................... 8, 9

*Nimely v. City of N.Y.*,
    414 F.3d 381 (2d Cir. 2005)....................................................................... 14

*Pereira v. Cogan*,
    281 B.R. 194 (S.D.N.Y. 2002)..................................................................... 7

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)........................................................... 16

*Safety-Kleen Corp. Rollins Shareholders Lit.*,
    No. 3:00-1343-17, 2004 WL 5504972 (D.S.C. Aug. 30, 2004) ........................... 7

*Sheet Metal Workers Int'l Assoc. Local Union No. 67 v. Todd-Ford Management Co.*,
    No. SA-03-CA-290, 2005 WL 5977617 (W.D. Tex. July 12, 2005)...................... 7

*The Pinal Creek Group v. Newmont Mining Corp.,*,
    252 F. Supp. 2d 1037 (D. Ariz. 2005) .......................................................... 7, 13

*Tradewinds Airlines, Inc. v. Soros*,
    2012 WL 983575 (S.D.N.Y. March 22, 2012) ................................................ 9

3153353v1/013900

*U.S. v. Cruz,*
   363 F.3d 187 (2d Cir. 2004)................................................................................ 4

*United States v. Amusoi,,*
   21 F.3d 1252 (2d Cir. 1994)........................................................................ 10, 17

*United States v. Bilzerian,*
   926 F.2d 1285 (2d Cir. 1991)................................................................... passim

*United States v. Duncan,*
   42 F.3d 97 (2d Cir. 1994)........................................................................... 5, 6

*United States v. Stewart,*
   433 F.3d 273 (2d Cir. 2006)..................................................................... 11, 12

Rules

Fed. R. Evid. 702 ........................................................................................ 4, 5

3153353v1/013900

Plaintiffs TradeWinds Airlines Inc. ("TradeWinds"), Coreolis Holdings, Inc. and TradeWinds Holdings, Inc. respectfully submit this memorandum of law in support of their *Daubert* motion to exclude testimony from Defendants George Soros and Purnendu Chatterjee's proffered veil-piercing expert, Guhan Subramanian. Subramanian is a law professor. He is not a judge or juror. Yet, his proposed testimony usurps the role of the Court by instructing the jury about what the law **should be in his academic view** and then usurps the role of the jury by applying his novel veil-piercing test to his interpretation of the facts. Such testimony is impermissible and, as a result of this defect and others, the following paragraphs of his expert report should be excluded: 24-33, 38, 39, 44-45, 47-64, 108-110, and portions of paragraphs 7, 19, 22, 34, 37, 86, 98, 100, and 107.

## I.   BACKGROUND AND FACTUAL OVERVIEW

Plaintiffs allege a single cause of action: to pierce the corporate veil of CS Aviation Services, Inc. and to hold Defendants, Soros and Chatterjee, liable for its debts. Plaintiffs allege that Defendants used CS Aviation Services, Inc. as a tool to further their interests in a larger investment in a related aircraft leasing business (the "Aviation Business"), ignored its existence as a separate company and economic unit, utterly failed to abide by minimally accepted standards of corporate governance, and ultimately left it a hollow shell with only mounting liabilities.

Faced with Plaintiffs' allegations, strong evidence that CS Aviation Services, Inc. had no independent economic existence, and an opinion by this court denying summary judgment in a nearly identical case involving the same Defendants and the same misused corporate entity,[1]

---

[1] *Jet Star Enterprises Ltd. v. Soros*, No. 05 Civ. 6585, 2006 WL 2270375, at *7 (S.D.N.Y. Aug. 9, 2006).

Defendants hired Professor Guhan Subramanian to produce an expert report redefining the legal standard for piercing the corporate veil (the "Subramanian Report").[2] The central focus of the Subramanian Report is not corporate governance or the operations and management of CS Aviation Services, Inc. Instead, Subramanian improperly attempts to tell the jury what legal standard to apply when deciding whether to pierce CS Aviation Services, Inc.'s corporate veil and how that standard applies to the facts of this case. As Subramanian readily admits, he was retained so that he could "define the appropriate contours of doctrines that ignore the corporate form." Subramanian Report ¶ 7. As explained below, controlling law reserves the role of instructing the jury about the law solely for the Court, and reserves the role of applying that law to the facts for the jury.

Subramanian is a professor of law and business at Harvard University; he joined the faculty the year after graduating from law school. *Id.* ¶ 1. As a professor, Subramanian has published an impressive list of academic writings. *Id.* Appendix A. But, aside from serving as a director for a company that sells refurbished auto parts, neither Subramanian's report nor his resume disclose any real-world experience, and certainly none in the aviation field.

Subramanian's Report provides his interpretation of the role of limited liability, instructs the fact-finder about what factors he believes should be considered in a veil-piercing case, and then applies those factors to the present dispute. Subramanian begins his report by tracing the development of limited liability from Roman times to today, and concludes that "limited liability is the lynchpin of the modern capital markets." Subramanian Report ¶ 33. Because of the benefits of limited liability, Subramanian explains, "corporate law generally takes a narrow

---

[2] The Subramanian Report is attached as Exhibit 1 to the Declaration of Cory Buland. Attached as Exhibit 2 to the Affidavit of Cory Buland is a copy of the Subramanian Report with the offending paragraphs and sentences stricken.

approach to doctrines that ignore legal structures, such as . . . piercing the corporate veil." *Id.* ¶ 44.

Next, Subramanian opines that veil-piercing law, as it is currently defined by courts, is deficient: "Corporate law lacks any simple rules for when the veil should be pierced. . . . A principled approach can be achieved by focusing on . . . the reasonable expectations of creditors." *Id.* ¶¶ 47-48. As a result, Subramanian creates his own law based on his desire for a "principled approach," which leads him to conclude that:

> From a policy perspective, there is no reason to provide an equitable remedy, such as piercing, when contract can allocate the risk effectively and efficiently. . . . In my opinion, the protection of reasonable expectations of creditors captures this contour, because a creditor who has assumed the risk of non-payment could not have a reasonable expectation in the shareholder's assets.

*Id.* ¶¶ 49-50. Subramanian brands his approach "eyes wide open." It redefines veil-piercing jurisprudence to meet Subramanian's own policy judgment that "there is no reason to provide an equitable remedy, such as piercing," to "[v]oluntary creditors" who "participate in transactions with 'eyes wide open.'" *Id.* ¶ 49.

Subramanian's only support for his novel theory of what the law should be is academic literature and two citations to out-of-jurisdiction law. *Id.* nn. 53-56. It is inconsistent with the legal test articulated by this Court in its decision on Defendants' motion to dismiss and by the court in *Jet Star* **when it denied Defendants' motion for summary judgment on nearly identical facts**.

Going one step further, Subramanian then improperly applies his view of what the law should be to the facts of this case. Subramanian concludes that TradeWinds "entered into [its] leasing relationship with 'eyes wide open,'" "could have asked for a shareholder guarantee during the contract negotiations" but did not, and therefore should not be permitted to "seek

3

recourse against the shareholder of a separate corporation that provides back-office services to the asset owning enterprise." *Id.* ¶¶ 52, 62, 109.

Finally, Subramanian intends to tell the jury that finding for Plaintiffs and piercing the veil to reach someone in Chatterjee's position "would severely diminish the benefits of asset partitioning and entity shielding, would deter entrepreneurship, and would reduce overall social welfare." *Id.* ¶ 109. And he intends to tell the jury that finding for Plaintiffs and piercing the veil to reach someone in Soros's position "would wreak havoc on fundamental principles of business organization, and would deter entrepreneurial behavior in the future." *Id.* ¶ 110.

Although some in the academic community may find Subramanian's opinions interesting, they have no place in a judicial proceeding and should be excluded.

## II.    APPLICABLE LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *See In re Fosomax Prod. Liab. Litig.*, 807 F. Supp. 2d 168, 179 (S.D.N.Y. 2011). That Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"When parties seek to introduce expert testimony in accordance with Rule 702, a district court must serve as a gatekeeper." *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). "One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Rezulin Prods. Liab.*

4

*Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 702). "In other words, expert testimony must be helpful to the trier of fact in comprehending and deciding issues beyond the understanding of a layperson." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks and alterations omitted).

Importantly, "the testimony is not helpful if it 'usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *In re Fosamax Prods. Liab. Litig.*, 807 F. Supp. 2d at 179 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)) (alterations omitted). Accordingly, the use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). To permit such an opinion would "trespass[] on the province of the jury and the court" by allowing an expert to impose his own view of the law on the jury. *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993).

Likewise, an expert's testimony does not satisfy Rule 702's helpfulness prong if it simply addresses "lay matters which the jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

As the proponents of the expert testimony, Soros and Chatterjee bear the burden of establishing its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 & n.10 (1993).

## III.  SUBRAMANIAN'S LEGAL OPINIONS SHOULD BE EXCLUDED

Although expert testimony is admissible in veil-piercing cases to educate the jury about appropriate corporate governance practices and formalities, Subramanian's testimony is not

admissible because it seeks to inform the jury of his personal beliefs of what the law should be. As discussed in more detail below, Subramanian's report and anticipated testimony improperly instruct the jury about the law, including his interpretation of what factors to consider in a veil-piercing case, and the policy rationale underlying his "eyes wide open" theory.

### A. Subramanian's "Eyes Wide Open" Theory is an Impermissible Legal Opinion

The Subramanian Report unequivocally criticizes the current state of veil-piercing law and opines on what the legal test for veil piercing should be: "Corporate law lacks any simple rules for when the veil should be pierced. . . . A principled approach can be achieved by focusing on . . . the reasonable expectations of creditors." Subramanian Report ¶¶ 47-48. That "principled approach," Subramanian goes on to explain, leads him to conclude—without regard to established law—that the veil should not be pierced where parties had a contractual relationship:

> From a policy perspective, there is no reason to provide an equitable remedy, such as piercing, when contract can allocate the risk effectively and efficiently. . . . In my opinion, the protection of reasonable expectations of creditors captures this contour, because a creditor who has assumed the risk of non-payment could not have a reasonable expectation in the shareholder's assets.

*Id.* ¶¶ 49-50.

A testifying expert cannot opine about the law; that role is reserved solely for the court. *See Bilzerian*, 926 F.2d at 1294; *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (testimony should be excluded if it communicates "a legal standard—explicit or implicit—to the jury"); *Fosamax*, 807 F. Supp. 2d at 179 ("[T]he testimony is not helpful if it 'usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" (quoting *United States v. Duncan*, 42 F.3d at 101) (alterations omitted)). As the D.C. Circuit explained, "**[e]ach courtroom comes equipped with a 'legal**

6

expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. WMATA*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (emphasis added). The obvious "danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an impermissible inference in our system of law." *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977).

The controlling law that precludes experts from giving legal opinions applies with equal force to corporate governance experts who opine in cases where corporate separateness is at issue. *See Pereira v. Cogan*, 281 B.R. 194, 198 (S.D.N.Y. 2002). Accordingly, courts strike testimony by corporate governance experts that attempts to set forth the elements of the claim, including in veil-piercing cases. *See HBC Ventures, LLC v. Holt MD Consulting, Inc.*, No. 06 Civ. 190, 2012 WL 4483625 (E.D.N.C. Sept. 27, 2012) (permitting expert in veil-piercing case to opine on "corporate norms and governances and whether an entity's actions diverged from the corporate norms" but prohibiting testimony as to the governing law or ultimate issue of whether the veil should be pierced); *Sheet Metal Workers Int'l Assoc. Local Union No. 67 v. Todd-Ford Management Co.*, No. SA-03-CA-290, 2005 WL 5977617, at *2 (W.D. Tex. July 12, 2005); *see also The Pinal Creek Group v. Newmont Mining Corp.*, 252 F. Supp. 2d 1037, 1044 (D. Ariz. 2005) (precluding expert testimony on legal standard for holding parent company directly liable for subsidiary's CERCLA violations); *Safety-Kleen Corp. Rollins Shareholders Lit.*, No. 3:00-1343-17, 2004 WL 5504972, at *2 (D.S.C. Aug. 30, 2004) (permitting corporate governance expert to testify only about "issues of fact such as . . . general corporate governance structure, role of officers, directors, and audit committee members; and general examples of what the experts believe are good corporate practices in conformance with industry custom" but excluding

testimony "on the ultimate legal conclusion as to whether defendants discharged their duties . . . [or] what legal standard . . . applies").

It is "unhelpful" as a matter of law for Subramanian to provide the jury with his own theories of what the law should be. *See In re Fosamax Products Liab. Litig.*, 807 F. Supp. 2d at 179. Such testimony from Subramanian could only serve as an improper invitation for the jury to ignore controlling law and nullify the proper verdict. As a result, paragraphs 44-45, 47-50, 86 and 108 of Subramanian's report should be excluded and he should be precluded from offering similar testimony at trial.

B.    **Subramanian's Legal Opinions are Wrong**

Not only does Subramanian improperly opine about the legal standard for piercing the corporate veil, he gets it wrong. Subramanian's Report recognizes that this Court has already determined the proper legal standard for piercing the corporate veil of CS Aviation Services, Inc. Subramanian Report ¶ 46. In its decision on Defendants' motion to dismiss, which Subramanian cites, the Court wrote comprehensively about when the corporate veil should be pierced under Delaware law:

> To prevail on an alter ego veil-piercing claim under Delaware law, a plaintiff must establish (i) that the company and its controlling shareholder operated as a "single economic entity," and (ii) that an overall element of injustice or unfairness is present. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008). Whether a shareholder has dominated the corporation to such a degree that the two in fact operated as a "single economic entity" is an issue of fact. Factual questions relevant to this issue include:
>
> > whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder

> siphoned corporate funds; and whether, in general,
> the corporation simply functioned as a façade for
> the dominant shareholder.
>
> *Fletcher*, 68 F.3d at 1458; *see also NetJets*, 537 F.3d at 177. No
> single factor can justify a decision to disregard the corporate entity,
> but . . . some combination of them is required, and . . . an overall
> element of injustice or unfairness must always be present, as well."
> *NetJets*, 537 F.3d at 177 (quoting *Harco Nat'l Ins. Co. v. Green
> Farms, Inc.*, No. Civ. A. 1331, 1989 WL 110537, at *5 (Del. Ch.
> Sept. 19, 1989)) (brackets and emphasis omitted).
>
> In addition to showing that the corporation and the person whom
> the plaintiff seeks to hold liable operated as a "single entity," a
> plaintiff seeking to pierce the corporate veil on an "alter ego"
> theory must show an element of fraud or injustice. This "injustice
> must consist of more than merely the tort or breach of contract that
> is the basis of the plaintiff's lawsuit: 'The underlying cause of
> action does not supply the necessary fraud or injustice. To hold
> otherwise would render the fraud or injustice element meaningless
> . . . .'" *NetJets*, 537 F.3d at 183 (quoting *Mobil Oil Corp. v. Linear
> Films, Inc.*, 718 F.Supp. 260, 268 (D. Del. 1989)). "But nothing
> prevents a court, in determining whether there is sufficient
> evidence of fraud or unfairness, from taking into account relevant
> evidence that is also pertinent to the question of whether the two
> entities in question functioned as one." *NetJets*, 537 F.3d at 183.

*Tradewinds Airlines, Inc. v. Soros*, 2012 WL 983575, at *6 (S.D.N.Y. March 22, 2012). In the

*Jet Star* case, the court articulated the same legal standard, much of it word-for-word. *Jet Star*,

2006 WL 2270375, at *6. And in that case, the court denied summary judgment to Soros and

Chatterjee even though Jet Star was a voluntary creditor to CS Aviation Services, Inc., just as

Defendants characterize Plaintiffs in this case. *Id.* at *1.

Subramanian makes no attempt to explain how his new "eyes wide open" theory can be

reconciled with this controlling law; the single economic entity inquiry focuses entirely on the

defendant without ever inquiring whether a plaintiff had its "eyes wide open." Nothing in

Subramanian's CV would qualify him to serve as an expert on "fraud" or "injustice," and it

would be impermissible for him to draw such a conclusion for the jury. *See United Staets v.*

9

*Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988). Deciding whether there has been "fraud" or "injustice" is well within the ken of the average juror and, as such, expert testimony on that score would be inadmissible. *See United States v. Amusoi*, 21 F.3d 1252, 1263 (2d Cir. 1994). Aware that his testimony about this second element would be inadmissible, nowhere does Subramanian even suggest that his "eyes wide open" theory is an aspect of the second step of the veil-piercing inquiry.

Subramanian's "eyes wide open" theory is akin to Defendants' unsuccessful argument that Plaintiffs must show they were defrauded as an element of veil piercing. This Court has expressly rejected that contention in its decision on Defendants' motion to dismiss:

> On the other hand, however, Plaintiffs are not required to show that they were defrauded in order to state a veil-piercing claim under Delaware law. Plaintiffs need only show an element of injustice distinct from the underlying wrong which gave rise to the cause of action against C-S Aviation. According to the 2010 NC Judgment, C–S Aviation is liable for the fraudulent inducement of the aircraft leases. Plaintiffs allege as an independent wrong that Defendants siphoned funds from C–S Aviation and thus improperly left it undercapitalized. In doing so, Defendants deprived Plaintiffs of the ability to recover damages on its fraudulent inducement claim. . . . The allegations in the TradeWinds Complaint and Coreolis Complaint, if proven, would support a claim of unfairness sufficient to make out a veil-piercing claim under Delaware law.

*Id.* at *7 (citation omitted). Subramanian's "eyes wide upon" theory is merely a recycled version of a legal defense to veil piercing that this Court had already considered and rejected. Subramanian may not render opinions on what legal defenses to veil piercing are or should be under any circumstances, but particularly when Subramanian's opinions on the law are at odds with the decisions of this Court in this case.

10

## C.    Subramanian's Extensive Policy Discussion Should be Excluded

Subramanian's improper "eyes wide open" theory is premised on an extensive discussion of the policy behind limited liability that he traces back to ancient Roman times. These additional "factors" for the jury to consider, suggesting that the corporate veil should not be pierced, or should only be pierced sparingly, are impermissible because they are intended to usurp the role of the court in deciding what the law is and of the jury in applying that law. *See United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (reasoning that the "testimony regarding the legal principles underlying insider trading and their application to [a defendant's] trade ha[s] the potential to invade" both the role of the judge in deciding the law and the role of the fact-finder in applying the law to the facts). Just as Subramanian's newly crafted "eyes wide open" theory is inadmissible, so too is his academic dissertation that serves as the basis for his theory.

In some cases, the "general background" of a complex legal regime might be the proper subject of expert testimony. *See Bilzerian*, 926 F.2d at, 1295 (finding no "abuse of discretion" in admission of "unobjected" expert testimony on the "general background" of securities laws). However, Subramanian's testimony goes far beyond providing useful background information about veil-piercing that could assist the trier of fact. It is laden with value judgments about how crucial limited liability is to the economy and how infrequently corporate separateness should be disregarded, including in veil-piercing cases. *See, e.g.*, Subramanian Report ¶ 24 ("Limited liability is an important legal manifestation of corporate separateness"); *id.* ¶ 33 ("In summary, limited liability is the lynchpin of the modern capital markets."); *id.* ¶ 44 ("Because of the large benefits of asset partitioning, entity shielding, corporate groups, and SPCs to our capital markets, corporate law generally takes a narrow approach to doctrines that ignore legal structures, such as the *de facto* merger doctrine, implied assumption of liability, and piercing the corporate veil.");

11

*id.* ("In my opinion, the contours of these doctrines represent sound policy because they maximize the benefits of asset partitioning and entity shielding."); *id.* ¶ 45 ("In the narrow set of circumstances where an equitable remedy is justified, piercing is reserved for only the most egregious of circumstances.").

Controlling law already supplies well-defined factors to consider when determining whether to pierce the veil, as this Court held in its order denying Defendants' Motion to Dismiss. Subramanian should be precluded from confusing the jury by giving them additional factors to consider such as whether the "most egregious of circumstances" are present and whether piercing here would "maximize the benefits of asset partitioning and entity shielding." These amorphous "factors" are not the law, and the jury should not consider them in rendering its verdict. The inadmissible portions of these sections, along with the other inadmissible sections identified elsewhere in this memorandum of law, are identified in the attached redline for the Court's convenience.

## IV.   SUBRAMANIAN'S TESTIMONY IMPERMISSIBLY OPINES ON THE ULTIMATE LEGAL QUESTION

Just as Subramanian should be prohibited from opining on what the law requires, he should also be prohibited from testifying about how his veil-piercing test applies to the facts of this case because such testimony improperly usurps the jury's role by "tell[ing] the jury what result to reach." *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group N. V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998) (quotation marks omitted)*; accord Feinberg v. Katz*, 01 Civ. 2739, 2007 WL 4562930, at *7 (S.D.N.Y. Dec. 21, 2007) (finding that an expert's mixed statement of law and fact "manage[d] in a single sentence to both usurp the trial judge's function of instructing the jury on the law and [to] tell the jury what result to reach on the facts: a breathtaking *tour de force* of inadmissibility"); *Bd. Of Trustees of AFTRA Retirement Fund v. JP*

*Morgan Chase Bank*, 09 Civ. 686, 2011 WL 6288415, at *4 n.38 (S.D.N.Y. Dec. 15, 2011) ("Although an expert 'may opine on an issue of fact,' an expert 'may not give testimony stating ultimate legal conclusions based on those facts.'" (quoting *Bilzerian*, 926 F.2d at 1294)); *The Pinal Creek Group*, 252 F. Supp. 2d at 1043 ("In addition to prohibiting legal expert testimony which defines the governing law, courts have also prohibited legal expert opinion which applies the law to the facts.").

Throughout his proffered testimony, Subramanian improperly applies his erroneous legal standard to the facts. For example, in paragraph 109 of his report, Subramanian concludes that Plaintiffs should not be permitted to pierce the corporate veil to reach "the shareholder of a separate corporation that provides back-office services to [an] asset owning enterprise" because they are "voluntary, sophisticated, repeat-player creditor[s]." Subramanian Report ¶ 109. He continues in the same vein in paragraph 110, opining that the veil should not be pierced to reach "an individual who shares the economic value of the corporation providing management services . . . . [because it] would wreak havoc on fundamental principles of business organization, and would deter entrepreneurial behavior in the future." *Id.* ¶ 110. Subramanian does the same throughout paragraphs 51-64, for example:

- "I conclude . . . that a reasonable party entering into the Lease as the Lessee (i.e., TradeWinds) or its direct or indirect parent corporation (i.e., TradeWinds Holdings and Corelolis Holdings) should not have expected recourse against CSAS, or its shareholder, or a non-shareholder who shared the economic value of CSAS." ¶ 61.

- "TradeWinds entered the lease agreements with 'eyes wide open' as to what assets they did and did not have recourse to. If Plaintiffs wanted access to the assets of shareholders of CSAS or of the Aircraft Companies, Plaintiffs could have asked for a shareholder guarantee during the contract negotiations." ¶ 62.

All of this testimony should be excluded because Subramanian is offering his opinion about whether CS Aviation Services, Inc.'s veil should be pierced—this is impermissible. *See Muniz v. Rexnord Corp.*, No. 04 Civ. 2405, 2006 WL 5153078. at *2 (N.D Ill. Nov. 2, 2006)

13

(excluding expert testimony on whether an alter-ego relationship exists as "testimony as to the legal issue that will determine the outcome of [plaintiff's] claim"). Defendants cannot avoid this well-established legal rule by "couching [ultimate legal conclusions] in terms of industry practice" or by other disguise. *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008); *accord Bilzerian*, 926 F.2d at 1295 ("Although testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice, testimony encompassing an ultimate legal conclusion based on the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice.") (citation omitted); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 Civ. 3901, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 18, 1999) ("Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue in the case.").

The jury's role is to apply the facts of this case to the governing legal standard provided by the Court. Subramanian's testimony applying the law to the facts (and actually a different law, developed by him) is not helpful. *See Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (cautioning that the Second Circuit has "consistently" held that expert testimony cannot "substitute the expert's judgment for the jury" by "applying [the] law to the facts before it" (quotation marks omitted)). Such testimony from Subramanian could only serve to confuse the jury about what their role is and invite them to abdicate their role as fact-finders to Defendants' paid expert. As a result, paragraphs 51-64, 108-110 and a portion of paragraph 100 of Subramanian's report should be excluded and he should be precluded from offering similar testimony at trial.

## V.    SUBRAMANIAN IMPERMISSIBLY OPINES ON TRADEWINDS' STATE OF MIND

Subramanian's "eyes wide open" framework is not the law.   However, even if TradeWinds' state of mind and knowledge about CS Aviation Services, Inc. were to be considered by the fact finder, Subramanian's opinions about TradeWinds' knowledge and state of mind should be excluded for an additional, independently dispositive reason: "[o]pining about a party's state of mind . . . is impermissible." *Highland Capital Mgmt.*, 551 F. Supp. 2d at 182; *accord In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (noting that expert witnesses are not permitted to testify as to the "knowledge, motivations, intent, state of mind, or purposes" of others); *In re Rezulin Prods. Liab. Lit.*, 309 F. Supp. 2d 531, 547-48 (S.D.N.Y. 2004).   Subramanian's improper opinions "cannot be saved by couching them as 'industry custom and practice.'" *Highland Capital Mgmt.*, 551 F. Supp. 2d at 182.

Subramanian repeatedly and impermissibly hypothesizes about what TradeWinds knew or believed.  Specifically, Subramanian states:

- "TradeWinds Entered into the Lease Agreements with 'Eyes Wide Open' and No Expectation of Recourse to CSAS Shareholders";

- "The Plaintiffs therefore entered into this leasing relationship with 'eyes wide open'";

- "Moreover, given the sophisticated nature of those who controlled Plaintiffs, it is reasonable to assume that they would have understood the essentials of the ownership structure through their due diligence in connection with the acquisition in 2001";

- "I conclude from this analysis that a reasonable party entering into the Lease as the Lessee (i.e., TradeWinds) or its direct or indirect parent corporation (i.e., TradeWinds Holdings and Coreolis Holdings) should not have expected recourse against CSAS, or its shareholder, or a non-shareholder who shared the economic value of CSAS"

- "TradeWinds entered the lease agreements with 'eyes wide open' as to what assets they did and did not have recourse to"; and

- "Plaintiffs understood parent guarantees."

Subramanian Report § V and ¶¶ 52, 56, 61, 63.

15

Subramanian does not testify about what parties to a typical transaction in an industry reasonably expect. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 682 (S.D.N.Y. 2013). Rather, Subramanian's conclusions about TradeWinds' knowledge and state of mind are derived from his attempts to interpret the evidence in this case. *See, e.g.*, Subramanian Report ¶ 54 ("As sophisticated and experienced aircraft operators, Plaintiffs are expected to have read and understood the leases that TradeWinds signed."); *id.* ¶ 55 ("The lease agreements clearly identified the parties and provided insight into the corporate structure of the Aircraft Business."); *id.* ¶ 56 ("[G]iven the sophisticated nature of those who controlled Plaintiffs, it is reasonable to assume that they would have understood the essentials of the ownership structure though their due diligence in connection with the acquisition in 2001."); *id.* ("I have seen no evidence that the ownership and corporate structure of the Aircraft Business . . . were concealed from Plaintiffs."); *id.* ("The information on the corporate structure was available upon request—for example, Mr. Bhise testified that lessees would commonly ask him about the ownership of the aircraft and he would describe the investor entities."); *id.* ¶ 57 ("In my opinion, the lease agreements do not contemplate Plaintiffs' recourse to CSAS.").

Even if Subramanian were attempting to opine on industry custom and practice, he is not qualified to do so. Subramanian is a professor who graduated from law school in 1998 and immediately began teaching the following year. The only real-world experience listed on his CV is his position as a director of one non-aviation related company. Accordingly, he should be prohibited from discussing any customs or practices in the aircraft leasing business and the expectations of parties to aircraft lease agreements.

Subramanian's discussion of whether TradeWinds had its "eyes wide open" should also be excluded because even if it were the controlling test—which it is not—whether TradeWinds'

16

eyes were wide open is an issue of fact that is not "beyond the ken of the average juror." *See United States v. Amusoi*, 21 F.3d at 1263. Subramanian's "eyes wide open" theory amounts to little more than a question of fact as to whether TradeWinds had knowledge of certain aspects of CS Aviation Services, Inc. and the Aviation Business as a whole. Subramanian answers this question by reference to the documents and testimony in the record. Nothing about this issue is beyond the comprehension of the average juror; it is therefore not a proper subject for expert testimony. *See Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.").

Subramanian's testimony, when properly circumscribed, is about corporate governance standards and whether CS Aviation Services, Inc. met them. His narrative about Plaintiffs' corporate structure and settlement with Deutsche Bank are irrelevant to these opinions and should be excluded. In fact, Judge Peck already deemed Defendants' entire inquiry into this factual area irrelevant when he rejected their discovery requests concerning Plaintiffs' "corporate governance, capitalization, etc." Oct. 10, 2013 Hr'g Tr. at 9:3-15 (docket entry 171).

Given that these facts have no bearing on his permissible testimony (and many of them have been deemed irrelevant by Judge Peck), Subramanian would only be serving as a vehicle for counsel's factual narrative, which he cannot do. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.2d at 551 ("[E]xperts should not be permitted to supplant the role of counsel in making argument at trial" and "cannot merely synthesize the record evidence to argue the client's case."). The stricken portions of paragraphs 19, 38, 39, and 107 in the attached redline should be excluded on this basis.

17

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the offending portions of the Subramanian Report and preclude Defendants from offering the aforementioned testimony from Subramanian at trial.

Dated:  New York, New York
       May 2, 2014

                      SUSMAN GODFREY L.L.P.

                      William Christopher Carmody (WC8478)
                      Shawn J. Rabin (SR6546)
                      Cory Buland (CB6420)
                      Megan O'Hara Easley (ME7715)
                      560 Lexington Avenue, 15th Floor
                      New York, NY  10022
                      Phone:  (212) 336-8330
                      Fax:  (212) 336-8340
                      bcarmody@susmangodfrey.com
                      srabin@susmangodfrey.com
                      cbuland@susmangodfrey.com
                      measley@susmangodfrey.com

                      Matthew R. Berry (PHV)
                      1201 Third Avenue, Ste. 3800
                      Seattle, WA 98101
                      Phone: (206) 516-3880
                      Fax: (206) 516-3883
                      mberry@susmangodfrey.com

                      *Attorneys for Plaintiff TradeWinds Airlines, Inc.*

RESSLER & RESSLER

*Ellen Werther / CSB*

Ellen R. Werther (EW8545)
Bruce J. Ressler (BR6329)
48 Wall Street
New York, NY 10005
Phone: (212) 695-6446
Fax: (212) 268-0287
ewerther@resslerlaw.com
bressler@resslerlaw.com

*Attorneys for Plaintiffs Coreolis Holdings Inc. &*
*TradeWinds Holdings Inc.*

19

## Certificate of Service

I certify that on May 2, 2014, this document was properly served on the following counsel of record via e-mail:

*Attorneys for Defendant George Soros:*

>Raymond Fitzgerald
>David J. McCarthy
>BUTLER, FITZGERALD, FIVESON & McCARTHY
>Nine East 45th Street, Ninth Floor
>New York, NY 10017
>dmccarthy@bffmlaw.com
>rfitzgerald@bffmlaw.com

>Martin B. Klotz
>WILLKIE FARR & GALLAGHER LLP
>787 Seventh Avenue
>New York, NY 10019
>mklotz@willkie.com

*Attorneys for Defendant Purnendu Chatterjee:*

>Dustin F. Hecker
>POSTERNAK BLANKSTEIN & LUND LLP
>The Prudential Tower
>800 Boltston Street
>Boston, MA 02199
>dhecker@pbl.com

>Kristin T. Roy
>MORRISON COHEN SINGER & WEINSTEIN, LLP
>909 Third Avenue, 27th Floor
>New York, NY 10022
>kroy@morrisoncohen.com

Cory Buland