**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

TRADEWINDS AIRLINES INC.,

                Plaintiffs,

     - against -

GEORGE SOROS and PURNENDU CHATTERJEE,

                Defendants.

------------------------------------------------------------- x

COREOLIS HOLDINGS, INC. and TRADEWINDS
HOLDINGS, INC.,

                Plaintiffs,

     - against -

GEORGE SOROS and PURNENDU CHATTERJEE,

                Defendants.

-------------------------------------------------------------x

No. 08 Civ. 5901 (JFK)

No. 10 Civ. 8175 (JFK)

**ECF Case**

**Oral Argument Requested**

---

### DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO STRIKE PORTIONS OF GUHAN SUBRAMANIAN'S EXPERT REPORT AND TO EXCLUDE SUCH TESTIMONY AT TRIAL

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Alison R. Levine
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

BUTLER, FITZGERALD, FIVESON &
McCARTHY
A Professional Corporation
Raymond Fitzgerald
David J. McCarthy
9 East 45th Street
New York, New York 10017
(212) 615-2200

*Attorneys for Defendant George Soros*

POSTERNAK BLANKSTEIN & LUND LLP
Dustin F. Hecker
James Kruzer
The Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 973-6100

MORRISON COHEN LLP
Kristin T. Roy
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Purnendu Chatterjee*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND .....................................................................................................2

ARGUMENT .................................................................................................................................3

    I.     LEGAL STANDARD.........................................................................................3

    II.    PLAINTIFFS' ATTEMPT TO PREVENT PROFESSOR
           SUBRAMANIAN FROM EXPLAINING THE HISTORY, CONCEPTS,
           AND APPLICATION OF LIMITED CORPORATE LIABILITY
           SHOULD BE REJECTED....................................................................................6

    III.   PROFESSOR SUBRAMANIAN'S REPORT DOES NOT
           IMPERMISSIBLY OPINE ON THE ULTIMATE LEGAL QUESTION..............9

    IV.   PROFESSOR SUBRAMANIAN DOES NOT IMPROPERLY OPINE ON
           TRADEWINDS' STATE OF MIND....................................................................11

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Cary Oil Co. v. MG Ref. & Mktg., Inc.*,
 No. 99 Civ. 1725 (VM), 2003 WL 1878246 (S.D.N.Y. April 11, 2003)...............5, 6, 7, 12

*Fiataruolo v. United States*,
 8 F.3d 930 (2d Cir. 1993) ...............................................................................5, 10

*In re Fosamax Prods. Liab. Litig.*,
 645 F. Supp. 2d 164 (S.D.N.Y. 2009)...............................................................13

*Gill v. Arab Bank, PLC*,
 893 F. Supp. 2d 523 (E.D.N.Y. 2012) ...............................................................12

*HBC Ventures, LLC v. Holt MD Consulting, Inc.*,
 No. 06 Civ. 190, 2012 WL 4483625 (E.D.N.C. Sept. 27, 2012) ....................................6, 8

*Highland Capital Mgmt., L.P. v. Schneider*,
 551 F. Supp. 2d 173 (S.D.N.Y. 2008)...............................................................13

*LaSalle Nat'l Bank Ass'n v. CIBC Inc.*,
 No. 08 Civ. 8426 (WHP)(HBP), 2012 WL 466875 (S.D.N.Y. Feb. 14, 2012) .......4, 10, 11

*Marx & Co. v. Diners' Club, Inc.*,
 550 F.2d 505 (2d Cir. 1977)............................................................................4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
 691 F. Supp. 2d 448 (S.D.N.Y. 2010)...............................................................11

*Pereira v. Cogan*,
 281 B.R. 194 (S.D.N.Y. 2002)........................................................................10

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
 355 F. App'x 547 (2d Cir. 2009) .....................................................................10

*U.S. Secs. & Exch. Comm'n v. Snyder*,
 Civil Action No. H-03-04658, 2006 WL 1806164 (S.D. Tex. June 29, 2006)................12

*Secs. & Exch. Comm'n v. U.S. Envtl., Inc.*,
 No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002)...........4, 10

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991)..........................................................................7

*United States v. Duncan*,
 42 F.3d 97 (2d Cir. 1997) ............................................................................4, 7

ii

*Valentin v. New York City*,
    No. 94 CV 3911(CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) ............................12

**Rules**

Fed. R. Evid. 702 ...........................................................................................................................4

Fed. R. Evid. 704 ...........................................................................................................................4

Defendants George Soros ("Mr. Soros") and Purnendu Chatterjee ("Dr. Chatterjee") (collectively, "Defendants") respectfully submit this memorandum in opposition to Plaintiffs' *Daubert* Motion to Strike Portions of Guhan Subramanian's Expert Report and to Exclude Such Testimony at Trial (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs seek to hold Mr. Soros and Dr. Chatterjee personally liable under an alter ego veil-piercing claim for a default judgment Plaintiffs obtained in North Carolina against C-S Aviation Services, Inc. ("C-S Aviation"), which was the management company for an aircraft leasing business that ceased operations in July 2003. This Court is already familiar with the general structure of the Defendants' aircraft leasing business, which included the creation of holding companies and special purpose vehicles to own the aircraft. While the structure of the aircraft business was standard in the industry, the role and relationships of the numerous entities involved will be complicated and challenging for the jury to be able to fully understand. Because this case involves complicated and abstract topics, Defendants retained Professor Guhan Subramanian ("Professor Subramanian") as an expert to assist the trier of fact in understanding the complex corporate structure of the aircraft leasing business; the relationship among the parties, the aircraft owning companies, and C-S Aviation; corporate governance principles and practices; and the general concepts of corporate limited liability and veil piercing.

Plaintiffs seek to preclude Professor Subramanian from testifying with respect only to certain of the opinions expressed in his expert report.[1] Plaintiffs' motion should be denied because the opinions expressed by Professor Subramanian properly provide an explanation of

---

[1]  A copy of the Expert Report of Professor Guhan Subramanian (the "Subramanian Report"), dated February 28, 2014, is attached to the Declaration of Cory Buland, dated May 2, 2014, as Exhibits 1 and 2. Exhibit 2 shows the portions of the Subramanian Report that are the subject of this motion.

general corporate governance principles and the concept of veil piercing as applied to the facts of this case, will assist the trier of fact to understand the evidence, and meet the criteria for the admissibility of expert opinions under *Daubert* and Federal Rule of Evidence 702.

## RELEVANT BACKGROUND

Professor Subramanian, an accomplished scholar and expert on corporations, corporate governance principles and practices, and corporate transactions, is eminently qualified to offer expert testimony on each of those topics. Indeed, Plaintiffs do not challenge his qualifications. Professor Subramanian is the H. Douglas Weaver Professor of Business Law at the Harvard Business School (HBS) and the Joseph Flom Professor of Law and Business at the Harvard Law School (HLS), and has taught at HBS and/or HLS since 1999. (Subramanian Report ¶ 1; *see id.* Appendix A (Guhan Subramanian Curriculum Vitae).) Professor Subramanian is a co-author of *Commentaries and Cases on the Law of Business Organizations* (4th ed. 2012), a leading and widely used textbook on corporate law. (Subramanian Report ¶ 2.) Professor Subramanian teaches courses at HLS and HBS on complex corporate transactions and has written a practitioner-oriented book on managing complex corporate transactions. (*Id.* ¶¶ 2-3.) Professor Subramanian also conducts research and has published extensively on the topics of business organizations, corporate governance, corporate law, and negotiations. (*Id.* ¶ 2; *see also id.* Appendix A.) Plaintiffs acknowledge that Professor Subramanian "has published an impressive list of academic writings." (Motion at 2.)

Professor Subramanian serves on the Board of Directors, the Audit Committee, and the Nominating/Governance Committee of LKQ Corporation ("LKQ"), a publicly traded Delaware

corporation.[2] (Subramanian Report ¶ 4.) LKQ operates through over 100 subsidiaries and joint ventures and has approximately 20,000 employees. (*Id.*) LKQ has approximately $5 billion in annual revenues and $8 billion in market capitalization. (*Id.*) Professor Subramanian also advises corporate boards on a regular basis regarding issues of corporate governance and corporate structure, including considerations that implicate veil-piercing doctrine.

In addition to this ongoing real-world experience, Professor Subramanian has previously provided expert testimony in cases that raise similar policy considerations to the present matter. In 2010, for example, Professor Subramanian provided an expert opinion on whether the limited liability shield should protect Dow Chemical Company from liabilities at its subsidiary Union Carbide Corporation.[3] Similarly, in 2012, Professor Subramanian provided an expert opinion and deposition testimony on whether the limited liability shield should protect Bank of America from liabilities incurred at its wholly owned subsidiary CountryWide.[4] In both of those cases, Professor Subramanian explained why, from a real-world perspective, the policy reasons underlying corporate limited liability are fundamentally important to innumerable, ordinary business transactions.

## ARGUMENT

### I. LEGAL STANDARD

The purpose of expert testimony is to assist the trier of fact, and Federal Rule of Evidence 702 ("Rule 702") is intended to "ensure that the expert testimony is helpful to the jury in

---

[2]  Although Plaintiffs contend that Professor Subramanian's report and résumé do not "disclose any real-world experience" (Motion at 2), they declined to depose him. Had they done so, they could have probed him about this or any other experience.

[3]  Affidavit of Professor Guhan Subramanian on Behalf of Respondent No. 4, the Dow Chemical Company, USA, in the High Court of Madhya Pradesh Principal Seat at Jabalpur, WP No. 2802 of 2004.

[4]  Expert Report of Professor Guhan Subramanian, dated June 25, 2012, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (N.Y. Sup. Ct.), at 33-34.

comprehending and deciding issues beyond the understanding of a layperson." *LaSalle Nat'l Bank Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 (WHP)(HBP), 2012 WL 466875, at *5 (S.D.N.Y. Feb. 14, 2012) (citation omitted). Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert witnesses are "uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1997). Expert testimony that describes relevant background information is frequently admissible if it will be helpful to the jury. *See LaSalle*, 2012 WL 466875, at *5 (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977)). Accordingly, rejecting expert testimony is the "exception rather than the rule." *LaSalle*, 2012 WL 466875, at *4 (quoting Advisory Committee Notes to the 2000 Amendment to Rule 702).

Federal Rule of Evidence 704 ("Rule 704") specifically provides that an expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Although an expert may not give testimony that constitutes "ultimate legal conclusions," he or she may "make factual conclusions that embrace an ultimate issue to be decided by the fact-finder." *Secs. & Exch. Comm'n v. U.S. Envtl., Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832, at *4 (S.D.N.Y. Oct. 16, 2002). Rule 704 allows expert opinions to embrace the ultimate issue to be decided and "provide[s] trial courts with more latitude to allow experts to testify about issues that would help the jury understand concepts it need[s] to know to render a

verdict despite the fact that the opinions may encroach on matters of law." *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246, at \*5 (S.D.N.Y. April 11, 2003). Thus, experts may testify on mixed questions of fact and law. *See Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993).

Accordingly, expert testimony is allowed to aid a jury in understanding complex and unfamiliar corporate concepts in veil-piercing actions. In *Cary Oil Co.*, for example, the plaintiff sought to offer the testimony of Professor Kahan, a professor of law at New York University. *Cary Oil Co.*, 2003 WL 1878246, at \*5. The defendant there argued (as Plaintiffs argue here) that Professor Kahan's "testimony, as foreshadowed by his expert report, will impermissibly state . . . legal standards" and "interfere with the Court in instructing the jury on the law." *Id.* The district court rejected those arguments in a ruling directly applicable to this case, explaining as follows:

> Plaintiffs want to offer Kahan's testimony to explain general corporate governance principles and the concept of veil-piercing to the jury . . . . [T]he Court considers such background information crucial if the laymen jury is to understand fully the complex issues in this matter. Kahan's analysis of the evidence in this case – and his identification of how such evidence may . . . justify veil-piercing – does not cross the boundaries into an opinion that would tell the jury what decision to reach . . . .

*Id.* So long as the expert "couches his opinion specifically 'on the evidence that [he] looked at and the work that [he] did,' the Court is satisfied that his opinions will fall within the accepted guidelines for admissible testimony." *Id.* at \*6 (quoting *Fiataruolo*, 8 F.3d at 942).

Finally, it is important to note the critical difference between an expert <u>report</u> and expert <u>testimony</u>. The expert report of Professor Subramanian is not being offered as evidence to be admitted at the trial. The expert report is a means of disclosing the expert's opinions and analysis. As courts have recognized, expert reports can include "discussion of relevant . . . cases

in order to provide the background from which [the expert's] opinions and analysis arise." *HBC Ventures, LLC v. Holt MD Consulting, Inc.*, No. 06 Civ. 190, 2012 WL 4483625, at *9 (E.D.N.C. Sept. 27, 2012). While such discussion of the law is permissible in an expert report, this does not mean that the expert will testify as to pure issues of law as part of the expert's trial testimony.

## II. PLAINTIFFS' ATTEMPT TO PREVENT PROFESSOR SUBRAMANIAN FROM EXPLAINING THE HISTORY, CONCEPTS, AND APPLICATION OF LIMITED CORPORATE LIABILITY SHOULD BE REJECTED

Plaintiffs' motion primarily seeks to preclude Professor Subramanian from discussing the history and policies underlying the principles of limited corporate liability and explaining to the jury how those principles operate in practice, particularly with respect to how complex business investments are structured. (*See* Motion at 5-12.) Professor Subramanian's proposed expert testimony on these topics is of critical importance to a jury's ability to properly understand the reasons for and particular structure of the aircraft leasing business that is at the center of this case.

Plaintiffs assert that Professor Subramanian should be precluded from testifying about "the policy behind limited liability that he traces back to ancient Roman times." (Motion at 11.) Plaintiffs further contend that Professor Subramanian "opines on what the legal test for veil piercing should be," and seeks "to inform the jury of his personal beliefs as to what the law should be." (Motion at 6.) These arguments are based on a mischaracterization of Professor Subramanian's opinions and the scope of the testimony he would present at trial.

First, Plaintiffs do not dispute that courts have admitted expert testimony in veil-piercing cases "to educate the jury about appropriate corporate governance practices." (Motion at 5; *see also, e.g., Cary Oil Co.*, 2003 WL 1878246, at *5-6.) This type of expert testimony is allowed because "such background information [is] crucial if the laymen jury is to understand fully the

complex issues" at stake. *Cary Oil Co.*, 2003 WL 1878246, at *5. As the Second Circuit has

held in an analogous context, "[p]articularly in complex cases involving the securities industry,

expert testimony may help a jury understand unfamiliar terms and concepts." *United States v.*

*Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (noting that "much of Professor Coffee's

testimony was general background information on federal securities regulation and the filing

requirement of Schedule 13D").

Second, Professor Subramanian's discussion of the history and policies underlying

corporate limited liability will assist the jury's understanding of the legitimate and well

established business reasons for the manner in which the aircraft leasing business was structured

and operated. (*See* Subramanian Report ¶¶ 22, 24-34, 37-39, 98.) Professor Subramanian's

report serves to "provid[e] the groundwork in the form of an opinion to enable the jury to make

its own informed determination." *Duncan*, 42 F.3d at 101. Professor Subramanian should be

allowed to discuss the origin and development of the principle of corporate limited liability and

the role it plays in the structuring of business investments, such as the structure used here for the

aircraft leasing business.

Third, Plaintiffs take specific exception to Professor Subramanian's use of the concept of

"eyes wide open" to help explain how the principle of limited liability is consistent with the

protection of the reasonable expectations of creditors. (*See* Motion at 7-10.) Defendants do not

intend to ask Professor Subramanian to testify as to the governing law. Indeed, Professor

Subramanian in his report quotes this Court in setting forth the law on piercing the corporate

veil. (*See* Subramanian Report ¶ 46.) It will be for this Court to instruct the jury on the law, and

the expert report of Professor Subramanian is not being offered as evidence to be admitted at the

trial. An expert report is a means of disclosing the expert's opinions and analysis. As explained

above, expert reports can include "discussion of relevant . . . cases in order to provide the background from which his opinions and analysis arise." *HBC Ventures*, 2012 WL 4483625, at *9.

Moreover, Professor Subramanian does not suggest in his expert report that "eyes wide open" is a substitute for the prevailing law on piercing the corporate veil. (*See* Motion at 8.) To the contrary, Professor Subramanian relies upon this Court's statement of the law about when the corporate veil should be pierced. (*See* Subramanian Report ¶ 46.) What Professor Subramanian does do is to use the concept of "eyes wide open" to help explain how the principle of limited corporate liability is consistent with the protection of the reasonable expectations of creditors. (*See id.* ¶¶ 47-50.) Professor Subramanian's use of this phrase is his way of expressing and explaining part of the rationale underlying the law of veil piercing. This is intended to help the jury to better understand and apply the principle of limited corporate liability.

Nor does Professor Subramanian get "it wrong." (Motion at 8.) As he discusses in his report, "eyes wide open" is a familiar concept embraced by numerous legal scholars, sometimes explained using the concept of assumption of the risk. (*See* Subramanian Report ¶ 43 & n.53.) Moreover, his brief discussion of certain cases and statutes that have adopted the "eyes wide open" concept is part of the background of his report (*see id.* ¶ 50); it is not intended to be part of his proposed testimony. *See HBC Ventures*, 2012 WL 4483625, at *9 (noting that expert reports can include "discussion of relevant . . . cases in order to provide the background from which his opinions and analysis arise").

We agree with Plaintiffs that it would be improper for an expert to offer "legal conclusions." (*See* Motion at 6-7, 12-14.) But that is <u>not</u> what Professor Subramanian has done here. Professor Subramanian's testimony will not infringe on the court's role to instruct on the

law. To the contrary, Professor Subramanian recites for purposes of his report this Court's statement of the law of veil piercing. (*See* Subramanian Report ¶ 46 ("The factors to be considered under Delaware law in order to determine whether the corporate veil should be pierced have been summarized by the Court in this case as follows . . . .").)

This Court, not Professor Subramanian, will instruct the jury as to the law. What Professor Subramanian explains is the origin, background, and context for the concept of limited liability. Plaintiffs, for example, do not seek to strike the portions of his expert report that recite that a fundamental principle of business organizations is the protection of "the owners of an entity from liability for the entity's activities" which "is known as 'asset partitioning' or 'entity shielding.'" (*See id.* ¶¶ 22-23.) Having accepted that it is proper for Professor Subramanian to discuss these fundamental principles of business organizations, there is no basis for Plaintiffs to seek to prevent him from explaining in Section III.B of his report the origin and importance of limited liability to investors and creditors alike.[5] (*See id.* ¶¶ 24-33.) Accordingly, Plaintiffs' motion to strike portions of paragraphs 7, 22, 34, 37, 86, and 96, and paragraphs 24-33, 44-45, 47-50, and 108 of the Subramanian Report should be denied.

## III. PROFESSOR SUBRAMANIAN'S REPORT DOES NOT IMPERMISSIBLY OPINE ON THE ULTIMATE LEGAL QUESTION

Plaintiffs also argue that certain of Professor Subramanian's opinions should not be allowed because he improperly opines on the ultimate legal question and doing so "improperly

---

[5]     Plaintiffs pick and choose where they find Professor Subramanian's testimony to be "unhelpful." Whereas Plaintiffs are content to allow Professor Subramanian to discuss the structure of private equity firm Blackstone LP and how it demonstrates the widespread use of corporate groups and asset partitioning, they seek to exclude the same discussion of Coreolis's corporate structure. (Motion at 17; *see also* Buland Decl. Ex. 2 at 12-13.) Plaintiffs attempt to support their argument with the inaccurate statement that Judge Peck precluded "Defendants' entire inquiry into this factual area." (Motion at 17; *see* Oct. 10, 2013 Hr'g Tr. at 9:3-15.) Plaintiffs completely mischaracterize Judge Peck's ruling. In any event, Judge Peck's ruling on any discovery dispute is not relevant to whether Professor Subramanian may address Plaintiffs' corporate structure based on evidence in the record. Accordingly, Plaintiffs' motion to strike paragraphs 38 and 39 of the Subramanian Report should be denied.

usurps the jury's role by 'tell[ing] the jury what result to reach.'" (Motion at 12-14.) This is both a mischaracterization of what Professor Subramanian actually says and an incorrect statement of the law.

It is well established that expert opinions may address issues that are mixed questions of law and fact, even if such discussion relates to an ultimate issue that is to be decided by the trier of fact. *See Pereira v. Cogan*, 281 B.R. 194, 198 (S.D.N.Y. 2002). As the Second Circuit has held:

> The Federal Rules of Evidence allow the trial court to admit expert testimony when it thinks that testimony will assist the triers of fact in understanding the case. *See* Fed. R. Evid. 702. Experts may testify on questions of fact as well as mixed questions of fact and law. This sort of testimony is not objectionable merely 'because it embraces an ultimate issue to be decided by the trier of fact.' Fed. R. Evid. 704.

*Fiataruolo*, 8 F.3d at 941 (permitting testimony that included legal conclusions accompanied by detailed factual background and explanation that provided the jury with helpful information beyond a statement of how its verdict should read).[6]

In cases like this one that involve a "complex legal concept, such as veil-piercing," it is proper for an expert to "analyze the evidence and identify [what] such evidence may indicate" about the practices of the corporate entities in question. *LaSalle*, 2012 WL 466875, at *7; *see also U.S. Envtl., Inc.*, 2002 WL 31323832, at *4 (permitting expert report and testimony where statements were "more similar to factual conclusions that embrace an ultimate issue than an ultimate legal conclusion" because the statements were based on facts analyzed by the expert and described how the expert arrived at each conclusion).

---

[6] Another factor that the *Fiataruolo* court considered in permitting the expert testimony was that the trial court had instructed the jury that the expert's opinion was not binding. *Fiataruolo*, 8 F.3d at 942; *see also Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 F. App'x 547, 551 (2d Cir. 2009). Here, if the need arises, a similar instruction can be given to the jury.

This is exactly what Professor Subramanian does in Section V of his expert report. He provides an analysis of the evidence, including the leases signed by TradeWinds, and identifies what such evidence may indicate. (*See* Subramanian Report ¶¶ 54-61.) He also explains the concept of corporate guarantees and discusses what the failure of Plaintiffs to seek any such guarantees from Mr. Soros or Dr. Chatterjee may indicate in the context of this case. (*See id.* ¶¶ 62-64.) Accordingly, paragraphs 51-64, a portion of paragraph 100, and paragraphs 108-110 of the Subramanian Report should not be stricken.

## IV. PROFESSOR SUBRAMANIAN DOES NOT IMPROPERLY OPINE ON TRADEWINDS' STATE OF MIND

Plaintiffs next argue that Professor Subramanian impermissibly opines about "TradeWinds' knowledge and state of mind." (Motion at 15.) This argument too falls flat.

In his report, Professor Subramanian discusses what would be reasonable for a party like TradeWinds – a sophisticated, voluntary, and repeat-contracting party – to be aware of and to understand in entering into the aircraft leases. (*See* Subramanian Report ¶¶ 51-64.) His discussion was based on his review of documents and other evidence in the record, including the lease agreements entered into with the aircraft-owning entities between 1999 and 2002, as well as deposition testimony from Plaintiffs' witnesses. (*See id.* Appendix B.) It is proper for an expert to testify as to "what would have been customary for [a party] to expect or assume, [but] not what [the party] actually did expect or assume." *LaSalle*, 2012 WL 466875, at *7-8 (quotation marks omitted) (alterations in original) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 467 (S.D.N.Y. 2010) (admitting

expert testimony "opining on what investors would customarily assume . . . so long as [the expert] refrain[ed] from opining on the actual state of mind")).[7]

Courts have also allowed expert testimony as to what a party "was aware of and could be expected to believe during the relevant time period." *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 539 (E.D.N.Y. 2012) (admitting expert testimony on foreign banking laws and practices "to assist the jury in determining the Bank's state of mind at the time"); *see also, e.g., U.S. Secs. & Exch. Comm'n v. Snyder,* Civil Action No. H-03-04658, 2006 WL 1806164, at *3, *7 (S.D. Tex. June 29, 2006) (permitting the Government to offer expert testimony from a certified accountant and fraud examiner that—based on "specific information that Defendant had"—it would have been obvious to the defendant that his filings with the SEC were materially misleading).

This Court should allow Professor Subramanian to testify that Plaintiffs entered into the lease agreements with "eyes wide open" as to what recourse was available to them under the leases because it goes directly to and will aid the jury in assessing Plaintiffs' reasonable expectations at the time they entered into the leases.

The cases Plaintiffs rely on to support their assertion that state of mind is not a proper topic for expert testimony are clearly distinguishable from the opinions that Professor Subramanian offers. Professor Subramanian's statements are about what would have been reasonable and customary for a party in TradeWinds' position to expect. (*See* Subramanian Report ¶¶ 52, 61.) Professor Subramanian's opinions are unlike those of experts who explicitly opined on what parties believed or experts who offered "conjecture" as to a party's state of mind.

---

[7] It is irrelevant that Professor Subramanian has not specifically worked in the aircraft leasing business. (Motion at 16.) He is more than qualified to testify as to corporate governance principles and the reasonable expectations of parties entering into contracts with limited liability corporations. *See Cary Oil Co.*, 2003 WL 1878246, at *2 (citing *Valentin v. New York City*, No. 94 CV 3911(CLP), 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997)) (noting that a lack of practical experience does not necessarily preclude an expert from testifying and that a "formal education in a particular field is sufficient to qualify a witness as an expert").

*See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert testimony where expert's report was "replete with . . . conjecture" as to certain parties' state of mind); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (excluding testimony where expert's report made statements about what an individual actually believed). Professor Subramanian's statements are conclusions based on his analysis of facts specific to the case. They do not purport to tell the jury what TradeWinds was thinking, only what it would have been reasonable for TradeWinds to expect. This is a proper area for expert testimony.

Accordingly, Plaintiffs' motion to strike paragraphs 51-64 and portions of paragraphs 19 and 107 of the Subramanian Report should be denied.

## CONCLUSION

For the foregoing reasons, Defendants George Soros and Purnendu Chatterjee respectfully request that the Court deny Plaintiffs' motion to strike the expert report of Professor Subramanian and exclude his testimony at trial.

Dated: New York, New York
      May 30, 2014

POSTERNAK BLANKSTEIN & LUND LLP

By: _____
          Dustin F. Hecker

James Kruzer
The Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 973-6100

MORRISON COHEN LLP
Kristin T. Roy
900 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Purnendu Chatterjee*

WILLKIE FARR & GALLAGHER LLP

By: _____
          Martin Klotz
Alison R. Levine
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

BUTLER, FITZGERALD, FIVESON & McCARTHY
A Professional Corporation
Raymond Fitzgerald
David J. McCarthy
9 East 45th Street
New York, New York 10017
(212) 615-2200

*Attorneys for Defendant George Soros*

## Certificate of Service

I certify that on May 30, 2014, Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' *Daubert* Motion to Strike Portions of Guhan Subramanian's Expert Report and to Exclude Such Testimony at Trial was served on the following counsel of record, with their consent, via email:

*Attorneys for Plaintiff TradeWinds Airlines, Inc.:*

William Christopher Carmody
Shawn J. Rabin
Cory Buland
Megan O'Hara Easley
Susman Godfrey L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
cbuland@susmangodfrey.com
measley@susmangodfrey.com

Matthew R. Berry
Susman Godfrey L.L.P.
1201 Third Avenue, Ste. 3800
Seattle, WA 98101
mberry@susmangodfrey.com

*Attorneys for Plaintiffs Coreolis Holdings Inc. & TradeWinds Holdings Inc.:*

Ellen R. Werther
Bruce J. Ressler
Ressler & Ressler
48 Wall Street
New York, New York 10005
ewerther@resslerlaw.com
bressler@resslerlaw.com

Le-Anh Bui

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
TRADEWINDS AIRLINES INC.,

                Plaintiffs,    :

      - against -    :

GEORGE SOROS and PURNENDU CHATTERJEE, :

                Defendants.    :

------------------------------------------------------------------x
COREOLIS HOLDINGS, INC. and TRADEWINDS
HOLDINGS, INC.,

                Plaintiffs,    :

      - against -    :

GEORGE SOROS and PURNENDU CHATTERJEE, :

                Defendants.    :

------------------------------------------------------------------x

No. 08 Civ. 5901 (JFK)

No. 10 Civ. 8175 (JFK)

**ECF Case**

**Oral Argument Requested**

---

### DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO STRIKE PORTIONS OF GUHAN SUBRAMANIAN'S EXPERT REPORT AND TO EXCLUDE SUCH TESTIMONY AT TRIAL

<table>
<tr><td>

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Alison R. Levine
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

</td><td>

POSTERNAK BLANKSTEIN & LUND LLP
Dustin F. Hecker
James Kruzer
The Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 973-6100

</td></tr>
<tr><td>

BUTLER, FITZGERALD, FIVESON &
McCARTHY
A Professional Corporation
Raymond Fitzgerald
David J. McCarthy
9 East 45th Street
New York, New York 10017
(212) 615-2200

</td><td>

MORRISON COHEN LLP
Kristin T. Roy
909 Third Avenue
New York, New York 10022
(212) 735-8600

</td></tr>
<tr><td>

*Attorneys for Defendant George Soros*

</td><td>

*Attorneys for Defendant Purnendu Chatterjee*

</td></tr>
</table>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT BACKGROUND ..................................................................................2

ARGUMENT ............................................................................................................3

    I.      LEGAL STANDARD........................................................................3

    II.     PLAINTIFFS' ATTEMPT TO PREVENT PROFESSOR
           SUBRAMANIAN FROM EXPLAINING THE HISTORY, CONCEPTS,
           AND APPLICATION OF LIMITED CORPORATE LIABILITY
           SHOULD BE REJECTED.....................................................................6

    III.    PROFESSOR SUBRAMANIAN'S REPORT DOES NOT
           IMPERMISSIBLY OPINE ON THE ULTIMATE LEGAL QUESTION..............9

    IV.    PROFESSOR SUBRAMANIAN DOES NOT IMPROPERLY OPINE ON
           TRADEWINDS' STATE OF MIND..................................................11

CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Cary Oil Co. v. MG Ref. & Mktg., Inc.,*
    No. 99 Civ. 1725 (VM), 2003 WL 1878246 (S.D.N.Y. April 11, 2003)...............5, 6, 7, 12

*Fiataruolo v. United States,*
    8 F.3d 930 (2d Cir. 1993) ...........................................................................................5, 10

*In re Fosamax Prods. Liab. Litig.,*
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)...................................................................13

*Gill v. Arab Bank, PLC,*
    893 F. Supp. 2d 523 (E.D.N.Y. 2012) ..................................................................12

*HBC Ventures, LLC v. Holt MD Consulting, Inc.,*
    No. 06 Civ. 190, 2012 WL 4483625 (E.D.N.C. Sept. 27, 2012) ....................6, 8

*Highland Capital Mgmt., L.P. v. Schneider,*
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)...................................................................13

*LaSalle Nat'l Bank Ass'n v. CIBC Inc.,*
    No. 08 Civ. 8426 (WHP)(HBP), 2012 WL 466875 (S.D.N.Y. Feb. 14, 2012) .......4, 10, 11

*Marx & Co. v. Diners' Club, Inc.,*
    550 F.2d 505 (2d Cir. 1977)...................................................................................4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,*
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)...................................................................11

*Pereira v. Cogan,*
    281 B.R. 194 (S.D.N.Y. 2002)...............................................................................10

*Rochester Gas & Elec. Corp. v. GPU, Inc.,*
    355 F. App'x 547 (2d Cir. 2009) ...........................................................................10

*U.S. Secs. & Exch. Comm'n v. Snyder,*
    Civil Action No. H-03-04658, 2006 WL 1806164 (S.D. Tex. June 29, 2006).................12

*Secs. & Exch. Comm'n v. U.S. Envtl., Inc.,*
    No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002)............4, 10

*United States v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991).................................................................................7

*United States v. Duncan,*
    42 F.3d 97 (2d Cir. 1997) ...................................................................................4, 7

*Valentin v. New York City,*
     No. 94 CV 3911(CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997)............................12

**Rules**

Fed. R. Evid. 702 ...................................................................................................................4

Fed. R. Evid. 704 ...................................................................................................................4

Defendants George Soros ("Mr. Soros") and Purnendu Chatterjee ("Dr. Chatterjee") (collectively, "Defendants") respectfully submit this memorandum in opposition to Plaintiffs' *Daubert* Motion to Strike Portions of Guhan Subramanian's Expert Report and to Exclude Such Testimony at Trial (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs seek to hold Mr. Soros and Dr. Chatterjee personally liable under an alter ego veil-piercing claim for a default judgment Plaintiffs obtained in North Carolina against C-S Aviation Services, Inc. ("C-S Aviation"), which was the management company for an aircraft leasing business that ceased operations in July 2003. This Court is already familiar with the general structure of the Defendants' aircraft leasing business, which included the creation of holding companies and special purpose vehicles to own the aircraft. While the structure of the aircraft business was standard in the industry, the role and relationships of the numerous entities involved will be complicated and challenging for the jury to be able to fully understand. Because this case involves complicated and abstract topics, Defendants retained Professor Guhan Subramanian ("Professor Subramanian") as an expert to assist the trier of fact in understanding the complex corporate structure of the aircraft leasing business; the relationship among the parties, the aircraft owning companies, and C-S Aviation; corporate governance principles and practices; and the general concepts of corporate limited liability and veil piercing.

Plaintiffs seek to preclude Professor Subramanian from testifying with respect only to certain of the opinions expressed in his expert report.[1] Plaintiffs' motion should be denied because the opinions expressed by Professor Subramanian properly provide an explanation of

---

[1] A copy of the Expert Report of Professor Guhan Subramanian (the "Subramanian Report"), dated February 28, 2014, is attached to the Declaration of Cory Buland, dated May 2, 2014, as Exhibits 1 and 2. Exhibit 2 shows the portions of the Subramanian Report that are the subject of this motion.

general corporate governance principles and the concept of veil piercing as applied to the facts of this case, will assist the trier of fact to understand the evidence, and meet the criteria for the admissibility of expert opinions under *Daubert* and Federal Rule of Evidence 702.

## RELEVANT BACKGROUND

Professor Subramanian, an accomplished scholar and expert on corporations, corporate governance principles and practices, and corporate transactions, is eminently qualified to offer expert testimony on each of those topics. Indeed, Plaintiffs do not challenge his qualifications. Professor Subramanian is the H. Douglas Weaver Professor of Business Law at the Harvard Business School (HBS) and the Joseph Flom Professor of Law and Business at the Harvard Law School (HLS), and has taught at HBS and/or HLS since 1999. (Subramanian Report ¶ 1; *see id.* Appendix A (Guhan Subramanian Curriculum Vitae).) Professor Subramanian is a co-author of *Commentaries and Cases on the Law of Business Organizations* (4th ed. 2012), a leading and widely used textbook on corporate law. (Subramanian Report ¶ 2.) Professor Subramanian teaches courses at HLS and HBS on complex corporate transactions and has written a practitioner-oriented book on managing complex corporate transactions. (*Id.* ¶¶ 2-3.) Professor Subramanian also conducts research and has published extensively on the topics of business organizations, corporate governance, corporate law, and negotiations. (*Id.* ¶ 2; *see also id.* Appendix A.) Plaintiffs acknowledge that Professor Subramanian "has published an impressive list of academic writings." (Motion at 2.)

Professor Subramanian serves on the Board of Directors, the Audit Committee, and the Nominating/Governance Committee of LKQ Corporation ("LKQ"), a publicly traded Delaware

corporation.[2] (Subramanian Report ¶ 4.) LKQ operates through over 100 subsidiaries and joint ventures and has approximately 20,000 employees. (*Id.*) LKQ has approximately $5 billion in annual revenues and $8 billion in market capitalization. (*Id.*) Professor Subramanian also advises corporate boards on a regular basis regarding issues of corporate governance and corporate structure, including considerations that implicate veil-piercing doctrine.

In addition to this ongoing real-world experience, Professor Subramanian has previously provided expert testimony in cases that raise similar policy considerations to the present matter. In 2010, for example, Professor Subramanian provided an expert opinion on whether the limited liability shield should protect Dow Chemical Company from liabilities at its subsidiary Union Carbide Corporation.[3] Similarly, in 2012, Professor Subramanian provided an expert opinion and deposition testimony on whether the limited liability shield should protect Bank of America from liabilities incurred at its wholly owned subsidiary CountryWide.[4] In both of those cases, Professor Subramanian explained why, from a real-world perspective, the policy reasons underlying corporate limited liability are fundamentally important to innumerable, ordinary business transactions.

## ARGUMENT

### I.   LEGAL STANDARD

The purpose of expert testimony is to assist the trier of fact, and Federal Rule of Evidence 702 ("Rule 702") is intended to "ensure that the expert testimony is helpful to the jury in

---

[2]  Although Plaintiffs contend that Professor Subramanian's report and résumé do not "disclose any real-world experience" (Motion at 2), they declined to depose him. Had they done so, they could have probed him about this or any other experience.

[3]  Affidavit of Professor Guhan Subramanian on Behalf of Respondent No. 4, the Dow Chemical Company, USA, in the High Court of Madhya Pradesh Principal Seat at Jabalpur, WP No. 2802 of 2004.

[4]  Expert Report of Professor Guhan Subramanian, dated June 25, 2012, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (N.Y. Sup. Ct.), at 33-34.

comprehending and deciding issues beyond the understanding of a layperson." *LaSalle Nat'l Bank Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 (WHP)(HBP), 2012 WL 466875, at *5 (S.D.N.Y. Feb. 14, 2012) (citation omitted). Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert witnesses are "uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1997). Expert testimony that describes relevant background information is frequently admissible if it will be helpful to the jury. *See LaSalle*, 2012 WL 466875, at *5 (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977)). Accordingly, rejecting expert testimony is the "exception rather than the rule." *LaSalle*, 2012 WL 466875, at *4 (quoting Advisory Committee Notes to the 2000 Amendment to Rule 702).

Federal Rule of Evidence 704 ("Rule 704") specifically provides that an expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Although an expert may not give testimony that constitutes "ultimate legal conclusions," he or she may "make factual conclusions that embrace an ultimate issue to be decided by the fact-finder." *Secs. & Exch. Comm'n v. U.S. Envtl., Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832, at *4 (S.D.N.Y. Oct. 16, 2002). Rule 704 allows expert opinions to embrace the ultimate issue to be decided and "provide[s] trial courts with more latitude to allow experts to testify about issues that would help the jury understand concepts it need[s] to know to render a

4

verdict despite the fact that the opinions may encroach on matters of law." *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246, at *5 (S.D.N.Y. April 11, 2003). Thus, experts may testify on mixed questions of fact and law. *See Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993).

Accordingly, expert testimony is allowed to aid a jury in understanding complex and unfamiliar corporate concepts in veil-piercing actions. In *Cary Oil Co.*, for example, the plaintiff sought to offer the testimony of Professor Kahan, a professor of law at New York University. *Cary Oil Co.*, 2003 WL 1878246, at *5. The defendant there argued (as Plaintiffs argue here) that Professor Kahan's "testimony, as foreshadowed by his expert report, will impermissibly state . . . legal standards" and "interfere with the Court in instructing the jury on the law." *Id.* The district court rejected those arguments in a ruling directly applicable to this case, explaining as follows:

> Plaintiffs want to offer Kahan's testimony to explain general corporate governance principles and the concept of veil-piercing to the jury . . . . [T]he Court considers such background information crucial if the laymen jury is to understand fully the complex issues in this matter. Kahan's analysis of the evidence in this case – and his identification of how such evidence may . . . justify veil-piercing – does not cross the boundaries into an opinion that would tell the jury what decision to reach . . . .

*Id.* So long as the expert "couches his opinion specifically 'on the evidence that [he] looked at and the work that [he] did,' the Court is satisfied that his opinions will fall within the accepted guidelines for admissible testimony." *Id.* at *6 (quoting *Fiataruolo*, 8 F.3d at 942).

Finally, it is important to note the critical difference between an expert <u>report</u> and expert <u>testimony</u>. The expert report of Professor Subramanian is not being offered as evidence to be admitted at the trial. The expert report is a means of disclosing the expert's opinions and analysis. As courts have recognized, expert reports can include "discussion of relevant . . . cases

5

in order to provide the background from which [the expert's] opinions and analysis arise." *HBC Ventures, LLC v. Holt MD Consulting, Inc.*, No. 06 Civ. 190, 2012 WL 4483625, at *9 (E.D.N.C. Sept. 27, 2012). While such discussion of the law is permissible in an expert report, this does not mean that the expert will testify as to pure issues of law as part of the expert's trial testimony.

## II. PLAINTIFFS' ATTEMPT TO PREVENT PROFESSOR SUBRAMANIAN FROM EXPLAINING THE HISTORY, CONCEPTS, AND APPLICATION OF LIMITED CORPORATE LIABILITY SHOULD BE REJECTED

Plaintiffs' motion primarily seeks to preclude Professor Subramanian from discussing the history and policies underlying the principles of limited corporate liability and explaining to the jury how those principles operate in practice, particularly with respect to how complex business investments are structured. (*See* Motion at 5-12.) Professor Subramanian's proposed expert testimony on these topics is of critical importance to a jury's ability to properly understand the reasons for and particular structure of the aircraft leasing business that is at the center of this case.

Plaintiffs assert that Professor Subramanian should be precluded from testifying about "the policy behind limited liability that he traces back to ancient Roman times." (Motion at 11.) Plaintiffs further contend that Professor Subramanian "opines on what the legal test for veil piercing should be," and seeks "to inform the jury of his personal beliefs as to what the law should be." (Motion at 6.) These arguments are based on a mischaracterization of Professor Subramanian's opinions and the scope of the testimony he would present at trial.

First, Plaintiffs do not dispute that courts have admitted expert testimony in veil-piercing cases "to educate the jury about appropriate corporate governance practices." (Motion at 5; *see also, e.g., Cary Oil Co.*, 2003 WL 1878246, at *5-6.) This type of expert testimony is allowed because "such background information [is] crucial if the laymen jury is to understand fully the

6

complex issues" at stake. *Cary Oil Co.*, 2003 WL 1878246, at *5. As the Second Circuit has held in an analogous context, "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (noting that "much of Professor Coffee's testimony was general background information on federal securities regulation and the filing requirement of Schedule 13D").

Second, Professor Subramanian's discussion of the history and policies underlying corporate limited liability will assist the jury's understanding of the legitimate and well established business reasons for the manner in which the aircraft leasing business was structured and operated. (*See* Subramanian Report ¶¶ 22, 24-34, 37-39, 98.) Professor Subramanian's report serves to "provid[e] the groundwork in the form of an opinion to enable the jury to make its own informed determination." *Duncan*, 42 F.3d at 101. Professor Subramanian should be allowed to discuss the origin and development of the principle of corporate limited liability and the role it plays in the structuring of business investments, such as the structure used here for the aircraft leasing business.

Third, Plaintiffs take specific exception to Professor Subramanian's use of the concept of "eyes wide open" to help explain how the principle of limited liability is consistent with the protection of the reasonable expectations of creditors. (*See* Motion at 7-10.) Defendants do not intend to ask Professor Subramanian to testify as to the governing law. Indeed, Professor Subramanian in his report quotes this Court in setting forth the law on piercing the corporate veil. (*See* Subramanian Report ¶ 46.) It will be for this Court to instruct the jury on the law, and the expert report of Professor Subramanian is not being offered as evidence to be admitted at the trial. An expert report is a means of disclosing the expert's opinions and analysis. As explained

above, expert reports can include "discussion of relevant . . . cases in order to provide the background from which his opinions and analysis arise." *HBC Ventures*, 2012 WL 4483625, at *9.

Moreover, Professor Subramanian does not suggest in his expert report that "eyes wide open" is a substitute for the prevailing law on piercing the corporate veil. (*See* Motion at 8.) To the contrary, Professor Subramanian relies upon this Court's statement of the law about when the corporate veil should be pierced. (*See* Subramanian Report ¶ 46.) What Professor Subramanian does do is to use the concept of "eyes wide open" to help explain how the principle of limited corporate liability is consistent with the protection of the reasonable expectations of creditors. (*See id.* ¶¶ 47-50.) Professor Subramanian's use of this phrase is his way of expressing and explaining part of the rationale underlying the law of veil piercing. This is intended to help the jury to better understand and apply the principle of limited corporate liability.

Nor does Professor Subramanian get "it wrong." (Motion at 8.) As he discusses in his report, "eyes wide open" is a familiar concept embraced by numerous legal scholars, sometimes explained using the concept of assumption of the risk. (*See* Subramanian Report ¶ 43 & n.53.) Moreover, his brief discussion of certain cases and statutes that have adopted the "eyes wide open" concept is part of the background of his report (*see id.* ¶ 50); it is not intended to be part of his proposed testimony. *See HBC Ventures*, 2012 WL 4483625, at *9 (noting that expert reports can include "discussion of relevant . . . cases in order to provide the background from which his opinions and analysis arise").

We agree with Plaintiffs that it would be improper for an expert to offer "legal conclusions." (*See* Motion at 6-7, 12-14.) But that is <u>not</u> what Professor Subramanian has done here. Professor Subramanian's testimony will not infringe on the court's role to instruct on the

law. To the contrary, Professor Subramanian recites for purposes of his report this Court's statement of the law of veil piercing. (*See* Subramanian Report ¶ 46 ("The factors to be considered under Delaware law in order to determine whether the corporate veil should be pierced have been summarized by the Court in this case as follows . . . .").)

This Court, not Professor Subramanian, will instruct the jury as to the law. What Professor Subramanian explains is the origin, background, and context for the concept of limited liability. Plaintiffs, for example, do not seek to strike the portions of his expert report that recite that a fundamental principle of business organizations is the protection of "the owners of an entity from liability for the entity's activities" which "is known as 'asset partitioning' or 'entity shielding.'" (*See id.* ¶¶ 22-23.) Having accepted that it is proper for Professor Subramanian to discuss these fundamental principles of business organizations, there is no basis for Plaintiffs to seek to prevent him from explaining in Section III.B of his report the origin and importance of limited liability to investors and creditors alike.[5] (*See id.* ¶¶ 24-33.) Accordingly, Plaintiffs' motion to strike portions of paragraphs 7, 22, 34, 37, 86, and 96, and paragraphs 24-33, 44-45, 47-50, and 108 of the Subramanian Report should be denied.

## III. PROFESSOR SUBRAMANIAN'S REPORT DOES NOT IMPERMISSIBLY OPINE ON THE ULTIMATE LEGAL QUESTION

Plaintiffs also argue that certain of Professor Subramanian's opinions should not be allowed because he improperly opines on the ultimate legal question and doing so "improperly

---

[5] Plaintiffs pick and choose where they find Professor Subramanian's testimony to be "unhelpful." Whereas Plaintiffs are content to allow Professor Subramanian to discuss the structure of private equity firm Blackstone LP and how it demonstrates the widespread use of corporate groups and asset partitioning, they seek to exclude the same discussion of Coreolis's corporate structure. (Motion at 17; *see also* Buland Decl. Ex. 2 at 12-13.) Plaintiffs attempt to support their argument with the inaccurate statement that Judge Peck precluded "Defendants' entire inquiry into this factual area." (Motion at 17; *see* Oct. 10, 2013 Hr'g Tr. at 9:3-15.) Plaintiffs completely mischaracterize Judge Peck's ruling. In any event, Judge Peck's ruling on any discovery dispute is not relevant to whether Professor Subramanian may address Plaintiffs' corporate structure based on evidence in the record. Accordingly, Plaintiffs' motion to strike paragraphs 38 and 39 of the Subramanian Report should be denied.

usurps the jury's role by 'tell[ing] the jury what result to reach.'" (Motion at 12-14.) This is both a mischaracterization of what Professor Subramanian actually says and an incorrect statement of the law.

It is well established that expert opinions may address issues that are mixed questions of law and fact, even if such discussion relates to an ultimate issue that is to be decided by the trier of fact. *See Pereira v. Cogan*, 281 B.R. 194, 198 (S.D.N.Y. 2002). As the Second Circuit has held:

> The Federal Rules of Evidence allow the trial court to admit expert testimony when it thinks that testimony will assist the triers of fact in understanding the case. *See* Fed. R. Evid. 702. Experts may testify on questions of fact as well as mixed questions of fact and law. This sort of testimony is not objectionable merely 'because it embraces an ultimate issue to be decided by the trier of fact.' Fed. R. Evid. 704.

*Fiataruolo*, 8 F.3d at 941 (permitting testimony that included legal conclusions accompanied by detailed factual background and explanation that provided the jury with helpful information beyond a statement of how its verdict should read).[6]

In cases like this one that involve a "complex legal concept, such as veil-piercing," it is proper for an expert to "analyze the evidence and identify [what] such evidence may indicate" about the practices of the corporate entities in question. *LaSalle*, 2012 WL 466875, at *7; *see also U.S. Envtl., Inc.*, 2002 WL 31323832, at *4 (permitting expert report and testimony where statements were "more similar to factual conclusions that embrace an ultimate issue than an ultimate legal conclusion" because the statements were based on facts analyzed by the expert and described how the expert arrived at each conclusion).

---

[6] Another factor that the *Fiataruolo* court considered in permitting the expert testimony was that the trial court had instructed the jury that the expert's opinion was not binding. *Fiataruolo*, 8 F.3d at 942; *see also Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 F. App'x 547, 551 (2d Cir. 2009). Here, if the need arises, a similar instruction can be given to the jury.

This is exactly what Professor Subramanian does in Section V of his expert report. He provides an analysis of the evidence, including the leases signed by TradeWinds, and identifies what such evidence may indicate. (*See* Subramanian Report ¶¶ 54-61.) He also explains the concept of corporate guarantees and discusses what the failure of Plaintiffs to seek any such guarantees from Mr. Soros or Dr. Chatterjee may indicate in the context of this case. (*See id.* ¶¶ 62-64.) Accordingly, paragraphs 51-64, a portion of paragraph 100, and paragraphs 108-110 of the Subramanian Report should not be stricken.

## IV. PROFESSOR SUBRAMANIAN DOES NOT IMPROPERLY OPINE ON TRADEWINDS' STATE OF MIND

Plaintiffs next argue that Professor Subramanian impermissibly opines about "TradeWinds' knowledge and state of mind." (Motion at 15.) This argument too falls flat.

In his report, Professor Subramanian discusses what would be reasonable for a party like TradeWinds – a sophisticated, voluntary, and repeat-contracting party – to be aware of and to understand in entering into the aircraft leases. (*See* Subramanian Report ¶¶ 51-64.) His discussion was based on his review of documents and other evidence in the record, including the lease agreements entered into with the aircraft-owning entities between 1999 and 2002, as well as deposition testimony from Plaintiffs' witnesses. (*See id.* Appendix B.) It is proper for an expert to testify as to "what would have been customary for [a party] to expect or assume, [but] not what [the party] actually did expect or assume." *LaSalle*, 2012 WL 466875, at *7-8 (quotation marks omitted) (alterations in original) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 467 (S.D.N.Y. 2010) (admitting

expert testimony "opining on what investors would customarily assume . . . so long as [the expert] refrain[ed] from opining on the actual state of mind")).[7]

Courts have also allowed expert testimony as to what a party "was aware of and could be expected to believe during the relevant time period." *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 539 (E.D.N.Y. 2012) (admitting expert testimony on foreign banking laws and practices "to assist the jury in determining the Bank's state of mind at the time"); *see also, e.g., U.S. Secs. & Exch. Comm'n v. Snyder,* Civil Action No. H-03-04658, 2006 WL 1806164, at *3, *7 (S.D. Tex. June 29, 2006) (permitting the Government to offer expert testimony from a certified accountant and fraud examiner that—based on "specific information that Defendant had"—it would have been obvious to the defendant that his filings with the SEC were materially misleading).

This Court should allow Professor Subramanian to testify that Plaintiffs entered into the lease agreements with "eyes wide open" as to what recourse was available to them under the leases because it goes directly to and will aid the jury in assessing Plaintiffs' reasonable expectations at the time they entered into the leases.

The cases Plaintiffs rely on to support their assertion that state of mind is not a proper topic for expert testimony are clearly distinguishable from the opinions that Professor Subramanian offers. Professor Subramanian's statements are about what would have been reasonable and customary for a party in TradeWinds' position to expect. (*See* Subramanian Report ¶¶ 52, 61.) Professor Subramanian's opinions are unlike those of experts who explicitly opined on what parties believed or experts who offered "conjecture" as to a party's state of mind.

---

[7]  It is irrelevant that Professor Subramanian has not specifically worked in the aircraft leasing business. (Motion at 16.) He is more than qualified to testify as to corporate governance principles and the reasonable expectations of parties entering into contracts with limited liability corporations. *See Cary Oil Co.*, 2003 WL 1878246, at *2 (citing *Valentin v. New York City*, No. 94 CV 3911(CLP), 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997)) (noting that a lack of practical experience does not necessarily preclude an expert from testifying and that a "formal education in a particular field is sufficient to qualify a witness as an expert").

*See, e.g., In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert testimony where expert's report was "replete with . . . conjecture" as to certain parties' state of mind); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (excluding testimony where expert's report made statements about what an individual actually believed). Professor Subramanian's statements are conclusions based on his analysis of facts specific to the case. They do not purport to tell the jury what TradeWinds was thinking, only what it would have been reasonable for TradeWinds to expect. This is a proper area for expert testimony.

Accordingly, Plaintiffs' motion to strike paragraphs 51-64 and portions of paragraphs 19 and 107 of the Subramanian Report should be denied.

## CONCLUSION

For the foregoing reasons, Defendants George Soros and Purnendu Chatterjee respectfully request that the Court deny Plaintiffs' motion to strike the expert report of Professor Subramanian and exclude his testimony at trial.

Dated: New York, New York
      May 30, 2014

POSTERNAK BLANKSTEIN & LUND LLP

By: _____
           Dustin F. Hecker

James Kruzer
The Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 973-6100

MORRISON COHEN LLP
Kristin T. Roy
900 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Purnendu Chatterjee*

WILLKIE FARR & GALLAGHER LLP

By: _____
           Martin Klotz

Alison R. Levine
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

BUTLER, FITZGERALD, FIVESON & McCARTHY
A Professional Corporation
Raymond Fitzgerald
David J. McCarthy
9 East 45th Street
New York, New York 10017
(212) 615-2200

*Attorneys for Defendant George Soros*

## Certificate of Service

I certify that on May 30, 2014, Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' *Daubert* Motion to Strike Portions of Guhan Subramanian's Expert Report and to Exclude Such Testimony at Trial was served on the following counsel of record, with their consent, via email:

*Attorneys for Plaintiff TradeWinds Airlines, Inc.:*

William Christopher Carmody
Shawn J. Rabin
Cory Buland
Megan O'Hara Easley
Susman Godfrey L.L.P.
560 Lexington Avenue, 15th Floor
New York, New York 10022
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
cbuland@susmangodfrey.com
measley@susmangodfrey.com

Matthew R. Berry
Susman Godfrey L.L.P.
1201 Third Avenue, Ste. 3800
Seattle, WA 98101
mberry@susmangodfrey.com

*Attorneys for Plaintiffs Coreolis Holdings Inc. & TradeWinds Holdings Inc.:*

Ellen R. Werther
Bruce J. Ressler
Ressler & Ressler
48 Wall Street
New York, New York 10005
ewerther@resslerlaw.com
bressler@resslerlaw.com

Le-Anh Bui