**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TRADEWINDS AIRLINES INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 08-cv-5901(JFK) |
| | § § | |
| GEORGE SOROS and PURNENDU CHATTERJEE, | § § § | |
| Defendants. | § § | |

-----------------------------------------------------------

| | | |
|---|---|---|
| COREOLIS HOLDINGS, INC. and TRADEWINDS HOLDINGS INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | 10-cv-8175(JFK) |
| | § § | |
| GEORGE SOROS and PURNENDU CHATTERJEE, | § § § | |
| Defendants. | § § | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
***DAUBERT* MOTION TO STRIKE PORTIONS OF GUHAN SUBRAMANIAN'S**
**EXPERT REPORT AND TO EXCLUDE SUCH TESTIMONY AT TRIAL**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| I. | SUBRAMANIAN SHOULD NOT BE ALLOWED TO TESTIFY ABOUT HIS "EYES WIDE OPEN" THEORY | 2 |
| II. | DEFENDANTS CITE NO AUTHORITY HOLDING THAT AN EXPERT CAN OPINE AS TO WHETHER THE VEIL SHOULD BE PIERCED | 5 |
| III. | SUBRAMANIAN HAS ZERO EXPERIENCE IN THE AVIATION INDUSTRY AND CANNOT OPINE ABOUT THE EXPECTATIONS OF PARTIES IN IT | 8 |
| CONCLUSION | | 10 |

## TABLE OF AUTHORITIES

Page

Cases

*Artista Records LLC v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409 (S.D.N.Y. 2009) .................................................................................. 10

*Cary Oil Co. v. MG Refining & Mktg.*,
   No. 99 Civ. 1725 (VM), 2003 WL 1878246 (S.D.N.Y. April 11, 2003) ............... 6, 7, 8, 9

*Fiataruolo v. United States*,
   8 F.3d 930 (2d Cir. 1993) ........................................................................................................ 7

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 523 (E.D.N.Y. 2012) .................................................................................. 9

*HBC Ventures, LLC v. Holt MD Consulting, Inc.*,
   Nos. 5:06-CV-190-F and 5:07-CV-342-F, 2012 WL 4483625 (E.D.N.C. Sept.
   27, 2012) ................................................................................................................................. 4, 6

*In re Safety-Kleen Corp. Rollins S'holders Lit.*,
   No. 3:00-1343-17, 2004 WL 5504972 (D.S.C. Aug. 30, 2004) ......................................... 5

*Jet Star Enters. Ltd. v. Soros*,
   No. 05 Civ. 6585, 2006 WL 2270375 (S.D.N.Y. Aug. 9, 2006) ........................................ 2

*Muniz v. Rexnord Corp.*,
   No. 04 C. 2405, 2006 WL 5153078 (N.D Ill. Nov. 2, 2006) ............................................. 6

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
   537 F.3d 168 (2d Cir. 2008) ............................................................................................ 2, 3, 4

*Palazzetti Import/Export, Inc. v. Morson*,
   No. 98 Civ. 722 (FM), 2001 WL 793322 (S.D.N.Y. July 13, 2001) ................................ 10

*Pereira v. Cogan*,
   281 B.R. 194 (S.D.N.Y. 2002) ........................................................................................ 4, 5, 6

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
   355 F. App'x 547 (2d Cir. 2009) ............................................................................................ 7

*SEC v. U.S. Envtl., Inc.*,
   No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ................ 7

*Sheet Metal Workers Int'l Assoc. Local Union No. 67 v. Todd-Ford Mgmt. Co.*,
   No. SA-03-CA-290, 2005 WL 5977617 (W.D. Tex. July 12, 2005) ................................ 6

*Tradewinds Airlines, Inc. v. Soros*,
    Nos. 08 Civ. 5901 and 10 Civ. 8175, 2012 WL 983575 (S.D.N.Y. Mar. 22,
    2012) .................................................................................................................. 2

*United States v. Castillo*,
    924 F.2d 1227 (2d Cir. 1991) ............................................................................ 10

*United States v. Duncan*,
    42 F.3d 97 (2d Cir. 1997) .................................................................................... 4

# PRELIMINARY STATEMENT

Defendants are wrong that Professor Subramanian can give expert testimony on (a) the legal standard for piercing the corporate veil under Delaware law (an erroneous one at that); (b) the ultimate issue of whether the veil should be pierced; and (c) customs and practices in the aviation industry.

First, Defendants do not dispute that Subramanian's "Eyes Wide Open" legal theory has not been adopted by Delaware courts. Indeed, Defendants do not cite a single Delaware authority stating that the jury should consider whether a plaintiff's eyes were "wide open" in determining whether to pierce the veil. As a result, it would be improper for Subramanian to offer expert testimony on a legal standard that contradicts controlling Delaware law—not to mention the more fundamental problem that experts are prohibited from invading the province of the court by instructing the jury on the applicable law.

Second, Defendants do not cite a single case from any jurisdiction permitting an expert to testify on the ultimate issue of whether the veil should be pierced. Defendants also cannot distinguish the long list of cases that Plaintiffs cited expressly holding that experts cannot opine on whether the veil should be pierced. In fact, an expert on "whether a corporate veil should be pierced" is no more helpful to a jury, and no less improper, than an expert proffered to testify as to "whether a contract was breached."

Finally, Defendants do not dispute that Subramanian has no experience in the aviation industry. Subramanian's CV shows that he has lived a life in academia, having become a professor the year after he graduated from law school, and it makes no mention of a single experience relating to the aviation industry. As a result, it is wholly improper for Subramanian to offer opinions on the customs and practices of the aviation industry—any other outcome

would mean that any law professor in America is qualified to offer an opinion about what parties entering into contracts believed or expected.

Although Subramanian can offer expert testimony at trial on corporate governance issues relating to the factors under Delaware's veil-piercing test, he cannot offer opinions that are inconsistent with controlling Delaware law, invade the province of this Court, or exceed his area of expertise. Therefore, Plaintiffs respectfully request that this Court grant Plaintiffs' motion to strike.

### I.  SUBRAMANIAN SHOULD NOT BE ALLOWED TO TESTIFY ABOUT HIS "EYES WIDE OPEN" THEORY

Defendants fail to cite even a single case showing that Subramanian's "Eyes Wide Open" academic theory has any relevance to Delaware's veil-piercing analysis. This Court has already recited the governing Delaware law on what is required to pierce the corporate veil. *Tradewinds Airlines, Inc. v. Soros*, Nos. 08 Civ. 5901 and 10 Civ. 8175, 2012 WL 983575, at *6 (S.D.N.Y. Mar. 22, 2012); *see also Jet Star Enters. Ltd. v. Soros*, No. 05 Civ. 6585, 2006 WL 2270375, at *6 (S.D.N.Y. Aug. 9, 2006) (reciting same legal standard). Neither the concept of "Eyes Wide Open" nor the reasonable expectation of creditors has any place in this Court's articulation of Delaware's veil-piercing test, which asks only two questions: whether (1) "the company and its controlling shareholder operated as a single economic entity," and (2) "an overall element of injustice or unfairness is present." *Tradewinds Airlines*, 2012 WL 983575, at *6 (internal quotation marks omitted) (citing *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008)[1]). The first inquiry focuses solely on the Defendants; Plaintiffs' state of mind is

---

[1] Subramanian's theory that parties to a lease agreement should be precluded from piercing the corporate veil because they entered into the agreement with their "Eyes Wide Open" is directly at odds with the seminal Second Circuit decision on the issue. In *NetJets*, the Second Circuit applied Delaware law and held that a party to an aircraft lease could pierce the corporate veil of the other contracting party if (1) the other contracting party and its

irrelevant. *Id.* (listing factors about Defendants relevant to single economic entity inquiry). As to the second inquiry, Defendants do not even attempt to argue that Subramanian's "Eyes Wide Open" theory is directed to that factor. Nor could they because Subramanian is not an expert in "fraud" or "injustice"—both of which are well within the ken of the average juror—and it would be impermissible for him to draw a conclusion on those issues for the jury. Because "Eyes Wide Open" is not the law in Delaware, it would be improper for this Court to instruct the jury on the theory, and it would be doubly improper for an expert to testify about it.[2]

Defendants apparently concede that "Eyes Wide Open" is not the law in Delaware, but now attempt to recast it as merely background for veil piercing:

> What Professor Subramanian does do is to use the concept of "eyes wide open" to help explain how the principle of limited corporate liability is consistent with the protection of the reasonable expectation of creditors. Professor Subramanian's use of the phrase is his way of expressing and explaining part of the rationale underlying the law of veil piercing.

Defs.' Opp. Br. at 8 (citation omitted). But expert testimony that contradicts controlling legal standards is not admissible to "express[] and explain[] part of the rationale underlying the law of veil piercing." That is especially true here where the "rationale underlying the law of veil piercing" is Subramanian's own academic theory rather than Delaware legislative or judicial history.

Defendants' attempt to recast Subramanian's testimony as mere background is also disingenuous and wrong: Subramanian has already admitted that he was retained to "define the appropriate contours of doctrines that ignore the corporate form." Subramanian Report ¶ 7.

---

controlling shareholder operated as a single economic entity, and (2) an overall element of injustice or unfairness is present. *NetJets,* 537 F.3d at 176-77.

[2] In fact, Defendants' opposition brief acknowledges that the Subramanian Report contains other opinions that would be inadmissible at trial. Defendants should therefore have no objection to the Court issuing an order that bars Subramanian from testifying about "the governing law" or his "discussion of certain cases and statutes that have adopted the 'eyes wide open concept.'" Defs.' Opp. Br. at 7, 8.

Subramanian's report repeatedly uses the concept of "Eyes Wide Open" to redefine the standard for veil piercing and to tell the jury they should not pierce the corporate veil in the case of a "voluntary creditor." *Id.* ¶ 49. Indeed, Subramanian intends to tell the jury that they should follow his "principled approach" to veil piercing by "focusing on . . . the reasonable expectations of creditors"—a standard that is foreign to and contradicts controlling Delaware law. *Id.* ¶ 48. In one of the most blatantly improper passages, Subramanian writes:

> From a policy perspective, there is no reason to provide an equitable remedy, such as piercing, when contract can allocate the risk effectively and efficiently. . . . In my opinion, the protection of reasonable expectations of creditors captures this contour, because a creditor who has assumed the risk of non-payment could not have a reasonable expectation in the shareholder's assets.

*Id.* ¶¶ 49-50. In no uncertain terms, Subramanian intends to tell the jury that, under his novel view of veil-piercing law, voluntary creditors—of which he says TradeWinds is one—cannot pierce the corporate veil.

In addition, even if "Eyes Wide Open" were the controlling legal standard (it is not), Subramanian's testimony would still be improper because experts are not permitted to instruct the jury on the law. Subramanian can testify about the importance of appropriate corporate governance standards and whether CS Aviation Services, Inc. met them. He can also help the jury by explaining the "complicated morass of obscure terms and concepts" used in corporate governance, such as the critical roles of officers and directors and the importance of holding meetings and acting through unanimous consents. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1997). But an expert like Subramanian cannot testify about the applicable legal standard in a veil-piercing case. *See Pereira v. Cogan*, 281 B.R. 194, 199 (S.D.N.Y. 2002) (prohibiting expert in alter-ego case from testifying as to what it means to be an alter ego); *HBC Ventures, LLC v. Holt MD Consulting, Inc.*, Nos. 5:06-CV-190-F and 5:07-CV-342-F, 2012 WL 4483625, at *9 (E.D.N.C. Sept. 27, 2012) (permitting expert in veil-piercing case to opine on "corporate

4

norms and governances and whether an entity's actions diverged from the corporate norms" but striking portions of report opining on the governing law); *see also In re Safety-Kleen Corp. Rollins S'holders Lit.*, No. 3:00-1343-17, 2004 WL 5504972, at *2 (D.S.C. Aug. 30, 2004) (permitting corporate governance expert to testify only about "issues of fact such as . . . general corporate governance structure, role of officers, directors, and audit committee members; and general examples of what the experts believe are good corporate practices in conformance with industry custom" but excluding testimony "on the ultimate legal conclusion as to whether defendants discharged their duties . . . [or] what legal standard . . . applies").

The fundamental problem with Defendants' "Eyes Wide Open" argument is that veil piercing is intended for cases exactly like this—where a party to an agreement cannot recover because it contracted with a sham entity like CS Aviation Services, Inc. and not, as the law presumes, a distinct economic entity with a separate corporate existence.

## II. DEFENDANTS CITE NO AUTHORITY HOLDING THAT AN EXPERT CAN OPINE AS TO WHETHER THE VEIL SHOULD BE PIERCED

Plaintiffs cite many cases in their principal brief that hold that an expert cannot opine on whether the corporative veil should be pierced. Yet Defendants have reaffirmed that they intend to have Subramanian testify as to the ultimate question in the case and failed to cite any authority that would permit such testimony as to whether CS Aviation Services, Inc.'s veil should be pierced. Defs.' Opp. Br. at 10-11.

Both Delaware law and cases from other jurisdictions uniformly agree that an expert cannot opine on whether the veil should be pierced because that is a decision for the jury. For example, in *Pereira v. Cogan*, an alter-ego case, Judge Sweet permitted a "corporate governance" expert to testify about proper standards of corporate governance and "a number of examples of what he believes good corporate practices require according to industry and

5

custom." 281 B.R. at 199-200. But the court prohibited the expert from opining on the ultimate issue of whether corporate separateness should be disregarded. *Id.* at 198-99. *Cogan* is consistent with other cases cited in Plaintiffs' principal brief that prohibit a corporate governance expert from opining on the ultimate issue of whether corporate separateness should be disregarded. *See HBC Ventures, LLC*, 2012 WL 4483625, at *9 (noting that defense counsel correctly conceded that defendant's expert could not offer opinion as to whether veil should be pierced); *Muniz v. Rexnord Corp.*, No. 04 C. 2405, 2006 WL 5153078, at *2 (N.D Ill. Nov. 2, 2006) (excluding expert testimony on whether an alter-ego relationship exists as "testimony as to the legal issue that will determine the outcome of [plaintiff's] claim"); *Sheet Metal Workers Int'l Assoc. Local Union No. 67 v. Todd-Ford Mgmt. Co.*, No. SA-03-CA-290, 2005 WL 5977617, at *2 (W.D. Tex. July 12, 2005) (prohibiting expert from "offering conclusions of law, namely whether the companies are alter egos of one another").

The cases that Defendants cite do not support their position. For example, in *Cary Oil*, Judge Marrero held that an expert in a veil-piercing case could opine as to whether a defendant's control over the sham corporation exceeded that which is normally exercised by a corporate parent over a subsidiary—not that the expert could opine on whether the veil should be pierced. The applicable reasoning of the court, with Defendants' misleading omission included, confirms, rather than contradicts, Plaintiffs' position:

> Plaintiffs want to offer Kahan's testimony to explain general corporate governance principles and the concept of veil-piercing to the jury. As explained above in relation to Gay's testimony, the Court considers such background information crucial if the laymen jury is to understand fully the complex issues in this matter. Kahan's analysis of the evidence in this case—and his identification of how such evidence may **indicate that the relation between the Defendants exceeded the control a parent ordinarily exercises over its subsidiary so as to** justify veil-piercing—does not cross the boundaries into an opinion that would tell the jury what decision to reach . . . .

6

*Cary Oil Co. v. MG Refining & Mktg.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003) (emphasis added to show portion omitted in Defendants' brief).[3]

Defendants are wrong that Subramanian's impermissible testimony can be cured by an instruction that his opinion is "not binding" on the jury. Defs.' Opp. Br. at 10 n.6. In *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993), on which Defendants rely, the Second Circuit was presented with the issue of whether admission of expert testimony was "manifestly erroneous" in a case brought by taxpayers to seek a refund of tax penalties assessed against them. After reciting that Rule 704 "was not intended to allow experts to offer opinions embodying legal conclusions," the court concluded that the challenged expert testimony was "near the border, close to a prohibited invasion" and was saved "only by context." *Id.* at 942. The fact that a curative instruction in *Fiataruolo* helped to make the admission of the expert testimony not "manifestly erroneous" or "an abuse of the trial court's discretion" does not mean that the testimony was properly admitted in the first instance. In fact, the *Fiataruolo* court cautioned "[t]o be sure, such a charge cannot always cure the trial court's error in allowing inadmissible evidence." *Id.*[4] Here, the Court can avoid the issue of any curative instructions by preventing Subramanian from giving improper testimony.

Courts in this district have squarely held that an expert such as Subramanian cannot opine on whether corporate separateness should be disregarded. Defendants have not identified a single case to the contrary from <u>any</u> jurisdiction. Pursuant to Rule 702, Subramanian should be

---

[3] *SEC v. U.S. Envtl., Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002), relied on by Defendants, is not a veil-piercing case and stands only for the proposition that a securities expert could testify that certain securities trades were "prearranged," and that retail customers were misled because they "have a reasonable expectation that the prices they pay for securities are determined by the economic forces of supply and demand" and not artificial manipulation. *Id.* at *4-5.

[4] Defendants' other citation, to *Rochester Gas & Electric Corp. v. GPU, Inc.*, 355 F. App'x 547, 551 (2d Cir. 2009), is likewise unhelpful to their argument. It stands for the unobjectionable proposition that an expert in a veil-piercing case can "testify about [the sham company's] corporate structure and evidence of dominance by [the defendant.]" *Id.* at *3.

precluded from rendering an opinion on whether the veil of CS Aviation Services, Inc. should be pierced.

**III.     SUBRAMANIAN HAS ZERO EXPERIENCE IN THE AVIATION INDUSTRY AND CANNOT OPINE ABOUT THE EXPECTATIONS OF PARTIES IN IT**

Subramanian's entire discussion of whether TradeWinds had its eyes wide open should be excluded because it is contrary to Delaware law. But even if TradeWinds' state of mind were relevant to the Delaware veil-piercing inquiry, Defendants have identified no law that supports their argument that a corporate law professor with zero experience in the aviation industry can offer an opinion about the reasonable expectations of a party to a commercial aircraft lease. That testimony is improper for two independent reasons: (1) Subramanian has no experience, let alone expertise, in the aircraft leasing industry, and (2) contrary to what Defendants now argue, Subramanian is attempting to tell the jury what TradeWinds actually believed.

*First*, Defendants do not even suggest that Subramanian has any experience in the aircraft leasing business or even in the entire aviation industry that would permit him to opine about "what would be reasonable for a party like TradeWinds . . . to be aware of and to understand in entering into the aircraft leases." Defs.' Opp. Br. at 11. Subramanian is a law professor who sits on the board of directors of one company that sells used automobile parts. Neither his report nor his CV discloses any experience with aviation let alone commercial aircraft leases. Defendants' failure to submit a declaration from Subramanian explaining any aviation experience after Plaintiffs challenged his qualifications in their opening brief speaks volumes.

Defendants incorrectly suggest that qualifications are unnecessary and that Subramanian is generally an expert "on the reasonable expectations of parties entering into contracts with limited liability corporations." Defs.' Opp. Br. at 12 n.7. Not surprisingly, Defendants' authority for this proposition does not get Defendants where they need to go. In *Cary Oil*, Judge

Marrero permitted an economist who had spent "twenty five years in the petroleum industry, including his substantial writings on the subject, his position as a member of the Board of Directors of an independent refining company and his consultant work for several petroleum suppliers and marketers" to render an opinion about petroleum sales and marketing. 2003 WL 1878246, at *2. Judge Marrero merely rejected the defendants' argument in that case that the expert must have "actually run the day-to-day operations of a small fuel distributor" to render an expert opinion. *Id.* Defendants' argument here that Subramanian is an all-purpose expert on what parties "expect" when entering into contracts should be rejected out of hand.

*Second*, Defendants argue that Subramanian is opining only about "what would be reasonable for a party like TradeWinds . . . to be aware of"—not what TradeWinds actually believed. Subramanian's report is to the contrary, with his primary conclusion being that "TradeWinds entered the lease agreements with 'eyes wide open' as to what assets they did and did not have recourse to." Subramanian Report ¶ 62; *see id.* ¶ 56 ("Moreover, given the sophisticated nature of those who controlled Plaintiffs, it is reasonable to assume that they would have understood the essentials of the ownership structure through their due diligence in connection with the acquisition in 2001."); *id.* ¶ 63 ("Plaintiffs understood parent guarantees.").

The cases that Defendants cite do not support their position. For example, in *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523 (E.D.N.Y. 2012), the court permitted the bank to offer testimony by an Israel financial expert about the general laws and practices, and attitudes towards those laws and practices, of Israeli banks and regulators, because "[t]he general attitude and views towards Israeli terrorist-designation lists by Israeli regulators and banks is relevant to what the [defendant] was aware of and could be expected to believe during the relevant time." *Id.* at 539. The parallel from *Gill* to this case would be an expert in the aircraft leasing business

9

testifying about the general expectations of parties to commercial aircraft leases. It is not a law professor summarizing the record and speculating about what Plaintiffs believed.

Subramanian, without any experience in the industry, has merely regurgitated snippets from the contracts and testimony in the record and concluded, ipse dixit, that TradeWinds had no "reasonable expectation" to pierce the corporate veil of CS Aviation Services, Inc. because it had no contractual right to do so. Defendants' argument, voiced through Subramanian, is thus not beyond the ken of the average juror, who is equally capable of hearing the evidence and reaching their own conclusion. Defendants must therefore solicit these facts from the fact witnesses and documents themselves—even if a jury is unlikely to buy into their flawed logic. *See Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ. 722 (FM), 2001 WL 793322, at *3 (S.D.N.Y. July 13, 2001) (precluding expert from opining about meaning or effect of franchise agreement because it was "not beyond the ken of the average juror"); *see also United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991) (reversing district court's denial of motion to strike because "all the primary facts can be accurately and intelligibly described to the jury," and they, "as persons of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation" (internal quotation marks and alterations omitted)); *Artista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) (precluding expert testimony where expert "provide[d] no assistance to the trier of fact through the application of specialized knowledge").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the offending portions of the Subramanian Report, which are identified in the redline attached as

Exhibit 2 to the Declaration of Cory Buland submitted with Plaintiffs' principal brief, and preclude Defendants from offering the aforementioned testimony from Subramanian at trial.

Dated: New York, New York
       June 23, 2014

                                 SUSMAN GODFREY L.L.P.

                                 /s/ William Christopher Carmody
                                 William Christopher Carmody (WC8478)
                                 Shawn J. Rabin (SR6546)
                                 Cory Buland (CB6420)
                                 Megan O'Hara Easley (ME7715)
                                 560 Lexington Avenue, 15th Floor
                                 New York, NY 10022
                                 Phone: (212) 336-8330
                                 Fax: (212) 336-8340
                                 bcarmody@susmangodfrey.com
                                 srabin@susmangodfrey.com
                                 cbuland@susmangodfrey.com
                                 measley@susmangodfrey.com

                                 Matthew R. Berry (PHV)
                                 1201 Third Avenue, Ste. 3800
                                 Seattle, WA 98101
                                 Phone: (206) 516-3880
                                 Fax: (206) 516-3883
                                 mberry@susmangodfrey.com

                                 *Attorneys for Plaintiff TradeWinds Airlines, Inc.*

                                 RESSLER & RESSLER

                                 /s/ Ellen Werther
                                 Ellen R. Werther (EW8545)
                                 Bruce J. Ressler (BR6329)
                                 48 Wall Street
                                 New York, NY 10005
                                 Phone: (212) 695-6446
                                 Fax: (212) 268-0287
                                 ewerther@resslerlaw.com
                                 bressler@resslerlaw.com

                                 *Attorneys for Plaintiffs Coreolis Holdings Inc. & TradeWinds Holdings Inc.*

## Certificate of Service

I certify that on June 23, 2014, this document was properly served on the following counsel of record via e-mail:

*Attorneys for Defendant George Soros:*

> Raymond Fitzgerald
> David J. McCarthy
> BUTLER, FITZGERALD, FIVESON & MCCARTHY
> Nine East 45th Street, Ninth Floor
> New York, NY 10017
> dmccarthy@bffmlaw.com
> rfitzgerald@bffmlaw.com

> Martin B. Klotz
> WILLKIE FARR & GALLAGHER LLP
> 787 Seventh Avenue
> New York, NY 10019
> mklotz@willkie.com

*Attorneys for Defendant Purnendu Chatterjee:*

> Dustin F. Hecker
> POSTERNAK BLANKSTEIN & LUND LLP
> The Prudential Tower
> 800 Boltston Street
> Boston, MA 02199
> dhecker@pbl.com

> Kristin T. Roy
> MORRISON COHEN SINGER & WEINSTEIN, LLP
> 909 Third Avenue, 27th Floor
> New York, NY 10022
> kroy@morrisoncohen.com

_____
Cory Buland